IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCS SERVICES, INC., and<br>PHOENIX BOND & INDEMNITY, CO.,<br><br>Plaintiffs,<br><br>v.<br><br>HEARTWOOD 88, INC., BAMP, LLC,<br>ANTHONY DELAURENTIS, RICHARD<br>TURER, RICHARONY, LLC,<br>SASS MUNI-IV, LLC,<br>SASS MUNI-V, LLC, SALTA GROUP, INC.<br>MARSHALL ATLAS, HBZ, INC.,<br>LORI LEVINSON, JUDITH BERGER,<br>WHEELER-DEALER, LTD.,<br>B G INVESTMENTS , INC.,<br>BONNIE J. GRAY, and TIMOTHY E. GRAY<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

07CV1367
JUDGE MORAN
MAG.JUDGE ASHMAN

FILED

MAR - 9 2007 *ro*
MAR 9, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiffs BCS Services, Inc. ("BCS") and Phoenix Indemnity & Bond Co.

("Phoenix") (collectively, "Plaintiffs"), by and through their attorneys, complaining

against defendants Heartwood 88, Inc. ("Heartwood"), Anthony DeLaurentis

("DeLaurentis"), Bamp, LLC ("Bamp"), Richard Turer ("Turer"), Richarony, LLC

("Richarony"), Sass Muni-IV, LLC. ("Sass Muni-IV"), Sass Muni-V, LLC. ("Sass Muni-

V") Salta Group, Inc. ("Salta"), Marshall Atlas ("Atlas"), HBZ, Inc. ("HBZ"), Lori

Levinson ("Levinson") and Judith Berger ("Berger"), Wheeler-Dealer, Ltd. ("Wheeler-

Dealer"), B G Investments, Inc. ("BG"), Bonnie J. Gray ("Bonnie"), and Timothy E.

Gray ("Timothy"), allege as follows:

### Nature of the Action

1.     Two tax buyers — BCS and Phoenix —bring this action against individuals and corporate entities that conspired to violate the Cook County Single Bidder Rule (the "Rule"), which prohibits related entities from bidding at the annual general real estate tax sale, thereby damaging the Plaintiffs, as well as other tax buyers, in tax sale auctions held in 2002, 2003, 2004 and 2005. Heartwood directed and controlled secret agreements with Bamp and Richarony, and their respective principals, to do Heartwood's bidding, and obtain liens for the benefit of another tax buyer, Sabre Group LLC ("Sabre"). Sass Muni-IV and Sass Muni-V received approval to bid through the registration process by concealing their agreement to purchase liens for Sabre's benefit. Similarly, Atlas set his employee and daughter up as a principal of HBZ to purchase liens for Atlas's benefit, and concealed the relationship of Salta and HBZ in the registration process. Finally, Wheeler Dealer and BG are related entities as they have contractual relationships with each other that make them more collaborators than competitors. Through a series of fraudulent schemes and collusive bidding, the Defendants unlawfully obtained access to the tax sales, thus obtaining a greater number of the liens available for bid at the auctions through their conspiracies and reducing the number of liens Plaintiffs were able to obtain. Plaintiffs were injured by the loss of the financial benefits flowing from the liens the Defendants purchased that Plaintiffs would otherwise have obtained. BCS and Phoenix seek to recover damages Plaintiffs suffered as a result of these schemes under sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and tortious interference with prospective business advantage.

- 2 -

## Jurisdiction and Venue

2.      This Court has jurisdiction over federal law claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1965(a). This Court has pendant jurisdiction over the state law claims of tortious interference with prospective business advantage arising out of these transactions.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because the Defendants reside in, are found in, have an agent in, and/or transact their affairs in, the Northern District of Illinois where a substantial part of the events complained of occurred.

## Parties

4.      BCS Services, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005, inclusive, for delinquent taxes for the years 2000 through 2003.

5.      Phoenix Bond & Indemnity Co. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005, inclusive, for delinquent taxes for the years 2000 through 2003.

6.      Heartwood 88, LLC is a Florida corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005.

7.      Bamp, LLC was an Illinois corporation that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal was defendant Anthony DeLaurentis.

- 3 -

8. Anthony DeLaurentis is a Maryland resident. He was the principal of defendant Bamp, and executed Bamp's registration to participate in the 2004 tax sale as Bamp's authorized agent.

9. Richarony, LLC was an Illinois corporation that voluntarily dissolved on December 21, 2004. In 2004, its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal was defendant Richard Turer.

10. Richard Turer is a Maryland resident. He was the principal of defendant Richarony, and executed Richarony's registration to participate in the 2004 tax sale as Richarony's authorized agent.

11. Sass Muni-IV is a New York corporation. Its business includes buying tax liens, and it participated in the 2002, 2003 and 2004 Cook County tax sales.

12. Sass Muni-V is a New York corporation. Its business includes buying tax liens, and it participated in the 2005 Cook County tax sales.

13. Salta Group, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2005. Its principal is defendant Marshall Atlas.

14. Marshall Atlas is a Glencoe, Illinois resident. He is the principal of defendant Salta, and executed Salta's registration to participate in the 2004 tax sale as Salta's authorized agent..

15. HBZ, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales. Its principals are defendants Lori Levinson and Judith Berger.

- 4 -

16. Lori Levinson is a Glencoe, Illinois resident. She is a principal of defendant HBZ.

17. Judith Berger is a Northbrook, Illinois resident. She is a principal of defendant HBZ.

18. Wheeler-Dealer, Ltd. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales. Its principals include defendant Timothy E. Gray.

19. Timothy E. Gray is a Chicago, Illinois resident. He is a principal of defendant Wheeler-Dealer, and executed Wheeler-Dealer's registration to participate in the 2004 tax sale as Wheeler-Dealer's authorized agent.

20. B G Investments, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales. Its principals include defendant Bonnie J. Gray.

21. Bonnie J. Gray is a Chicago, Illinois resident. She is a principal of defendant BG, and executed BG's registration to participate in the 2004 tax sale as BG's authorized agent.

## Factual Background To All Counts

22. The duly elected Treasurer and Ex-Officio Collector of Cook County, Illinois ("the Collector") is charged under the Property Tax Code (35 ILCS 200/22-70 et seq.) with the collection of delinquent real estate taxes through judicial sale of judgments obtained against delinquent property.

23. The duly elected Clerk of Cook County, Illinois ("the Clerk") is charged under the Property Tax Code with assisting the Collector in the conduct of the tax sale

- 5 -

and keeping related records thereafter. The Collector and the Clerk are referred to hereafter jointly as "the County."

24.     The annual Cook County tax sale is part of the Illinois property tax system. If a property owner fails to pay his property taxes in a given year, the County offers for sale to the public a tax lien on that property. The purchaser of the tax lien, the "tax buyer," pays the delinquent tax. The property owner may redeem that lien by paying the delinquent tax plus the accrued penalty. Upon redemption, the tax buyer surrenders the lien and receives the tax amount paid on its purchase plus the accrued penalty.

25.     The annual tax sale process begins when the Collector publishes a list of delinquent real estate parcels in area newspapers. The publication gives notice that the Collector will apply to the Circuit Court for judgments against delinquent real estate and orders to sell those judgments at public auction. Thereafter, the Circuit Court issues the requested judgments and orders. At the sale, the County auctions the tax liens on the delinquent properties in exchange for the County's receipt of the delinquent taxes. Each judgment lien affects a different parcel of real estate for which taxes are delinquent.

26.     The terms, manner and method by which the judicial sale is conducted are prescribed by the Collector. Among other things, the Collector provides a registration package to each prospective tax buyer. The package sets forth the rules by which the sale is to be conducted, including the terms and conditions with which all participants must comply. An example of the registration package is attached hereto as Exhibit A.

27.     Tax buyers must be registered and qualified to bid at the tax sale. Registration requires the submission of an application and sworn affidavit of compliance with rules established by the Collector, together with a letter of credit or bond from each

- 6 -

bidding entity (35 ILCS 200/21-220) to guaranty payment for purchases. A prospective tax buyer who fails to satisfy any of these requirements, i.e. the application, the affidavit of compliance, or the bond, would not be permitted to bid at the annual tax sale.

28. Bids are not made in cash amounts and taxes are not sold to the highest bidder. When a taxpayer redeems his taxes, he pays the amount of taxes paid by the tax buyer at the sale, plus penalty. At the annual tax sale, the tax buyers bid on the rate of penalty. The tax buyer who bids the lowest rate of penalty will win the bid. If more than one tax buyer bids at the same lowest rate, the auctioneer will allocate the liens on a rotational basis to ensure that there is an equal apportionment of liens among the lowest bidding tax buyers. The highest permissible penalty rate is 18% of the delinquent tax per penalty period. Since approximately 2000, the typical penalty rate has been 0%.

29. After each annual tax sale, the County issues a Certificate of Purchase evidencing the tax lien sold on each parcel of real estate to and in the name of the tax buyer who made the successful bid.

30. As a matter of law, no more than four months and fifteen days after purchase of a lien, the tax buyer who owns the certificate of purchase must draft a notice pursuant to 35 ILCS 200/22-5 (the "22-5 notice"), alerting the last assessee that the lien has been sold for delinquent taxes. The tax buyer provides the 22-5 notice to the County for the County to mail to the last assessee. The County sends the notice by U.S. mail to the last assessee, including last assessees residing outside the state of Illinois. The tax buyer retains a file-stamped copy of the same. The certificate holder pays the County for the mailing. The 22-5 notice is a mandatory condition to obtain a tax deed. The failure to file the 22-5 notice renders the tax certificate incapable of foreclosure through a

petition for tax deed, leaving the Tax Buyer with no ability to secure a redemption of the tax lien, to recover its money or to obtain a deed.

31.     In addition, if the property remains unredeemed after two to three years from the date of purchase, a lien holder may file a petition for deed. These petitions must be filed five months before the end of the period of redemption. Pursuant to 35 ILCS 200/22-10, in the first sixty days of the five-month period, the lien holder is required to provide notice to property owners, occupants and other interested parties (the "22-10 notice"). Pursuant to 35 ILCS 200/22-15, the Cook County Sheriff serves the lien holders' 22-10 notice of the deed petition and the impending expiration of the period of redemption on property owners, occupants and other interested parties in person. If any owners or interested parties cannot be served in person within Cook County, Illinois, the sheriff will serve them by certified mail. Certified mail will be used to send the 22-10 notices to all parties outside of Illinois. The lien holder cannot obtain a deed without proper service of the 22-10 notice.

32.     Further, during the first sixty days of that five-month period before the period of redemption expires, the tax buyer prepares a notice pursuant to 35 ILCS 200/22-25 (the "22-25 notice") and delivers that notice with the requisite fee for mailing to the Circuit Court of Cook County with direction to mail it to the relevant property owners and occupants alerting them that the lien holder has filed a petition for tax deed and the date upon which the period of redemption will expire. The County sends the notice by U.S. mail to the relevant property owners and occupants, including property owners residing outside the state of Illinois. The lien holder cannot obtain a deed without proper service of the 22-25 notice.

- 8 -

33.     Tax buyer's potential sources of profit include the penalty accrued on the tax lien judgment purchased, a 12% penalty accrued on any subsequent real estate taxes the tax buyer pays on the property, and enforcement of the lien.

34.     The 2002 annual tax sale was held from April 1, 2002 to April 26, 2002. At the 2002 annual tax sale, liens were sold based on property owners' failure to pay 2000 annual real estate taxes.

35.     The 2003 annual tax sale was held from March 10, 2003 to April 4, 2003. At the 2003 annual tax sale, liens were sold based on property owners' failure to pay 2001 annual real estate taxes.

36.     The 2004 annual tax sale was held from May 10, 2004 to June 7, 2004. At the 2004 annual tax sale, liens were sold based on property owners' failure to pay 2002 annual real estate taxes.

37.     The 2005 annual tax sale was held from July 6, 2005 to July 27, 2005. At the 2005 annual tax sale, liens were sold based on property owners' failure to pay 2003 annual real estate taxes.

### The Cook County Single Bidder Rule

38.     In order to participate in the auction, tax buyers must register with the Collector.

39.     At the time of registration, the tax buyer, or its authorized agent, must affirm under penalty of perjury its adherence to the Rule. The Rule — established before the 2001 tax sale and applicable to every tax sale held since that time — prohibits related bidding entities from simultaneously participating in the sale.

40.     The Rule defines "related bidding entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant" in the annual tax sale.

41.     As part of the registration under the Rule, the tax buyer represents and warrants that it is not affiliated with any other entity registering to bid in that: (A) It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the annual auction; (B) It shares no common ownership interest or common source of funds with any other bidding entity or person registering to bid; (C) It has no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity or person at the same sale; (D) It has no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale; (E) It does not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.

42.     The Rule ensures that no one can increase the number of liens they obtain to the detriment of other tax buyers by having two or more bidders, or tax buyers, purchasing liens for their benefit. The Rule protects the auctioneer's just allocation of bids on a rotational basis to guarantee an equal apportionment of liens among all tax buyers who bid the lowest rates.

- 10 -

## Heartwood's Scheme To Obtain Additional Liens Beyond Its Appropriate Portion

43.     Heartwood, Bamp and Richarony are bidding entities related to each other, as well as to Sabre, as they agreed to participate in the annual tax sales and obtain liens for Sabre's benefit.

44.     Heartwood submitted registrations and sworn affidavits to the Collector for participation in the 2003, 2004 and 2005 annual tax sale stating that it adhered to the Rule. In those registrations, Heartwood also represented, among other things, that it had no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity and that it did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity. Those representations were false as Heartwood had agreed to purchase liens for Sabre's benefit and also had Bamp and Richarony created to purchase liens during the 2004 sale for Sabre's benefit.

45.     Heartwood's registrations for the 2003, 2004 and 2005 tax sales were fraudulent because Heartwood concealed its relationship with Sabre, with the 2004 registration also concealing Heartwood's relationship with Bamp and Richarony.

46.     Beginning in the 2002 tax sale, and continuing through the most recent tax sale, Sabre packed the annual tax sales with nominees who bid for Sabre's benefit. The nominees included defendants Heartwood, Bamp, Richarony, Sass-Muni IV and Sass Muni V, as well as Regal One, LLC, Cronus Projects, LLC, CCJ Investments, LLC, DRN II, Inc., Georgetown Investors, LLC, Optimum Financial, Inc., L.C.C. Venture, LLC, Jeshay, LLC, BRB Investments LLC, Mud Cats Real Estate LLC, Carpus Investments, and GJ Venture LLC (collectively the "Sabre Nominees"). After acquiring

the certificates at the sales, the Sabre Nominees transferred the liens they acquired to Sabre.

47.     Heartwood assigned liens it purchased in those auctions to Sabre. Plaintiffs do not have access to such information or assignment documents for liens that had been neither redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

48.     Additionally, on at least one occasion, Sabre represented in public filings that it and Heartwood were one and the same. In particular, Sabre petitioned for a tax deed on Certificate of Purchase No. 02-0006303, representing it was the owner of the Certificate. In fact, that lien had been purchased by Bamp and assigned to Heartwood, not Sabre. Sabre's Petition did not include an assignment of the Certificate to Sabre, and, thus, the Petition was predicated on Sabre's representation that it was the legal equivalent of Heartwood.

49.     Additionally, Heartwood had Bamp and Richarony incorporated to increase the number of liens it was able to obtain for Sabre's benefit at the 2004 auction. In or before 2004, DeLaurentis and Turer had business relationships with Heartwood. On April 19, 2004, DeLaurentis incorporated Bamp and Turer incorporated Richarony. Both were incorporated less than two months before the 2004 auction for the sole purpose of bidding in that auction. About one week after their incorporations, on April 29 and 30, 2004, respectively, Bamp and Richarony filed registrations with sworn affidavits with the Collector, each stating that it adhered to the Rule. Bamp and Richarony's representations in the registrations were false as Bamp and Richarony were controlled by Heartwood and/or had agreed to purchase liens identified by Heartwood for Heartwood's, and

- 12 -

ultimately Sabre's, benefit, and to transfer such liens to Heartwood after the auction was complete.

50.    On or between May 10, 2004 and June 7, 2004, Bamp purchased 257 liens at the 2004 annual tax sale and Richarony purchased 210 liens. Heartwood purchased 323 liens at the 2004 annual tax sale as well.

51.    Bamp and Richarony, at the direction of DeLaurentis, Turer and Heartwood, transferred liens purchased at the 2004 auction to Sabre through Heartwood. Plaintiffs do not have access to such information or assignment documents for liens that had been neither redeemed or the subject of a filed petition for deed, which documents are in the sole possession of the Defendants.

52.    Having completed the transfer of liens to Sabre through Heartwood, DeLaurentis and Turer quickly dissolved Bamp and Richarony on the same day— December 21, 2004.

53.    Ties between Bamp and Richarony — and their resulting connections to Heartwood and Sabre — furthered the conspiracy. For example, one of Bamp's registered bidders in the 2004 auction (David Bansemer) listed his phone number on the registration form as (815) 462-9545, the same number that one of Richarony's registered bidders (Sara Crossland) listed as her phone number on Richarony's registration. Cashiers checks used by Bamp and Richarony as bonds so that they could participate in the 2004 auction (35 ILCS 200/21-220) were drawn on the same bank, Harris Bank, and bore consecutive numbers of 331852982 and 33185983, respectively. In addition, DeLaurentis and Turer are principals in an LLC bearing their names in Maryland, and practice law for the same entity.

54.     Sabre, Heartwood, Bamp and Richarony and the other Sabre Nominees primarily bid on the same liens during the 2004 tax sale, and Heartwood, Sabre and the other Sabre Nominees bid on the same liens during the 2003 tax sale. During the 2005 annual tax sale, while Sabre did not directly participate, it had several nominees, including those it had created in 2005, BRB Investments, LLC, Mud Cats Real Estate, Carpus Investments, LLC, and GJ Ventures, LLC, register and bid in the annual tax sale and purchase liens on its behalf. Heartwood and those other Sabre Nominees bid on the same liens during the 2005 tax sale. On information and belief, Sabre identified the liens its nominees were to bid on and purchase for Sabre's benefit. Sabre, Heartwood, Bamp and Richarony, and the other Sabre Nominees obtained liens bid on by the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens Plaintiffs otherwise would have obtained under the County's allocation methodology. Had those defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Heartwood, Bamp and Richarony, as well as by Sabre and its other Nominees.

### M.D. Sass Entities Participate in the Tax Sales as Sabre's Nominees

55.     Sass Muni-IV and Sass Muni-V (the "M.D. Sass Entities") are related bidding entities to each other, as well as to Sabre, as they agreed to participate in the annual tax sales and obtain liens for Sabre's benefit.

56.     The M.D. Sass Entities were created, in whole or part, to participate in the Cook County tax sales. Sass Muni-IV participated in the 2002, 2003 and 2004 tax sales. Sass Muni-V participated in the 2005 tax sale.

57.     The M.D. Sass Entities submitted registrations to the Collector for the 2002-2004 and 2005 annual tax sales, respectively, stating that they adhered to the Rule. In those registrations, the M.D. Sass Entities also represented, among other things, that each had no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity and that each did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity. Those representations were false as the M.D. Sass Entities had agreed to purchase liens for Sabre's benefit.

58.     The M.D. Sass Entities's registrations for the 2002, 2003, 2004 and 2005 tax sales were fraudulent because The M.D. Sass Entities concealed their relationship with Sabre and that they were obtaining liens for Sabre's benefit.

59.     Sass Muni-IV, Sabre and Sabre's nominees bid on the same liens during the 2002, 2003 and 2004 tax sales, and Sass Muni-V and Sabre's nominees bid on the same liens during the 2005 tax sale. The M.D. Sass Entities obtained liens bid on by the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens Plaintiffs otherwise would have obtained under the County's allocation methodology. Had those defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Sass Muni-IV and Sass Muni-V, as well as by Sabre and its other Nominees.

### Salta's Scheme To Obtain Additional Liens Beyond Its Appropriate Portion

60.     Salta and HBZ are related bidders under the Rule who obtained access to Cook County tax sales by making false representations in the registration process, specifically representing that each adhered to the Rule.

- 15 -

61.     Salta registered with Cook County and was a bidder at the 2002-2005 annual tax sales. Salta identified its address is 666 Vernon Avenue, Glencoe, Illinois, and its principal as Marshall Atlas. On information and belief, based on a review of public records, Atlas' residence is at 1136 Skokie Ridge Drive, Glencoe, Illinois.

62.     HBZ was incorporated on or about January 27, 2003, and it participated in the 2003 tax sale shortly thereafter. HBZ's principals are Lori Levinson and Judith Berger. In or about 2003, Levinson lived at 1136 Skokie Ridge in Glencoe. Levinson was also an employee of Salta, and, on information and belief, is Atlas' daughter. Berger has been affiliated with Salta's 666 Vernon Avenue address in Glencoe, and has been an employee of another company owned by Atlas. Finally, Salta paid the subsequent taxes on the liens acquired by HBZ during the annual tax sales.

63.     On information and belief, based on the facts stated above, Atlas had Levinson and Berger create HBZ to purchase liens during the 2003 tax sale in an attempt to circumvent the Rule, enacted in 2001, prohibiting multiple bidders from participating in tax sales contemporaneously for the same registrant. Atlas, Levinson and Berger filed false statements in the registration process for Salta and HBZ to conceal their relationships and these violations of the Rule. They continued to have both Salta and HBZ purchase liens at subsequent sales to obtain more liens than Atlas would have been able to obtain using just Salta. Atlas, Levinson and Berger had Salta and HBZ file false statements in the registration process to conceal their violations of the Rule. During the 2003 tax sale, HBZ purchased 518 liens for $657,824.66, and Salta purchased 1,233 liens for $4,745,039.98. During the 2004 tax sale, HBZ purchased 336 liens for $699,836.57,

and Salta purchased 994 liens for $3,410,944.21. During the 2005 tax sale, HBZ purchased 476 liens for $762,493.17, and Salta purchased 822 liens for $2,183,375.62.

64.     Salta and HBZ bid on the same liens during the 2003, 2004 and 2005 tax sales. Salta and HBZ obtained liens bid on by the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens Plaintiffs otherwise would have obtained under the County's allocation methodology. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding entities. Had those defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Salta and HBZ.

## Wheeler-Dealer and BG Bid in the Tax Sales in Violation of the County Rule

65.     Defendants Wheeler-Dealer and BG are related bidding entities who submitted registrations to the Cook County Treasurer's Office for the 2003-2005 annual tax sales, respectively, misstating that they adhered to the Rule.

66.     On information and belief, Wheeler-Dealer and BG had a contractual relationship pursuant to which they shared expenses and office functions. This belief is based on the facts that Wheeler-Dealer and BG share an office, share office equipment, and share their fax line.

67.     Further indicia of their relatedness is the consecutive letters of credit that each received in preparation for the 2004 tax sales. Each of them sought and received letters of credit in preparation for the 2004 tax sale from the LaSalle Bank located at 540 West Madison Street in Chicago. The letters of credit were obtained immediately after each other: Wheeler-Dealer's letter of credit number was S568351 and BG's letter of credit number was S568352.

68.     Finally, the principals of Wheeler-Dealer and BG, Bonnie and Timothy (collectively, the "Grays") are closely related to each other.

69.     On information and belief, based on the facts stated above, the Grays started using Wheeler-Dealer and BG in 2003 in an attempt to circumvent the Rule, enacted in 2001, prohibiting multiple bidders from participating in tax sales contemporaneously for the same registrant. The Grays filed false statements in the registration process for Wheeler-Dealer and BG to conceal these violations of the Rule. During the 2003 tax sale, Wheeler-Dealer purchased 1,558 liens for $2,700,411.41, and BG purchased 1,463 liens for $4,187,561.40. During the 2004 tax sale, Wheeler-Dealer purchased 842 liens for $2,271,202.77, and BG purchased 532 liens for $1,187,690.57. During the 2005 tax sale, Wheeler-Dealer purchased 765 liens for $2,376,407.37, and BG purchased 667 liens for $1,709,678.62.

70.     Wheeler-Dealer and BG bid on the same liens during the 2003, 2004 and 2005 tax sales. Wheeler-Dealer and BG obtained liens bid on by the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens Plaintiffs otherwise would have obtained under the County's allocation methodology. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding entities. Had these defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Wheeler-Dealer and BG.

## RICO Predicate Acts

71.     During the auctions held in 2003, 2004 and 2005, Heartwood purchased hundreds of liens for Sabre's benefit in violation of the Rule. On information and belief,

these included liens on properties in which interested parties are located out of state. Heartwood, Sabre and its officers, John Bridge and B. Rochman ("Bridge" and "Rochman" respectively), prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. Heartwood, Sabre, Bridge and Rochman, also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Heartwood, Sabre, Bridge and Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit B identifies a small sample of these mailings related to the liens that Heartwood purchased during the auctions held in 2003, 2004 and 2005.

72.     Sabre and its other nominees purchased thousands of liens during the auctions held during 2002, 2003, 2004 and 2005. Sabre, Bridge, Rochman and the other nominees prepared and caused to be prepared 22-5, 22-10, 22-25 notices that where integral to the schede to profit by obtaining additional liens in violation of the Rule. Exhibit C identifies a small sample of the mailings related to the liens that Sabre and the other Sabre Nominees purchased during the aucitons held in 2002, 2003, 2004, and 2005.

73.     During the auction held in 2004, Bamp purchased hundreds of liens for Heartwood and Sabre's benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Bamp, Heartwood, Sabre, DeLaurentis, Bridge and Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to

- 19 -

the last tax assessees in order to ensure that the liens could be enforced. Bamp, Heartwood, Sabre, DeLaurentis, Bridge and Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Bamp, Heartwood, Sabre, DeLaurentis, Bridge and Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Heartwood and Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit D identifies a small sample of these mailings related to the liens that Bamp purchased during the auction held in 2004.

74.     During the auction held in 2004, Richarony purchased hundreds of liens for Heartwood and Sabre's benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Richarony, Heartwood, Sabre, Turer, Bridge and Rochman prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that the liens could be enforced. Richarony, Heartwood, Sabre, Turer, Bridge and Rochman also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Richarony, Heartwood, Sabre, Turer, Bridge and Rochman caused Cook County to mail these notices to enable them to convert the liens into deeds for Heartwood and Sabre. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit E identifies a small sample of these mailings related to the liens that Richarony purchased during the auction held in 2004.

75.    During the auctions held in 2002, 2003, 2004 and 2005, the M.D. Sass
Entities purchased hundreds of liens for Sabre's benefit in violation of the Rule. On
information and belief, these included liens on properties in which interested parties are
located out of state. The M.D. Sass Entities, Sabre, Bridge and Rochman prepared and
caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those
notices to the last tax assesses in order to ensure that the liens could be enforced. The
M.D. Sass Entities, Sabre, Bridge and Rochman also prepared and caused to be prepared
22-10 and 22-25 notices for the liens that were available to convert into deeds. The M.D.
Sass Entities, Sabre, Bridge and Rochman caused Cook County to mail these notices to
enable them to convert the liens into deeds for Sabre. These mailings of the 22-5, 22-10,
and 22-25 notices were integral to the scheme to profit by obtaining additional liens in
violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit F identifies a
small sample of these mailings related to the liens that the M.D. Sass Entities, purchased
during the auctions held in 2002, 2003, 2004, and 2005.

76.    During the auctions held in 2003, 2004 and 2005, Salta purchased
hundreds of liens in violation of the Rule. On information and belief, these included liens
on properties in which interested parties are located out of state. Salta and Atlas prepared
and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail
those notices to the last tax assesses in order to ensure that the liens could be enforced.
Salta and Atlas also prepared and caused to be prepared 22-10 and 22-25 notices for the
liens that were available to convert into deeds. Salta and Atlas caused Cook County to
mail these notices to enable them to convert the liens into deeds for Salta. These
mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by

obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit G identifies a small sample of these mailings related to the liens that Salta purchased during the auctions held in 2003, 2004 and 2005.

77.     During the auctions held in 2003, 2004 and 2005, HBZ purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. HBZ, Salta, Berger, Levinson and Atlas prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. HBZ, Salta, Berger, Levinson and Atlas also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. HBZ, Salta, Berger, Levinson and Atlas caused Cook County to mail these notices to enable them to convert the liens into deeds for Salta's benefit. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit H identifies a small sample of these mailings related to the liens that HBZ purchased during the auctions held in 2003, 2004 and 2005.

78.     During the auctions held in 2003, 2004 and 2005, Wheeler-Dealer and BG purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. The Grays, Wheeler-Dealer and BG prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. The Grays, Wheeler-Dealer and BG also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were

available to convert into deeds. The Grays, Wheeler-Dealer and BG caused Cook County to mail these notices to enable them to convert the liens into deeds. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibits I and J identifies a small sample of these mailings related to the liens that Wheeler-Dealer and BG purchased during the auctions held in 2003, 2004 and 2005.

## COUNT I
## Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964

### (Against Heartwood, Bamp, DeLaurentis, Richarony, Turer, Sass Muni-IV, and Sass Muni-V)

79.     Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

80.     At all relevant times, Heartwood, DeLaurentis, Bamp, Turer, Richarony, Sass Muni-IV and Sass Muni-V, were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3). This Count is brought against each of the defendants identified in this paragraph.

81.     Sabre, the Sabre Nominees, including Heartwood, Bamp, Richarony, Sass Muni-IV and Sass Muni-V, and Bridge, Rochman, Jeffrey Bridge, Robert Jensen, Joseph Varan, Jesse Rochman, Christopher Rochman, Corinne Rochman, Douglas Nash, Francis Alexander, Jason Baumbach, Gregory Ellis, DeLaurentis, and Turer constitute an association-in-fact "enterprise" (the "Sabre Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Sabre Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and

necessary role to carry out and facilitate its purpose. DeLaurentis, Turer, and the other Individual Defendants incorporated and became the principals of entities, and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those entities. The Sabre Nominees registered to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's Office stating that they had adhered to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales for Sabre's benefit. Sabre registered to bid at the 2002, 2003, and 2004 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it had adhered to the Single, Simultaneous Bidder Rule, purchased liens at those tax sales in its own name, acquired liens by transfer from the Sabre Nominees from the 2002, 2003, 2004 and 2005 tax sale. John Bridge and B. Rochman directed the affairs of Sabre and of others which included forming entities to bid at the annual tax sale, registering those entities to bid, submitting false registrations to the Cook County Treasurer's Office falsely stating adherence to the Single, Simultaneous Bidder Rule, purchasing liens at auction, having liens or profits transferred to Sabre, and insuring that participants were compensated for their participation. The planning and carrying out of the scheme would have been beyond the capacity of each member of the Sabre Rigged Bidding Enterprise acting singly and without the aid of each other.

82.     Each defendant named in this Count is or has been employed by and/or associated with the Sabre Rigged Bidding Enterprise.

83.     On information and belief, based on the County Records and the assignments of liens filed with the County, the defendants named in this Count received a financial benefit for their participation in the scheme. Such financial benefits were the

- 24 -

product of the scheme and could not have been realized had the defendants named in this count not joined the Sabre Rigged Bidding Entity enabling them to secure more liens than possible had the County been provided accurate registration information.

84.     Each of the defendants named in this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of Sabre greatly in excess of the number of liens Sabre would have been allowed under the Rule. Further, each of the defendants named in this Count has conducted and/or participated in the conduct of the Sabre Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

85.     Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the Sabre Rigged Bidding Enterprise not implemented its scheme and improperly acquired additional liens through violations of the Rule. If the Sabre Rigged Bidding Enterprise had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Sabre and the Sabre Nominees, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Sabre Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the defendants, Sabre, and the other Sabre Nominees.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Heartwood, Bamp, DeLaurentis, Richarony, Turer, Sass Muni-IV, and Sass Muni-V, and for relief as follows:

(a) Treble damages;

(b) Injunctive relief;

(c) Reasonable attorneys' fees and costs; and

(d) Such other relief as the Court deems just and proper.

## COUNT II
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
**(Against Heartwood, Bamp, DeLaurentis, Richarony, Turer, Sass Muni-IV, and Sass Muni-V)**

86.     Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

87.     Defendants Heartwood, DeLaurentis, Bamp, Turer, Richarony, Sass Muni-IV, Sass Muni-V, have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c) with Sabre, the Sabre Nominees and their officers and principals, to conduct and/or participate, directly or indirectly, in the conduct of the Sabre Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

88.     The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. Each defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

89.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the Sabre Rigged Bidding Enterprise not implemented its scheme and improperly acquired additional liens through violations of the Rule.  If the Sabre Rigged Bidding Enterprise had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Sabre and the Sabre Nominees, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid.  Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Sabre Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the defendants, Sabre, and the other Sabre Nominees.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Heartwood, DeLaurentis, Bamp, Turer, Richarony, Sass Muni-IV, Sass Muni-V, and for relief as follows:

        (a)    Treble damages;

        (b)    Injunctive relief;

        (c)    Reasonable attorneys' fees and costs; and

        (d)    Such other relief as the Court deems just and proper.

## COUNT III
### Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964
### (Salta, Atlas, IIBZ, Levinson, and Berger)

90.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

91.    At all relevant times, Salta, Atlas, HBZ, Levinson, and Berger, were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

92.    Salta, Atlas, HBZ, Levinson, and Berger constitute an association-in-fact "enterprise" (the "Salta Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Salta Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Levinson and Berger incorporated and became the principals of HBZ, and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those entities. HBZ registered to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's Office stating that it had adhered to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales for Salta's benefit. Salta registered to bid at the 2003, 2004 and 2005 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it had adhered to the Single, Simultaneous Bidder Rule, purchased liens at those tax sales in its own name, and arranged HBZ to acquire liens for Salta's benefit. Atlas directed the affairs of Salta and HBZ which included registering those entities to bid, submitting false registrations to the Cook County Treasurer's Office falsely stating adherence to the Single, Simultaneous Bidder Rule, purchasing liens at auction, having liens or profits transferred to Salta, and insuring that participants were compensated for their participation. The planning and carrying out of the scheme would have been beyond the

capacity of each member of the Salta Rigged Bidding Enterprise acting singly and
without the aid of each other.

93.     Each defendant named in this Count is or has been employed by and/or
associated with the Salta Rigged Bidding Enterprise.

94.     On information and belief, the defendants named in this Count received a
financial benefit for their participation in the scheme. Such financial benefits were the
product of the scheme and could not have been realized had the defendants named in this
Count not joined the Salta Rigged Bidding Entity enabling them to secure more liens than
possible had the County been provided accurate registration information.

95.     Each of the defendants named in this Count have mailed or caused to be
mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of
Salta greatly in excess of the number of liens Salta would have been allowed under the
Rule. Further, each of the defendants named in this Count has conducted and/or
participated in the conduct of the Salta Rigged Bidding Enterprise's affairs through a
pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in
numerous acts of mail fraud.

96.     Plaintiffs have suffered the loss of property related to the liens they would
have acquired, and the profits flowing therefrom, had the defendants named in this Count
not implemented their scheme and improperly acquired liens through their violation of
the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have
obtained liens that were instead acquired by Salta and HBZ, deeds to property related to
those liens, and additional sums based on the statutory penalty of 12% on subsequent
taxes that could have been paid. Plaintiffs do not have access to sufficient information to

- 29 -

identify the amount of damages they have incurred because that information, the Salta

Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of

Salta, Atlas, HBZ, Levinson, and Berger.

WHEREFORE, Plaintiffs respectfully prays for judgment against Salta, Atlas,

HBZ, Levinson, and Berger, and for relief as follows:

(a) Treble damages;

(b) Injunctive relief;

(c) Reasonable attorneys' fees and costs; and

(d) Such other relief as the Court deems just and proper.

## COUNT IV
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
### (Salta, Atlas, HBZ, Levinson, and Berger)

97.     Plaintiffs incorporate by reference the allegations of paragraph 1 through

78 of the Complaint as though fully set forth herein.

98.     At all relevant times, Salta, Atlas, HBZ, Levinson, and Berger were each a

"person" within the meaning of RICO, 18 U.S.C. § 1961(3).

99.     The Salta Rigged Bidding Enterprise is an "enterprise" within the meaning

of RICO, 18 U.S.C. § 1961(4).

100.    Defendants Salta, Atlas, HBZ, Levinson, and Berger have willfully

combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or

participate, directly or indirectly, in the conduct of the Salta Rigged Bidding Enterprise's

affairs through a pattern of racketeering activity based upon numerous acts of mail fraud,

in violation of 18 U.S.C. § 1962(d).

- 30 -

101.     The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. Salta, Atlas, HBZ, Levinson, and Berger each embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

102.     Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Salta and HBZ, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Salta Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of Salta, Atlas, HBZ, Levinson, and Berger.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Salta, Atlas, HBZ, Levinson, and Berger, and for relief as follows:

     (a)     Treble damages;

     (b)     Injunctive relief;

     (c)     Reasonable attorneys' fees and costs; and

     (d)     Such other relief as the Court deems just and proper.

## COUNT V
## Substantive Racketeering – 18 U.S. C. §§ 1962(c) and 1964
### (Against Wheeler-Dealer, BG, Bonnie, and Timothy)

103.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

104.    At all relevant times, Wheeler-Dealer, BG, Bonnie, and Timothy were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

105.    Wheeler-Dealer, BG, Bonnie, and Timothy constitute an association-in-fact "enterprise" (the "Grays Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Grays Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Bonnie and Timothy incorporated and became the principals of HBZ, and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those entities. Wheeler-Dealer registered to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's Office stating that it had adhered to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales in violation of the Rule. BG registered to bid at the 2003, 2004 and 2005 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it had adhered to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales in violation of the Rule. The Grays directed the affairs of Wheeler-Dealer and BG, which included registering those entities to bid, submitting false registrations to the Cook County Treasurer's Office falsely stating

adherence to the Single, Simultaneous Bidder Rule, purchasing liens at auction, and insuring that participants were compensated for their participation. The planning and carrying out of the scheme would have been beyond the capacity of each member of the Grays Rigged Bidding Enterprise acting singly and without the aid of each other.

106.    Each defendant named in this Count is or has been employed by and/or associated with the Grays Rigged Bidding Enterprise.

107.    On information and belief, the defendants named in this Count received a financial benefit for their participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had the defendants named in this Count not joined the Grays Rigged Bidding Entity enabling them to secure more liens than possible had the County been provided accurate registration information.

108.    Each of the defendants named in this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens greatly in excess of the number of liens they would have been allowed under the Rule. Further, each of the defendants named in this Count has conducted and/or participated in the conduct of the Grays Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

109.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Wheeler-Dealer and BG, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on

subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Grays Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the Grays, Wheeler-Dealer and BG.

WHEREFORE, Plaintiffs respectfully prays for judgment against Bonnie, Timothy, Wheeler-Dealer and BG, and for relief as follows:

(a) Treble damages;

(b) Injunctive relief;

(c) Reasonable attorneys' fees and costs; and

(d) Such other relief as the Court deems just and proper.

## COUNT VI
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
### (Against Wheeler-Dealer, BG, Bonnie, and Timothy)

110. Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

111. At all relevant times, Wheeler-Dealer, BG, Bonnie, and Timothy were each a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

112. The Grays Rigged Bidding Enterprise is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

113. Defendants Wheeler-Dealer, BG, Bonnie, and Timothy have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Grays Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

114. The object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. Wheeler-Dealer, BG, Bonnie, and Timothy each embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

115. Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Wheeler-Dealer and BG, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Grays Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of Wheeler-Dealer, BG, Bonnie, and Timothy.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Wheeler-Dealer, BG, Bonnie, and Timothy, and for relief as follows:

     (a)    Treble damages;

     (b)    Injunctive relief;

     (c)    Reasonable attorneys' fees and costs; and

     (d)    Such other relief as the Court deems just and proper.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (Against All Defendants)

116.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 78 of the Complaint as though fully set forth herein.

117.    Heartwood, Bamp, and Richarony were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

118.    The M.D. Sass Entities were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

119.    Salta and HBZ were related, bidding on and purchasing liens in violation of the Rule.

120.    Wheeler-Dealer and BG were related, bidding on and purchasing liens in violation of the Rule.

121.    BCS and Phoenix were registered tax buyers at the 2002, 2003, 2004 and 2005 annual tax sale auctions.

122.    Under the rotational allocation of liens to the lowest bidders employed by the County during the annual tax sale auctions, each bidder has an expectation of obtaining a certain portion of the liens for which they are among the lowest bidders. Defendants obtained liens bid on by Plaintiffs, with identical 0% penalty bids as Defendants successful bids, during the annual tax sales, thereby tortiously interfering with Plaintiffs' rights to obtain those liens. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding

- 36 -

entities. Plaintiffs would have obtained a greater number of tax liens absent defendants conduct. BCS and Phoenix had a reasonable expectation of entering into valid business relationships with the County at the 2002, 2003, 2004 and 2005 annual tax sale auctions.

123. Defendants knew of the Plaintiffs' expectancies for the tax sales in which each of the respective defendants participated.

124. Nevertheless, Defendants purposefully interfered in the respective tax sales in which each participated by filing false registrations and conspiring to violate the Rule. Where related bidders are participating in the process in violation of the Rule, they obtain liens that would have otherwise been obtained by the eligible bidders. By obtaining access to participate in the tax sales through their misrepresentations in their registrations, Defendants were able to participate in the tax sales by bidding on and obtaining tax liens, thereby usurping liens from Plaintiffs through the County's rotational allocation method and preventing the Plaintiffs' legitimate expectancies from ripening into valid business relationships with the County.

125. Absent the respective frauds and collusive bidding schemes of the Defendants, BCS and Phoenix would have obtained a much larger number of liens and would have enjoyed the financial benefits flowing from those purchases, and, accordingly, have been damaged by the loss of those benefits.

WHEREFORE, Plaintiffs BCS and Phoenix respectfully request that this Court grant judgment in its favor and against defendants Heartwood, DeLaurentis, Bamp, Turer, Richarony, Sass Muni-IV and Sass Muni-V, Salta, Atlas, HBZ, Levinson, Berger, Wheeler-Dealer, BG, Bonnie and Timothy:

(a)     Award of damages to compensate the Plaintiffs for their loss of

profits from the Defendants improper purchase of liens and other incidental and

consequential damages including, but not limited to, the financial benefits flowing

from successful bids; and

(b)     Granting such other relief as the Court deems fair and just.

March 9, 2007

BCS SERVICES, INC. and PHOENIX
BOND & INDEMNITY, CO.

By:_____
One of Their Attorneys

Lowell E. Sachnoff
David C. Bohan
John W. Moynihan
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
(312) 207-1000

Jonathan L. Marks
Christian T. Kemnitz
Katten, Muchin, Rosenman, LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5337

# Exhibit A



**Office of the County Treasurer**
**COOK COUNTY, ILLINOIS**
**COUNTY BUILDING**
**118 N. CLARK STREET, ROOM 212**
**Chicago, Illinois 60602**

MARIA PAPPAS
COUNTY TREASURER

**Directions:** **This receipt MUST be signed by the tax buyer.** Attach this receipt to the top of your complete packet. A tax buyer is not eligible to bid and the Cook County Collector will neither acknowledge nor accept any bid from a tax buyer who does not sign this receipt.

1. I have received a copy of the Tax Sale Rules and Regulations.

2. I have read and understand the Tax Sale Rules and Regulations.

3. I agree to comply with these Rules and Regulations.

4. I have received the 2002 Annual Tax Sale Registration Forms, the Acknowledgement of Single, Simultaneous Bidder Rule, and this Receipt.

_____ VP
(Tax Buyer Signature)

Dated: __4/16/2004__

**(please print)**

**TAX BUYER NAME:**   HEARTWOOD 88 LLC

**ADDRESS:**   P.O. Box 5707

Fort Lauderdale, FL 33310

**TELEPHONE:**   (954) 760-5245

**FACSIMILE:**   (954) 760-5524

**E-MAIL:**   mdeluca@bankatlantic.com

**REGISTRATION #:**   _02-050_

Maria Pappas
Cook County Treasurer and Ex-Officio County Collector
Cook County, Illinois

*02-050*
Registration Number

## 2002 Annual Tax Sale Registration

### Section I

**REGISTERED TAX BUYER** – Legal entity to which Certificates of Purchase will be issued:

Name: HEARTWOOD 88 LLC

Address: P.O. Box 5707

City: Fort Lauderdale     State: FL     Zip: 33310

Telephone: (954) 760-5245     FAX: (954) 760-5524

E-Mail: mdeluca@bankatlantic.com     SSN:

FEIN: 30-0147777

### Section II

**AUTHORIZED BIDDERS** – Only the following individuals are authorized to bid on behalf of and bind the above-named Tax Buyer (**Remember to attach photocopy of all bidders' photo identification**):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. Michael G. DeLuca<br>SSN: ▓▓▓ | 421N.E. 25th Terrace<br>Boca Raton, FL 33431 | (561) 362-9292<br>(954) 337-5788 (fax) |
| 2. Paul J. Del Bianco<br>SSN: ▓▓▓ | 1800 N. Andrews Ave 11H<br>Fort Lauderdale, FL 33311 | (954) 760-5561 |
| 3.<br>SSN: | | |
| 4.<br>SSN: | | |

---

**FOR OFFICE USE ONLY**

[ ] LOC   [✓] CC   [ ] MO   [ ] BOND   $2,000,000.00 .00

[✓] Registration signed by all bidders   [✓] I.D. for all bidders

INITIAL REVIEW BY: ___C mD___     APPROVED BY: ___ED4___

1

## Section III

Identify the legal status of the tax buying entity named in Section I (Select ONLY one):

Individual ☐          Assumed Name ☐          Partnership ☐

Limited Partnership ☐          Corporation/LLC [x]          501(c)(3) ☐

If you selected "Individual", you may skip to Section V.

## Section IV

If you are buying under an **Assumed Name**, please provide the following:

County/State in which your Assumed Name is filed: _____
Name of person buying under assumed name: _____
Address of person: _____ City: _____
State: _____ Zip: _____ Telephone: _____
FAX: _____ E-Mail: _____

For each person having an ownership or profit sharing interest in the Assumed Name entity, give the following information (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |
| 2. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |
| 3. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| _____ | | _____ |

If the tax buyer is a **Partnership**, please provide the following regarding ALL PARTNERS (general, limited, equity or other) (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| | | _____ |

2

**2.** _____
SSN: _____

**3.** _____
SSN: _____

If the tax buyer is a **Limited Partnership/LLP**, please provide the following:

State in which Limited Partnership or LLP is registered: _____
Name of the Registered Agent or Officer: _____
Address of Registered Agent or Officer: _____

In addition, give the following information for each member of the Limited Partnership/LLP (use an additional sheet of paper if necessary):

| Member Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| **1.** _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| **2.** _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |
| **3.** _____ | _____ | _____ |
| SSN: _____ | _____ | _____ |

If the tax buyer is a **Corporation/LLC**, please provide the following:

State of Incorporation: _Florida_     Year of Incorporation: _2001_
Is the Corporation in Good Standing: (Yes) / No
If the Corporation is not an Illinois Corporation, is the Corporation licensed to do business in Illinois: (Yes) / No
Is the Corporation Publicly Held: Yes / (No)

Name of Registered Agent: _National Registered Agents Inc._
Address of Registered Agent: _208 South LaSalle St., Suite 1855_
_____ _Chicago, IL 60604_

3

For each person with a stock or profit sharing interest in the corporation, please provide the following, (use an additional sheet of paper if necessary):

| Name/SSN | Address | Telephone, FAX & E-Mail |
|---|---|---|
| 1. BankAtlantic SSN: ████████ | P.O. Box 5707 Fort Lauderdale, FL 33304 | 1-888-413-0881 (954) 760-5245 liensrus@aol.com |
| 2. _____ SSN: _____ | _____ | _____ |
| 3. _____ SSN: _____ | _____ | _____ |

If the tax buyer is a **501(c)(3) Charitable Organization**, please provide the following:

Name of Chief Executive Officer: _____

Address of headquarters: _____

Do you have tax exempt status with the Illinois Department of Revenue? Yes / (No)

### Section V

## REPRESENTATIONS AND WARRANTIES

I represent and warrant, except as is fully disclosed below, with copies of the documentation of the matters disclosed, that the bidding entity registering to be permitted to participate in the 2002 Annual Sale is not affiliated with any other entity or person registering to bid at the 2002 Annual Sale, in that:

(A)  It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the 2002 Annual Sale;

(B)  It shares no common ownership interest or common source of funds with any other bidding entity or person registering to participate at the 2002 Annual Sale;

(C)  It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any other registering bidding entity or person at the 2002 Annual Sale;

(D)  It has no agreements to purchase or sell any parcels successfully bid on at the 2002 Annual Sale by any entity or person known to be ineligible to bid at the 2002 Annual Sale;

4

(E)   It does not stand to gain financially pursuant to an agreement with another bidding entity registering for the 2002 Annual Sale concerning parcels to be bid upon or purchased by such other entity at the 2002 Annual Sale.

Explanations, if needed:

_____

_____

_____

_____

_____

_____

_____

Attach additional pages if necessary.  Attach exhibits, if any, to application.

Each of the undersigned states under oath or affirmation pursuant to §1-109 of the Illinois Code of Civil Procedure that all of the information set forth in this registration is true, correct, and complete.

**Signature of Purchaser**

Date: 4/16/2004

**Signature(s) of ALL Registered Bidder(s):**

1. _____

2. _____

3. _____

4. _____



**OFFICE OF THE COOK COUNTY TREASURER**
**COOK COUNTY, ILLINOIS**
**ROOM 212, COUNTY BUILDING**
**CHICAGO, ILLINOIS 60602**

# <u>Acknowledgement of Single, Simultaneous Bidder Rule</u>

As in prior tax sales, the Cook County Treasurer will enforce the Single, Simultaneous Related Bidding Entity[1] rule.

This rule provides that one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the <u>intended or perceived</u> purpose of having more than one person bidding at the tax sale at the same time for the <u>intended or perceived</u> purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel.

This rule does not prevent a single bidder from alternating the identity of the buyer for whom they are bidding at any given time, <u>so long as related bidding entities, or entities perceived to be related</u>, are not bidding at the same time.

The determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the <u>sole and exclusive discretion</u> of the Cook County Treasurer or her designated representatives.

By signing below, I certify under penalty of perjury pursuant to § 1-109 of the Illinois Code of Civil Procedure, that I am a duly authorized agent, officer, or representative for  HEARTWOOD  88  LLC                                    ; that I have received and understand the above-stated rules; that at no time during the 2002 Annual Tax Sale shall I, or the entity that I represent, or an entity directly or indirectly related to the above tax buyer, have multiple bidders registered as separate bidding entities, simultaneously bidding at the 2002 Annual Sale.

I agree that if the tax buying entity that I represent is challenged by the Cook County Treasurer with respect to having related, or allegedly related, entities simultaneously bidding at the Annual Sale, that all such disputes shall have as exclusive venue and jurisdiction in the Circuit Court of Cook County.

_____          4/16/2004
Authorized Agent for the above Tax Buyer          Date

Gary I. Branse
Printed Name      (Vice-President)

---

[1] "Related Bidding Entity" is defined as any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant in the 2002 Annual Tax Sale.

# Exhibit B

**EXHIBIT B**

**22-5, 22-10 Or 22-25 Notice Mailings Related To Liens**
**That Heartwood 88, Inc. Purchased**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 13-27-412-032-0000 | 12/28/06; 1/26/07 |
| 14-21-112-012-1076 | 12/27/06; 1/25/07 |
| 14-28-204-010-1125 | 12/27/06 |
| 20-19-222-024-0000 | 1/9/07 |
| 14-21-101-044-1826 | 1/8/07; 2/6/07 |

# Exhibit C

## EXHIBIT C

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That Sabre Group, LLC And The Other Sabre Group Nominees Purchased

**Sabre Group, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 29-18-401-013-0000 | 08/14/2002 |
| 29-18-417-013-0000 | 08/14/2002 |
| 13-01-423-018-0000 | 08/20/2002 |
| 13-01-427-010-0000 | 08/20/2002 |
| 13-01-427-012-0000 | 08/20/2002 |
| 13-02-428-039-0000 | 08/20/2002 |
| 13-06-103-039-0000 | 08/20/2002 |
| 13-07-104-069-0000 | 08/20/2002 |
| 00-00-202-010-9034 | 08/20/2002 |
| 02-02-011-101-0000 | 08/20/2002 |
| 20-20-102-016-0000 | 08/20/2002 |
| 20-20-111-043-0000 | 08/20/2002 |
| 20-20-202-020-0000 | 08/20/2002 |
| 20-20-213-017-0000 | 08/20/2002 |
| 20-20-217-018-0000 | 08/20/2002 |
| 20-20-219-034-0000 | 08/20/2002 |
| 20-20-224-004-0000 | 08/20/2002 |
| 20-20-226-042-0000 | 08/20/2002 |
| 31-34-110-023-0000 | 07/16/2003 |
| 31-35-408-026-0000 | 07/16/2003 |
| 07-07-201-058-0000 | 07/16/2003 |
| 25-22-201-014-0000 | 07/18/2003 |
| 25-22-317-009-0000 | 07/18/2003 |
| 25-27-109-015-0000 | 07/18/2003 |
| 25-27-130-051-0000 | 07/18/2003 |

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 26-05-308-006-0000 | 07/18/2003 |
| 26-06-306-007-0000 | 07/18/2003 |
| 26-06-321-015-0000 | 07/18/2003 |
| 26-06-414-025-0000 | 07/18/2003 |
| 32-21-305-021-0000 | 07/19/2004; 07/16/2004; 07/19/2004; 07/21/2004 |
| 32-33-322-033-0000 | 07/19/2004; 07/19/2004; 07/20/2004; 07/21/2004 |
| 32-33-418-026-0000 | 07/19/2004; 07/19/2004; 07/20/2004; 07/21/2004 |
| 33-18-200-010-0000 | 07/19/2004; 07/20/2004; 07/21/2004; 08/31/2004 |
| 33-31-112-026-0000 | 07/19/2004; 07/19/2004; 08/29/2004; 08/30/2004; 09/10/2004 |
| 28-17-213-005-0000 | 07/19/2004; 07/19/2004; 07/20/2004; 08/12/2004; 08/31/2004 |
| 30-17-200-003-0000 | 04/27/2005; 04/29/2005; 05/02/2005 |
| 28-34-402-022-1092 | 05/24/2005 |
| 32-30-107-059-0000 | 07/19/2004; 07/18/04; 07/21/04; 07/22/04 |
| 25-10-102-029-0000 | 11/04/2004 |
| 25-10-317-029-0000 | 10/1/2004; 10/02/2004; 10/04/2004 |

**Regal One, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 29-18-400-026-0000 | 08/14/2002 |
| 29-19-228-046-0000 | 08/14/2002 |
| 13-05-400-025-0000 | 08/20/2002 |
| 13-09-328-062-1010 | 08/20/2002 |
| 20-20-105-011-0000 | 08/20/2002 |
| 20-20-118-010-0000 | 08/20/2002 |
| 20-20-305-041-0000 | 08/20/2002 |
| 20-20-306-022-0000 | 08/20/2002 |
| 20-20-314-025-0000 | 08/20/2002 |
| 20-20-325-025-0000 | 08/20/2002 |
| 20-20-408-036-0000 | 08/20/2002 |
| 31-34-101-032-0000 | 07/16/2003 |
| 31-36-114-041-0000 | 07/16/2003 |
| 31-36-311-029-0000 | 07/16/2003 |
| 31-36-410-030-0000 | 07/16/2003 |
| 15-12-303-028-0000 | 07/16/2003 |
| 15-26-105-026-0000 | 07/16/2003 |
| 25-22-212-031-0000 | 07/18/2003 |
| 25-27-103-010-0000 | 07/18/2003 |
| 25-27-109-020-0000 | 07/18/2003 |
| 25-34-112-021-0000 | 07/18/2003 |
| 26-06-207-024-0000 | 07/18/2003 |
| 26-06-312-004-0000 | 07/18/2003 |
| 26-06-405-022-0000 | 07/18/2003 |
| 28-34-409-012-0000 | 09/22/2004 |
| 06-13-411-006-0000 | 09/22/2004 |
| 18-35-412-025-0000 | 09/09/2004 |
| 10-27-218-032-0000 | 09/22/2004 |
| 02-34-200-038-0000 | 09/22/2004 |

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 31-12-100-075-1016 | 09/22/2004 |
| 29-08-318-020-0000 | 09/22/2004 |
| 30-17-406-010-0000 | 09/22/2004 |
| 20-25-121-007-0000 | 09/27/2004 |
| 13-14-405-039-1016 | 03/27/2004 |
| 32-21-305-021-0000 | 07/19/2004; 07/16/2004; 07/19/2004; 07/21/2004 |
| 32-33-322-033-0000 | 07/19/2004; 07/19/2004; 07/20/2004; 07/21/2004 |
| 32-33-418-026-0000 | 07/19/2004; 07/19/2004; 07/20/2004; 07/21/2004 |
| 33-18-200-010-0000 | 07/19/2004; 07/20/2004; 07/21/2004; 08/31/2004 |
| 33-31-112-026-0000 | 07/19/2004; 07/19/2004; 08/29/2004; 08/30/2004; 09/10/2004 |
| 28-17-213-005-0000 | 07/19/2004 |
| 28-34-402-022-1092 | 05/24/2005 |

**DRN II, Inc.**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 20-10-303-013-0000 | 08/14/2002 |
| 20-11-304-015-1013 | 08/14/2002 |
| 20-15-314-016-0000 | 08/14/2002 |
| 20-22-105-007-0000 | 08/14/2002 |
| 20-22-302-031-0000 | 08/14/2002 |
| 20-22-316-009-0000 | 08/14/2002 |
| 20-22-401-031-0000 | 08/14/2002 |
| 20-22-424-017-0000 | 08/14/2002 |
| 20-23-115-003-0000 | 08/14/2002 |
| 20-23-407-016-0000 | 08/14/2002 |
| 20-23-412-044-0000 | 08/14/2002 |
| 31-26-206-009-0000 | 07/16/2003 |
| 31-34-106-003-0000 | 07/16/2003 |
| 31-35-105-023-0000 | 07/16/2003 |
| 31-35-201-036-0000 | 07/16/2003 |
| 31-35-209-012-0000 | 07/16/2003 |
| 31-35-320-010-0000 | 07/16/2003 |
| 25-22-113-061-0000 | 07/18/2003 |
| 25-22-212-043-0000 | 07/18/2003 |
| 25-22-320-012-0000 | 07/18/2003 |
| 25-27-106-001-0000 | 07/18/2003 |
| 25-27-118-051-0000 | 07/18/2003 |
| 25-28-418-008-0000 | 07/18/2003 |
| 32-30-107-059-0000 | 07/19/2004; 07/18/2004; 07/21/2004; 07/22/2004 |
| 25-10-102-029-0000 | 11/04/2004 |
| 25-10-317-029-0000 | 10/1/2004; 10/02/2004; 10/04/2004 |

**Cronus Projects, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 31-26-100-014-0000 | 07/16/2003 |
| 31-33-102-043-0000 | 07/16/2003 |
| 31-34-403-028-0000 | 07/16/2003 |
| 31-36-109-025-0000 | 07/16/2003 |
| 31-36-200-025-1085 | 07/16/2003 |
| 31-36-200-028-1086 | 07/16/2003 |
| 25-22-201-024-0000 | 07/18/2003 |
| 25-22-317-012-0000 | 07/18/2003 |
| 25-27-104-006-0000 | 07/18/2003 |
| 25-34-111-003-0000 | 07/18/2003 |
| 26-05-313-034-0000 | 07/18/2003 |
| 26-06-104-044-0000 | 07/18/2003 |
| 28-14-207-055-0000 | 09/22/2004 |
| 09-11-201-030-0000 | 09/22/2004 |
| 10-16-312-022-0000 | 09/22/2004 |
| 07-29-209-023-0000 | 09/22/2004 |
| 29-23-206-015-0000 | 09/22/2004 |
| 20-23-406-035-1008 | 09/27/2004 |
| 13-12-103-080-0000 | 09/27/2004 |
| 13-35-277-027-0000 | 09/27/2004 |
| 13-36-316-001-0000 | 09/28/2004 |
| 16-23-227-011-0000 | 09/28/2004 |

**CCJ Investments, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 31-26-414-009-0000 | 07/16/2003 |
| 31-34-307-006-0000 | 07/16/2003 |
| 31-35-106-024-0000 | 07/16/2003 |
| 01-50-120-601-9000 | 07/16/2003 |
| 07-07-202-057-0000 | 07/16/2003 |
| 07-08-300-020-0000 | 07/16/2003 |
| 25-22-108-015-0000 | 07/18/2003 |
| 25-22-308-027-0000 | 07/18/2003 |
| 25-27-105-019-0000 | 07/18/2003 |
| 25-27-116-014-0000 | 07/18/2003 |
| 25-34-118-020-0000 | 07/18/2003 |
| 26-06-204-028-0000 | 07/18/2003 |
| 26-06-305-061-0000 | 07/18/2003 |
| 26-06-311-047-0000 | 07/18/2003 |
| 28-03-211-061-0000 | 09/21/2004 |
| 12-29-304-012-0000 | 09/21/2004 |
| 10-26-108-023-0000 | 09/21/2004 |
| 31-05-102-011-1009 | 09/21/2004 |
| 03-24-200-133-0000 | 09/24/2004 |
| 21-30-202-015-1015 | 09/24/2004 |
| 13-14-202-001-0000 | 09/24/2004 |
| 19-12-315-016-0000 | 09/24/2004 |
| 20-17-301-007-0000 | 09/24/2004 |
| 16-24-204-011-0000 | 09/28/2004 |
| 30-17-200-003-0000 | 04/27/2005; 04/29/2005; 05/02/2005 |

**Georgetown Investors, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 16-20-302-016-0000 | 09/22/2004 |
| 18-30-306-032-0000 | 09/22/2004 |
| 15-09-210-020-0000 | 09/22/2004 |
| 29-04-314-002-0000 | 09/22/2004 |
| 30-17-212-022-0000 | 09/22/2004 |
| 21-31-212-012-0000 | 09/27/2004 |
| 13-27-326-017-0000 | 09/27/2004 |
| 20-07-204-012-0000 | 09/27/2004 |
| 16-08-215-016-0000 | 09/28/2004 |
| 17-07-323-027-0000 | 09/28/2004 |

Case: 1:07-cv-01367 Document #: 1 Filed: 03/09/07 Page 58 of 74 PageID #:58

**Optimum Financial, Inc.**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 31-15-207-011-0000 | 09/22/2004 |
| 30-20-413-053-0000 | 09/22/2004 |
| 13-13-402-033-0000 | 09/27/2004 |
| 19-21-102-034-0000 | 09/27/2004 |
| 20-08-303-037-0000 | 09/27/2004 |
| 14-08-207-017-0000 | 09/28/2004 |
| 13-36-420-015-0000 | 09/28/2004 |
| 17-08-227-007-1012 | 09/28/2004 |

**L.C.C. Venture, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 32-29-205-014-0000 | 09/22/2004 |
| 33-31-103-030-0000 | 09/22/2004 |
| 28-01-320-005-0000 | 09/22/2004 |
| 28-26-309-014-0000 | 09/22/2004 |
| 28-27-411-002-0000 | 09/22/2004 |
| 16-20-404-037-0000 | 09/27/2004 |
| 16-28-219-019-0000 | 09/27/2004 |
| 06-27-209-015-0000 | 09/27/2004 |
| 18-31-307-034-0000 | 09/28/2004 |
| 12-02-409-006-0000 | 09/28/2004 |

**Jeshay, LLC**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 32-29-205-006-0000 | 09/22/2004 |
| 09-14-111-053-0000 | 09/22/2004 |
| 27-25-313-008-0000 | 09/22/2004 |
| 19-30-405-028-0000 | 09/22/2004 |
| 30-20-409-039-0000 | 09/22/2004 |
| 20-35-222-005-0000 | 09/27/2004 |
| 13-01-121-014-0000 | 09/27/2004 |
| 19-24-404-005-0000 | 09/27/2004 |
| 25-08-102-044-0000 | 09/28/2004 |
| 16-02-318-030-0000 | 09/28/2004 |

# Exhibit D

## EXHIBIT D

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That Bamp, LLC Purchased

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 25-18-319-036-1036 | 11/13/06 |
| 13-26-406-014-1009 | 12/1/06; 12/20/06 |
| 25-09-409-009-0000 | 12/27/06; 1/2/07; 1/24/07 |
| 20-20-115-006-0000 | 1/26/07 |

# Exhibit E

**EXHIBIT E**

**22-5, 22-10 Or 22-25 Notice Mailings Related To Liens**
**That Richarony, LLC Purchased**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 18-33-316-019-0000 | 8/31/06; 9/29/06 |
| 25-09-309-072-0000 | 10/16/06; 11/14/06 |
| 20-20-327-015-0000 | 1/9/07; 2/8/07 |
| 16-13-327-039-0000 | 1/11/07 |

# Exhibit F

## EXHIBIT F

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That Sass Muni-IV, LLC Or Sass Muni-V, LLC Purchased

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 05-27-201-040-1048 | 8/8/06 |
| 16-19-102-011-0000 | 9/12/06; 10/11/06 |
| 09-24-109-020-0000 | 11/17/06; 12/20/06 |
| 14-21-101-044-1744 | 12/29/06 |

# Exhibit G

## EXHIBIT G

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That Salta Group, Inc. Purchased

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 14-08-305-058-1007 | 1/16/07 |
| 14-17-117-023-1033 | 1/16/07 |
| 14-21-102-042-1075 | 1/16/07 |
| 14-07-413-034-1014 | 2/6/07 |
| 14-08-203-017-1152 | 2/6/07 |

# Exhibit H

## EXHIBIT H

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That HBZ, Inc. Purchased

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 13-30-314-031-0000 | 1/24/07 |
| 16-15-215-023-0000 | 1/29/07 |
| 16-32-117-011-0000 | @ 2/2/07 |
| 14-08-412-040-1582 | 2/6/07 |
| 14-20-110-040-1025 | 2/6/07 |
| 14-28-322-044-1165 | 2/6/07 |

# Exhibit I

**EXHIBIT I**

**22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
That Wheeler-Dealer, Ltd. Purchased**

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 13-16-107-037-0000 | 4/24/06; 5/9/06 |
| 13-27-323-030-0000 | 4/5/06 |
| 13-31-420-034-0000 | 4/5/06 |
| 13-32-102-034-0000 | 4/5/06; 4/24/06; 5/9/06 |
| 13-33-422-044-0000 | 4/5/06 |
| 13-20-319-001-0000 | 12/8/06 |
| 13-22-301-019-0000 | 12/8/06; 1/2/07 |
| 13-32-213-010-0000 | 12/8/06 |
| 25-16-212-061-0000 | 12/8/06 |
| 25-20-128-011-0000 | 12/8/06 |
| 14-08-412-040-1075 | 12/8/06 |
| 14-20-212-071-1057 | 12/11/06 |
| 14-21-101-034-1358 | 12/8/06 |
| 14-21-314-053-1114 | 12/8/06; 1/2/07 |

# Exhibit J

## EXHIBIT J

### 22-5, 22-10 Or 22-25 Notice Mailings Related To Liens
### That B G Investments, Inc. Purchased

| County PIN No. | Mailing Date (On or About) |
|---|---|
| 13-11-304-024-0000 | 4/7/06; 5/9/06 |
| 13-28-230-039-0000 | 4/7/06 |
| 13-29-215-043-0000 | 4/7/06; 5/9/06 |
| 24-13-305-036-0000 | 4/7/06 |
| 16-08-415-033-0000 | 4/6/06 |
| 16-09-224-030-0000 | 4/7/06 |
| 32-23-418-004-0000 | 9/7/06 |
| 32-28-103-047-0000 | 9/7/06; 9/25/06 |
| 32-33-202-044-0000 | 9/7/06 |
| 13-22-108-039-0000 | 12/5/06 |
| 13-23-104-016-0000 | 12/6/06; 1/2/07 |
| 25-05-229-039-0000 | 12/5/06 |
| 14-21-314-055-1036 | 12/5/06 |