IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCS SERVICES, INC., and PHOENIX BOND<br>& INDEMNITY, CO., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 1367 |
| | ) | |
| HEARTWOOD 88, INC., BAMP, LLC,<br>ANTHONY DELAURENTIS, RICHARD<br>TURER, RICHARANY, LLC,<br>SASS MUNI-IV, LLC, SASS MUNI-V,LLC,<br>SALTA GROUP, INC., MARSHALL ATLAS,<br>HBZ, INC., LORI LEVINSON, JUDITH<br>BERGER, WHEELER-DEALER, LTD.,<br>B G INVESTMENTS, INC., BONNIE J. GRAY,<br>and TIMOTHY E. GRAY | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS

JAMES F. HOLDERMAN, District Judge:

On March 9, 2007, plaintiffs BCS Services, Inc. ("BCS") and Phoenix Bond & Indemnity

Company ("Phoenix") filed a complaint against multiple defendants that compete against the

plaintiffs and other buyers at the annual Cook County tax lien sale.[1] (Dkt. No. 1.) In the

---

[1]This case is related to *Phoenix Bond and Indemnity Co., et al. v. Bridge, et al.*, No. 05 C 4095, ("the *Bridge* case"), which is also pending before this court. In the *Bridge* case, this court granted the motions to dismiss on December 22, 2005, after determining that the plaintiffs lacked standing to bring RICO claims predicated on mail fraud against the defendants. The plaintiffs appealed. On February 20, 2007 the Seventh Circuit Court of Appeals on reversed this court's decision, finding that the plaintiffs had standing and that the plaintiffs were in the "zone of interests" for the mail fraud statute. *Phoenix Bond and Indemnity, Co.*, 477 F.3d 928 (7th Cir. 2007). The *Bridge* case is now before this court again with new motions to dismiss filed by the defendants in that case.

complaint, the plaintiffs bring federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, and bring a state law claim of tortious interference with prospective business advantage. Defendants, for the most part, have filed separate motions to dismiss the complaint.[2] Defendants BG Investments, Inc. ("BG") and Bonnie Gray have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 32.) Defendants Wheeler-Dealer, Ltd. ("Wheeler-Dealer") and Timothy Gray have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), adopting the arguments of Defendant BG and Bonnie Gray. (Dkt. No. 44.) Defendants SASS Muni-IV, LLC ("SASS Muni-IV") and SASS Muni-V, LLC ("SASS Muni-V") have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 57.) Defendant Salta Group, Inc. ("Salta") has filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 85.) Defendant Marshall Atlas has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 88.) Defendant Heartwood 88, LLC ("Heartwood") has filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 93.) Defendants HBZ, Lori Levinson ("Levinson"), and Judith Berger ("Berger") have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 96.) For the reasons stated below, this court grants in part

---

[2] The court has not specified when a defendant, who has filed a separate motion to dismiss, has also adopted co-defendants' arguments. To the extent that defendants have filed motion to adopt certain arguments of co-defendants, those motions are granted, and the court's ruling on those adopted issues apply to the defendants who have asked to join those arguments. Defendants Anthony Delaurentis, Bamp, LLC, Richard Turer, and Richarony, LLC have filed a motion to join and adopt the other defendants' motions to dismiss, with no separate motion to dismiss of their own. (Dkt. No. 100.) The court grants these defendants motion to join or adopt the other defendants' motions.

and denies in part the defendants' motions to dismiss.

BACKGROUND

The background of this case is almost identical to that of the related case, *Phoenix Bond and Indemnity, Co. v. Bridge*, No. 05-C-4095, 2005 WL 3527232 (N.D. Ill. Dec. 21, 2005), *rev'd,* 477 F.3d 928 (7th Cir. 2007). Assuming familiarity with that case, the court summarizes the allegations here, taking all well-pleaded factual allegations in the complaint as true and drawing inferences therefrom in favor of the plaintiffs. *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

I.      Cook County Treasurer's Office's Tax Auction

Each year the Cook County Treasurer's Office sells tax liens at an auction on properties for which the owner, after having been given due notice, has failed to pay real estate taxes thereon. Potential purchasers bid a percentage penalty which the delinquent owner must pay, in addition to the taxes and interest owed, to the winning purchaser to clear the lien. The winning bidder pays the County the delinquent taxes on the property and then owns the tax lien, and has the opportunity to obtain the tax deed, and thus own the property, if the delinquent owner does not pay the penalty, taxes and interests within the statutory period.

The penalty percentage that the potential purchasers may bid is capped at a maximum of 18% by statute and a minimum of 0% by County regulation. The winning bids are those at the lowest penalty rate. Those who bid 0% expect to make their profits not from the penalty but from either resale to the owners or a sale to another purchaser.

For properties where several bidders bid the lowest penalty rate of 0%, the Treasurer allocates those properties on a rotational basis to each of those bidders to ensure the equal

apportionment of liens among the lowest bidders. The County passed the Simultaneous, Single Bidder Rule ("the Rule") to prevent minimum bidders from obtaining more than their share of liens by having more representatives placing minimum bids. The Rule prohibits related bidding entities from simultaneously bidding on the same property at the auction.[3] All bidders must register with the Treasurer to participate in the auction and, at that time, the bidders must affirm under penalty of perjury compliance with the Rule, which has been in place since the 2001 auction.

In a form entitled "Acknowledgment of the Single, Simultaneous Bidder Rule," which a party signs to affirm compliance with the Rule, a related bidding entity is defined in a footnote as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner, or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant" at the annual tax sale. (Cmpl. Ex. A at 7.) However, the registration form for the auction in Section V requires potential bidders to make more detailed representations and warrants that the potential bidder is not affiliated with any other entity or person registering. Section V defines affiliated entities as those having (A) capital, purchase money or other finances in common with any other bidding entity or person registering at the auction; (B) common ownership interest or common source of funds with any other bidding

---

[3] The Single, Simultaneous Bidder Rule provides that "one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the intended or perceived purpose of having more than one person bidding at the tax sale at the same time for the intended or perceived purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel." (Cmpl. Ex. A at 7.)

entity or person registering to participate at the auction; (C) agreements to purchase or sell parcels successfully bid on at the auction to another registered bidding entity or person; (D) agreements to purchase or sell any parcels successfully bid on at the auction to an entity or person known to be ineligible to bid at the auction; and (E) standing to gain financially pursuant to an agreement with another bidding entity registered at the auction concerning parcels to be bid on or purchased by such other entity. (Cmpl. Ex. A at 5-6.) A single bidder may represent several buyers, so long as the bidder is not acting on behalf of multiple buyers at the same time on the same property.

Once there is a winning bidder on a property, the winning bidder must provide notice to the owner of the property in accordance with Illinois law to complete the sale of the tax lien or to later petition for a deed to the property. Within four months and 15 days of the purchase of the lien, buyers provide notice pursuant to 35 Ill. Comp. Stat. 200/22-5 ("22-5 notice") to the County that the County then mails to the owner. The buyer pays for the mailings to the owner. In addition, if the owner were not to redeem the property within the statutory period and the buyer wishes to petition for a deed, the buyer must file a petition five months before the end of the redemption period and provide notice of the petition pursuant to 35 Ill. Comp. Stat. 200/22-10 ("22-10 notice") to the owners, occupants, or other interested parties to the property. The County sheriff serves the 22-10 notice of the deed petition on the owners, occupants, or interested parties. Certified mail is used to send 22-10 notices to parties residing outside the state.

II.    Alleged RICO Violations Against the Defendant Enterprises

The plaintiffs filed a complaint on March 9, 2007, alleging substantive RICO and RICO

conspiracy violations with mail fraud as the predicate acts against the defendants. The plaintiffs allege that the defendants participated in a scheme to defraud the Treasurer and competing buyers of tax liens by falsely representing that they were nonrelated bidders and falsely affirming to follow the Single, Simultaneous Bidder Rule during various Cook County tax sales from 2002 to 2005 and used the mail to execute the scheme to defraud. According to the plaintiffs, the various combinations of the defendants formed three different "rigged bidding enterprises" to act together as related bidders and bid on the same properties at the lowest penalty rate in order to increase their share of allotted properties.

A.     "Sabre Rigged Bidding Enterprise"

The plaintiffs allege in Counts I and II the existence of the "Sabre Rigged Bidding Enterprise" in violation of RICO's substantive and conspiracy laws. Defendants Heartwood, Bamp, DeLaurentis, Richarony, Turer, Sass Muni-IV and Sass-Muni-V allegedly agreed along with various entities named in the related *Bridge* case to act as related bidding entities on behalf of Sabre Group, LLC ("Sabre") (another defendant in the *Bridge* case). The plaintiffs allege that, in carrying out the scheme, Heartland, Bamp, DeLuaurentis, Richarony, Turer and the Sass Muni defendants submitted false registrations to the Treasurer's Office, stating that they were unrelated bidders and would adhere to the Rule, despite purchasing liens for Sabre's benefit through a later transfer of the liens to Sabre in exchange for a financial benefit. These false statements were made so that the defendants would have more bidders and could purchase from the Treasurer's rotational allocation a greater amount of those properties that receive multiple bids of the lowest percentage penalties to the detriment of the plaintiffs who had also bid the minimum penalty on these properties.

B.     "Salta Rigged Bidding Enterprise"

In Counts III and IV of the complaint, the plaintiffs alleged the existence of the "Salta Rigged Bidding Enterprise" in violation of RICO's substantive and conspiracy laws.  The plaintiffs contend that defendant HBZ, through principals Levinson and Berger, and Salta, through principal Atlas, filed false statements in the registration process, representing that they were not related to the Treasurer at the time of registration for the 2003 through 2005 tax auctions and that they would abide by the Rule.  These false statements were made so that the defendants would have more bidders and could purchase from the Treasurer's rotational allocation a greater amount of those properties that receive multiple bids of the lowest percentage penalties.

C.     "Grays Rigged Bidding Enterprise"

In Counts V and VI of the complaint, the plaintiffs alleged the existence of the "Grays Rigged Bidding Enterprise" in violation of RICO's substantive and conspiracy laws.  The plaintiffs contend that defendant Wheeler-Dealer, through principal and defendant Timothy Gray, and defendant BG, through principal and defendant Bonnie Gray, filed false statements in the registration process, representing that they were not related to the Treasurer at the time of registration for the 2003 through 2005 tax auctions and that they would abide by the Rule.  These false statements were made so that the defendants would have more bidders and could purchase from the Treasurer's rotational allocation a greater amount of those properties that receive multiple bids of the lowest percentage penalties.

D.     RICO Violations Alleged Against Each Enterprise, Respectively

In each of the RICO Counts, the plaintiffs claim that the false representations by the

members of each enterprise were part of a scheme to defraud in violation of the RICO Act.  The

plaintiffs allege the existence of association-in-fact enterprises, called respectively the Sabre

Rigged Bidding Enterprise, the Salta Rigged Bidding Enterprise, and the Grays Rigged Bidding

Enterprise, with mail fraud as the predicate acts of each enterprise, identifying the loss chance of

winning more liens under the rotational allotment system for multiple minimum bidders.  The

predicate acts of mail fraud alleged is each enterprise's scheme to defraud the County and

competitive bidders with the defendants' misrepresentations of nonrelatedness in order secure

more than their share of tax liens evenly allocated among all minimum bidders.  Each

enterprise's scheme was alleged to be executed through the use of the mail, in that the successful

bidders caused to be sent the 22-5 and 22-10 forms to the delinquent owners in order to complete

the sale of the tax lien or to later petition for a deed to the property.

APPLICABLE LEGAL STANDARDS

I.    Federal Rule of Civil Procedure 12(b)(6)

In response to the plaintiffs' allegations, the defendants have filed mostly separate

motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Under Federal Rule of Civil

Procedure 12(b)(6), dismissal of a claim is proper if a plaintiff has not, at minimum, included

enough factual allegations to state a claim for relief that is "plausible on its face."  *Bell Atlantic

Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise

a right to relief above the speculative level" such that there is a "reasonable expectation that

discovery will reveal evidence of [the claim or element]."  *Id.* at 1965; *see EEOC v. Concentra

Health Servs., Inc.*, No. 06-3436 — F.3d —, 2007 WL 2215764, *2 (7th Cir. Aug. 3, 2007).  A

plaintiff may, however, plead himself out of court by including facts in the complaint that

undermine his claims. *Concentra Health Servs., Inc.*, 2007 WL 2215764 at *3. In addition to the allegations contained in the complaint, the court may consider the attachments to the complaint. *See* Fed. R. Civ. P. 10(c); *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752 (7th Cir. 2001).

Allegations of fraud subject a complaint to heightened pleading standards under Federal Rules of Civil Procedure 9(b), which requires a plaintiff to plead averments of fraud with particularity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). For purposes of particularity, a plaintiff must allege "the who, what, where, and when of the alleged fraud." *Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Allegations of malice, intent, knowledge and other condition of mind, however, may be averred generally. Fed. R. Civ. P. 9(b); *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). As the Supreme Court acknowledged in *Rotella v. Wood,* 528 U.S. 549, 560 (2000), Federal Rule of Civil Procedure 11(b)(3) grants some flexibility to Rule 9(b)'s particularity requirement, allowing pleadings "based on evidence reasonably anticipated after further investigation or discovery."

II.  <u>RICO, §§ 1962 and 1964</u>

Briefly, RICO prohibits a "person" from conducting or participating in the conduct of an enterprise, which is engaged in activities affecting interstate or foreign commerce, through a pattern of racketeering activity or conspiracy to do the same. §§ 1964(c), (d); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985). Racketeering activity is "any act 'chargeable' under several generically described state criminal laws, and any act 'indictable'" under statutorily specified federal criminal provisions, including mail fraud. *Sedima,* 473 U.S. at

483.  Private plaintiffs injured in their "business or property by reason of a violation of § 1962" may bring a civil suit against the alleged violators for treble damages.  *See* § 1962.  To adequately plead a RICO violation under § 1962, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See Roger Whitmore's Automative Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 670 (7th Cir. 2005).  A pattern of racketeering activities consists of at least two predicate acts, such as mail fraud, committed within a ten year period.  18 U.S.C. § 1961(5).  In addition, the RICO violation must be both the "but for" causation and the proximate cause for the injury to the plaintiffs' business or property, in that the alleged injury must be caused by a racketeering act or an act otherwise wrongful under RICO. *See Beck v. Prupis,* 529 U.S. 494, 505-06 (2000); *Holmes v. Securities Investor Protection Corp.*, 504 U.S. 258, 268 (1992); *Corley v. Rosewood Care Ctr., Inc., of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004).

ANALYSIS

I.     Argument Presented by Defendant Heartwood

       A.  Cognizable RICO Claim

       Turning to the substantive RICO arguments raised by the defendants, defendant Heartwood first contends that the plaintiffs failed to allege a RICO enterprise that is distinct, separate and apart from a pattern of racketeering activities for the Sabre Rigged Bidding Enterprise, in that the purpose of the Sabre Rigged Bidding Enterprise was only to carry out the racketeering acts.  Heartwood explains that the plaintiffs have not alleged that the Sabre Rigged Bidding Enterprise has a structure or goals separate from the predicate acts themselves.  In response, the plaintiffs argue that Heartwood misunderstands the case law, asserting that the case

law on which Heartwood premises its argument, *United States v. Turkette*, 452 U.S. 576 (1981), did not hold that an enterprise must have a purpose separate and apart from engaging in racketeering acts; rather *Turkette* held that an enterprise and a pattern of racketeering activities are two separate elements that must be established and alleging and proving one of these elements is not enough. *Turkette*, 452 U.S. at 583; *see United States v. Rogers,* 89 F.3d 1326, 1336 (7th Cir. 1996) (cited by the plaintiffs in support).

The plaintiffs are correct that *Turkette* does not hold that an enterprise need not have a purpose separate and apart from engaging in racketeering acts. The question, however, is whether the plaintiffs have sufficiently pleaded the requisite element for an enterprise of structure. *Rogers*, 89 F.3d at 1337 (the "hallmark of an enterprise is 'structure'"). A RICO enterprise requires some sort of organizational structure of "persons associated through time, joined in purpose, and organized in a manner amendable to hierarchial or consensual decision making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted); *see, e.g., Turkette*, 452 U.S. at 583; *United States v. Olson,* 450 F.3d 655, 668 (7th Cir. 2006); *Stachon v. United Consumers Club, Inc*., 229 F.3d 673, 675 (7th Cir. 2000). "The continuity of an informal enterprise and the differentiation among roles can provide the requisite 'structure' to prove the element of enterprise." *Rogers*, 89 F.3d at 1337.

The plaintiffs' allegations regarding the structure of the Sabre Rigged Bidding Enterprise are more sparse than desired, making this a very close question. However, at this stage of the pleadings, the court finds that the plaintiffs have sufficiently alleged the existence of an enterprise. Sabre Rigged Bidding Enterprise is alleged to be in place for the benefit of Sabre, with the other entities working as nominees on Sabre's behalf. This organization is sufficient at

11

this point in the litigation to satisfy the existence of a hierarchy and the different role of the nominee-entities versus the role of the leader Sabre in the enterprise. In addition, the allegations demonstrating the use of this enterprise in the 2002 through 2005 tax sales provides the continuity for the enterprise's structure. The court expects the plaintiffs to be better able to establish the element of the Sabre Rigged Bidding Enterprise after discovery, but at this stage in the pleadings, the allegations are enough to continue.

II.    Arguments Presented by Defendant Heartwood and Defendants HBZ, Levinson, and Berger, and Defendant Heartwood

A.    RICO Causation

Several of the defendants also argue that the plaintiffs cannot establish any injury caused by the predicate acts of mail fraud. In arguing that no injury stems from the predicate acts of mail fraud, the defendants separately classify the actual mailings as the predicate acts, rather than the mail fraud. The defendants' splitting of the mailings from the predicate act of the mail fraud ignores the Seventh Circuit's decision in the related case, *Phoenix Bond and Indemnity, Co.*, 477 F.3d 928, and dooms their argument.

Narrowly reading *Phoenix Bond and Indemnity, Co.*, 477 F.3d 928, to relate only to standing, the defendants have overlooked the Seventh Circuit's discussion on the predicate act of mail fraud. As the Seventh Circuit explained in *Phoenix Bond and Indemnity, Co.*, the "mail fraud statute, 18 U.S.C. § 1341, defines a fraudulent *scheme*, rather than a particular false statement, as the crime. *Id.* at 932. The mailings need not be fraudulent themselves, rather the "use of the mail" must be "integral to the scheme [to defraud]." *Id.* at 932. Recognizing that there is a circuit split on whether the direct victim may recover through RICO if the victim is not the direct recipient of the false statements, the Seventh Circuit reaffirmed its former position and

held that the victims need not be the direct recipients of the false statements to have a cause of action. *Id.* at 932-33.

As applied to this case, the plaintiffs have sufficiently alleged an injury proximately caused by the predicate act of mail fraud. The defendants' alleged scheme was to misrepresent their nonrelatedness, so that they, as minimum bidders, could receive a greater share of the allocated properties. The use of the mail was integral to this alleged scheme to defraud because, without causing forms 22-5 and 22-10 to be mailed to the owners, the winning bidders would be unable to complete the sale of the tax lien or later petition for the deed. The plaintiffs' injury was that the defendants were able to purchase more than their rightful share of the liens, and the purchase could only be completed through the mailing of the proper forms.

The existence of "but for" and proximate causation is answered resolutely and affirmatively by the Seventh Circuit in the related case, *Phoenix Bond and Indemnity, Co.* In response to the question whether the plaintiffs were the ones injured by the predicate acts of mail fraud, even if they were not the recipients of the false statement or of the later mailings, the Seventh Circuit held that the plaintiffs in the *Bridge* case (who, this court notes, are the same parties in this case) as the losing bidders, "who acquire fewer tax liens than they would if the Single, Simultaneous Bidder Rule were followed," were the "*only* injured parties." *Phoenix Bond and Indemnity, Co.*, 477 F.3d at 931. Furthermore, the plaintiffs, as the direct victims, need not be the direct recipients of the false statements for there to be proximate causation. *Id.* at 932.

Defendants HBZ, Levinson, and Berger next argue that the "defendants' purported violation of the Rule cannot support [plaintiffs'] claims under Section 1962 because violation of

the Rule is not among the state law acts that fall within the definition of 'racketeering activity.'" (Def. Mem. at 8.)  As discussed above, the alleged predicate act is mail fraud, not the violation of the Rule, and mail fraud is recognized under RICO as a proper racketeering activity.

In the alternative, these defendants, HBZ, Levinson, and Berger, contend that even if the plaintiffs' injuries constituted a RICO violation, the losses are too remote and speculative to recover.  In support of their argument, the defendants cite *James Cape and Sons Co. v. PCC Construction Co.*, 453 F.3d 396 (7th Cir. 2006), in which a competitor sued those who had rigged bids for state construction contracts under RICO.  The Seventh Circuit in *James Cape* held that there was no proximate causation because a "court could never be certain whether [the plaintiff] would have won any of the contracts that were the subject of the conspiracy for any number of reasons unconnected to the asserted pattern of fraud" or what "portion of its 'lost market share' is attributable to the bids lost to the bid-rigging scheme."  *Id.* at 403 (internal citations and quotations omitted.)

*James Cape* is distinguishable from this circumstance, because, unlike *James Cape*, here those bidding all bid the same minimum penalty percentage and those minimum bidders received the properties through an automated distribution of the properties according to a rotational system.  There are no other factors to complicate the calculation; all that is needed is the number of those bidding the minimum amount, which properties they bid on, and the automatic rotational distribution of the properties among those minimum bidders.

The court also rejects defendant Heartwood's characterization that the injury improperly predated the mailings.  As described above, the mailings completed the purchase of the lien or the petition for the deed, and thus were part and parcel of the entire scheme.  The injury would

14

not have occurred if the notices were never mailed because the sales of the liens and/or the redemptions of the deeds would not have been executed. The court understands the mailings to be a necessary part of the completion of the scheme to defraud and thus that the fraud and the injury could not predate the mailings.

III.    Arguments Presented by Defendant Salta and Defendants BG and Bonnie Gray

   A.    Violation of the Single Simultaneous Bidder Rule

   Like defendants HBZ, Levinson, and Berger, Salta first argues that the plaintiffs cannot seek relief for a violation of the Rule because the Rule does not provide the plaintiff any rights or a private cause of action. As discussed above, the plaintiffs are alleging a claim of RICO with the predicate act of mail fraud, not a violation of the Rule, and mail fraud is recognized under RICO as a proper racketeering activity. Part of the RICO claim is an allegation that the defendants falsely represented to the Treasurer that they were unrelated entities and falsely affirmed to follow the Rule. But, a violation of the Rule alleged as part of the scheme to defraud does not convert the action from a RICO claim to an action for recovery under the Rule.

   B.    The Pleading of Relatedness

   Defendants Salta, BG, and Bonnie Gray also argue that the plaintiffs have not pleaded facts demonstrating that Salta or BG violated the Rule. The court disagrees. The plaintiffs allege with specificity the false statements made to the Treasurer about nonrelatedness, and these allegations are sufficient for their claims of RICO with predicate acts of mail fraud. The plaintiffs then allege with sufficient particularity at this point in the litigation that Salta and HBZ are related entities and that BG and Wheeler Dealer are related entitites.

   Turning first to Salta's and HBZ's relatedness, the plaintiffs have asserted that Atlas, the

principal of Salta, has lived at the same address as Levinson, the principals of HBZ; that Berger

has been affiliated with Salta's address; Levinson has been an employee of Salta while Berger

has been employed by Atlas; and that Salta paid the taxes on properties purchased by HBZ

during the annual tax sales.  The plaintiffs have asserted on information and belief that Levinson

is the daughter of Atlas.  The facts alleged are enough to satisfy the requirements of Federal Rule

of Civil Procedure 9(b) to establish relatedness, especially given that evidence proving

relatedness is likely in the sole possession of the defendants, accessible to the plaintiff only

through discovery.  *See Rotella,* 528 U.S. at 560.

Next addressing the relatedness of defendants BG and Wheeler Dealer, the plaintiffs have

sufficiently alleged at this stage in the litigation enough that court can infer relatedness between

the two entities.  Wheeler Dealer's benefit or vice versa, and the allegations do not establish a

violation of the Rule.  The court finds that the allegations by the plaintiffs of the Gray Rigged

Bidding Enterprise defendants are sufficient to draw an appropriate inference of relatedness, and

thus that the defendants made false statements affirming that they were not related and that they

would uphold the Rule.  The plaintiffs allege that BG and Wheeler Dealer had a contractual

relationship, pursuant to which they shared expenses and office functions, that they obtained

consecutively numbered letters of credit from LaSalle Bank for the 2004 tax sale, and that the

two principals for each business, Bonnie and Timothy Gray, respectively, are closely related.  As

the defendants assert, these allegations do not alone prove relatedness in violation of the Rule.

But the allegations, at this point, are sufficient to satisfy the requirements of Federal Rule of

Civil Procedure 9(b) for establishing relatedness, especially given that evidence proving

relatedness is likely in the sole possession of the defendants, accessible to the plaintiff only

through discovery. *See Rotella,* 528 U.S. at 560.

To the extent the Gray Rigged Bidding Enterprise defendants try to separate themselves from the other two enterprises by arguing that they, unlike entities involved in the other two enterprises, did not act as nominees for each other, the court sees no relevant difference between Gray Rigged Bidding Enterprise and the other enterprises. It is the bidding on liens by related entities, after falsely representing that the entities are not related, that forms of the basis of the scheme to defraud; the use of nominees is just a different method. The relevant point is that the Gray Rigged Bidding Enterprise defendants also were allegedly related and made false representations as part of a scheme to defraud that they were not related in order to secure more than their fair share of the tax liens bid on by minimum penalty bidders.

IV.    Arguments Presented by Defendants SASS Muni Entities

A.      Constitutionality of the Single Simultaneous Bidder Rule

SASS Muni defendants argue that the plaintiffs fail to state a RICO claim, specifically asserting that the underlying scheme is based entirely on a violation of the Rule and the Rule is not valid. According to the SASS Muni defendants, the Rule is unconstitutional and invalid, and a scheme to defraud based on legal conduct cannot serve as a predicate to a RICO claim.

The SASS Muni defendants first assert that the Rule is invalid, arguing that the Rule restricts the free assignability of tax liens provided for in 35 Ill. Comp. Stat. § 200/21-250 of the Illinois Property Tax Code. Section 200/21-250, subtitled "Certificate of Purchase," states in relevant part that, "A certificate of purchase shall be assignable by endorsement. An assignment shall vest in the assignee or his or her legal representatives, all the right and title of the original purchaser." 35 Ill. Comp. Stat. § 200/21-250. The certificates of purchase to which this statute

refers are issued after the liens are sold at the tax sale.

As pointed out by the plaintiffs, the Rule restricts only pre-sale agreements to transfer liens and properties, not post-sale agreements to transfer purchased liens. The Rule does not limit the assignability of purchase certificates issued after the liens are sold at the auction, and thus does not contravene the Property Tax Code.

The SASS Muni defendants also contend that the Rule is unconstitutionally vague based on what the defendants argue is an over-broad definition of "Related Bidding Entity" that includes any two entities with a "contractual relationship" of any kind, even one unrelated to the tax sale. The SASS Muni defendants are correct that the definition provided for a "Related Bidding Entity" initially is so broad as to include entities with contractual agreements that have nothing to do with the tax sale or the collusion that the Rule is intended to prevent. This broad definition, however, is sufficiently narrowed by Section V of the Annual Tax Sale Registration Form, which requires the registering entity to represent and warrant that the entity is not "affiliated" with any other entity or person registering. (Cmpl. Ex. A at 5-6.) Section V of the Form defines the affiliation as having (A) capital, purchase money, or other finances in common with any other bidding entity or person registering to big at the annual sale; (B) having common ownership interest or common source of funds with any other bidding entity or person participating in the annual sale; (C) having agreements to purchase or sell any parcels successfully bid on at the annual sale by any other registering entity or person; (D) having agreements to purchase or sell any parcels successfully bid on at the annual sale by any entity or person known to be ineligible to bid at the annual sale; and (E) standing to gain financially pursuant to an agreement with another bidding entity registered for the annual sale concerning

parcels to be bid upon or purchased by such other entity. (Cmpl. Ex. A at 5-6.) Based on this

further narrowing of the definition of a "Related Bidding Entity" in the registration form for the

annual tax sale, the court finds that the Rule is not impermissibly vague or overbroad. *See also*

*Gresham v. Peterson*, 225 F.3d 899, 908 (7th Cir. 2000) (where a state court has not had the

opportunity to interpret the terms of a statute challenged for vagueness or being overbroad and

where a reasonable interpretation by the state court could render the statute constitutional,

federal courts are discouraged from finding a state statute impermissibly vague or overbroad.)

V.    Arguments Presented by Defendants HBZ, Levinson, and Berger, and Defendant Salta,
       and Defendants BG and Bonnie Gray, and Defendants SASS Muni Entities

    A.    Pleading RICO with Particularity

This argument, raised by all the defendants, is that the plaintiffs have failed to plead the

allegations of fraud and the predicate acts of mail fraud with particularity with regard to the

RICO claims. For RICO claims alleging mail or wire fraud as predicate acts, a plaintiff must,

within reason, describe the time, place, and content of the mail and wire communications, and

identify the parties to these communications. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327

(7th Cir. 1994); *Gas Tech. Inst. v. Rehmat*, No. 05 C 2512, 2006 WL 3743576, *25 (N.D. Ill.

Dec. 15, 2006).

In this case, the defendants appear to overlook the information provided in the exhibits

attached to the complaint, which list the 22-5, 22-10, and 22-25 notice mailings related to Liens

that each allegedly related entity mailed to the property, identified by the "County Pin No." and

approximate mailing date. When taken with the allegations in the complaint, the court finds that

the information listed in the exhibits satisfy the particularity standard for alleging mail fraud.

With regard to the scheme to defraud, the plaintiffs for the most part pleaded their claims

with particularity. The plaintiffs identify that the false representations were made by defendants at the time of registration, and that the defendants allegedly falsely claimed not to be related to another bidder and falsely claimed that they were not violating the Rule. The liens that the defendants obtained are then listed in the exhibits attached to the complaint.

The plaintiffs, however, still failed to list with particularity the properties on which they also bid the minimum penalty percentage. The plaintiffs alleged that defendants in each enterprise bid on the same liens as other entities in the respective enterprise during the 2002, 2003, 2004, and 2005 tax sales, and obtained liens on which the plaintiffs bid. (Cmpl. ¶ 64.) Yet, the plaintiffs did not identify the specific properties on which the defendants and the plaintiffs bid and whichever defendant won. The court will provide the plaintiffs with the opportunity to amend their complaint to add these specific allegations.

VI.   <u>Arguments Presented by Defendants HBZ, Levinson, and Berger, and Defendant Salta and Defendant Heartwood and Defendants SASS Muni entitities</u>

    A.   Failure to Plead Purposeful Interference with an Expectation for Tortious Interference with a Prospective Business Advantage

Finally, several defendants challenge the plaintiffs' state claim of tortious interference with a prospective business advantage, arguing that, to the extent that the plaintiffs have failed to plead with particularity their averments of fraud and that this claim rests on those averments, the claim should be dismissed. The defendants also contend that, by failing to identify specific properties which the plaintiffs did not obtain as a result of the defendants' actions, the plaintiffs did not plead an adequate cause of action. As discussed above, the court will give the plaintiff an opportunity to amend their complaint, which should cure both these alleged defects regarding this claim.

In addition, all the defendants, with the exception of defendants BG, Wheeler Dealer, and Bonnie and Timothy Gray, argue that the plaintiffs failed to allege facts indicating that the defendants acted with the purpose of injuring the plaintiff's expectancies. The defendants argue, there is nothing to suggest that they were "anything but indifferent" to the plaintiffs, citing *Kemmerer v. John D. & Catherine T. MacArthur Foundation*, 594 F.Supp. 121, 123 (C.D. Ill. 1984). The allegations about the defendants' conduct, however, do not show that they were indifferent to the plaintiffs' expectancies, or that they did not specifically target them. Rather, from the allegations, an individual can infer that the defendants specifically targeted the plaintiffs as part of a group of other minimum bidders competing for an allocation of the tax liens. At this stage, the plaintiffs' allegations in this regard are sufficient.

VII.    Argument Presented by Defendant Atlas

A.    No Personal Liability

Defendant Atlas, the principal of Salta, contends that the plaintiffs have not pleaded any allegations that specifically involving him or holding him personally liable for the alleged tortious conduct of Salta through the piercing of the corporate veil, and thus he should be dismissed from the lawsuit. At this stage in the litigation, however, this court will not dismiss Atlas from the lawsuit. The plaintiffs have sufficiently asserted allegations from which the court can infer that Atlas committed fraud either on behalf of Salta or on his own. Under Illinois law, there is a fraud exception for limiting the liability of corporate officers; "a corporate officer is individually liable for fraudulent acts of his own or those of the corporation in which he participates." *Express Valet, Inc. v. City of Chicago*, 869 N.E.2d 964, 976 (Ill. App. Ct. 2007); *see also DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes*, 384 F.3d 338,

346 (7th Cir. 2004) (Under Indiana law, "an officer or shareholder of a corporation can be held individually liable, without the need to pierce the corporate veil, if he personally participates in the fraud.").

CONCLUSION

Accordingly, the court grants the motion to join and adopt the other defendants' motions to dismiss filed by Anthony Delaurentis, Bamp, LLC, Richard Turer, and Richarony, LLC (Dkt. No. 100). Defendants' motions to dismiss (Dkt. No. 32, 44, 57, 85, 88, 93, 96) are granted in part and denied in part. All counts are dismissed without prejudice as explained in the Memorandum Opinion. Plaintiffs did not plead with sufficient particularity to adequately provide "fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Plaintiffs failed to identify on which liens the plaintiffs bid. Also, plaintiffs failed to identify on which properties the defendants bid, and whether the defendants won or lost those bids. Plaintiffs have until 8/31/07 to file a First Amended Complaint consistent with this opinion and Federal Rule of Civil Procedure 11. Defendants are to file an answer to the First Amended Complaint by 9/21/07. Counsel are requested to hold a Rule 26(f) conference and file a jointly completed Form 35 signed by counsel for each party on or before 10/9/07. Counsel are requested to submit a courtesy copy of the Form 35 to Chambers on the day of filing. This case is set for a report on status and entry of a scheduling order at 9:00 a.m. on 10/16/07. The parties are encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: August 10, 2007