**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BCS SERVICES, INC., et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | No. 07 C 1367 |
| v. | ) | |
| | ) | Chief Judge James Holderman |
| **HEARTWOOD 88, LLC, et al.** | ) | |
| | ) | Magistrate Judge Martin Ashman |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO QUASH SUBPOENAS AND STAY DISCOVERY**

## I.  INTRODUCTION

Defendants Sass Muni-IV, LLC and Sass Muni-V, LLC (Dkt. Nos. 62, 66) and Salta Group and Marshall Atlas (Dkt. No. 68) filed motions to quash subpoenas served by plaintiffs on ten banks and to stay discovery. Other defendants filed motions to quash and stay, joining in the arguments made by the Sass and Salta: defendants HBZ, Inc., Lori Levinson and Judith Berger (Dkt. No. 71); defendant Heartwood 88, LLC (Dkt. No. 73); defendants BG Investments and Bonnie J. Gray (Dkt. No. 165); and defendants Wheeler-Dealer Ltd. and Timothy Gray (Dkt. No. 166). Illustrating that this case and the related case, *Phoenix Bond & Indemnity Co. v. Bridge,* No. 05-C-4095 (the "'05 *Bridge* case"), are completely intertwined, Sabre Group, LLC, John Bridge and Barrett Rochman (the "Sabre Defendants"), who are defendants in the '05 *Bridge* case but not parties in this case, filed motions in this case to quash subpoenas and to stay discovery. (*See* (Dkt. Nos. 63, 64).) This Court has already twice rejected motions to stay discovery in the '05 *Bridge* case. The Court's analysis underlying those decisions applies equally here, and the motions to stay and to quash should be denied.

**II.     BACKGROUND**

Although this action was filed in 2007, the events that have transpired in the related '05 *Bridge* case, which plaintiffs filed against the Sabre Defendants and some of their nominees, impact the analysis of the pending motions. Shortly after plaintiffs filed their complaint in the '05 *Bridge* case, certain defendants moved to stay discovery in that case pending the resolution of motions to dismiss that had been filed by all defendants. That motion to stay was denied without briefing. (Case No. 05-C-4095, Dkt. No. 78.) Discovery proceeded in that case until the Court dismissed plaintiffs' complaint. The Seventh Circuit ultimately reversed that dismissal and remanded the case. *Phoenix Bond & Indemnity Co. v. John Bridge,* 477 F.3d 928 (7th Cir. 2007). After the Seventh Circuit returned the mandate, the Sabre Defendants moved to stay discovery in the '05 *Bridge* case. They argued that the motions to dismiss pending in both this case and the '05 Bridge case, as well as the subpoenas at issue here, required the matter to be stayed, but the court rejected their argument. (Case No. 05-C-4095, Dkt. No. 192.) The Court again denied the motion to stay without briefing, citing the fact "that the case has already been on appeal once and remanded to the district court based on motions to dismiss" as a basis for its conclusion that discovery needed to resume without limitation. *Id.*

The defendants in this case, like the defendants in the '05 *Bridge* case, are participants in a scheme to defraud the Cook County Treasurer (the "Treasurer") by misrepresenting their relatedness to other bidders at the annual Cook County Tax Sale. (In fact, a number of defendants in this action are also nominees of Sabre. (*See* First Amended Complaint (Dkt. No. 139) at ¶¶ 45-61.) Due to the Court's initial dismissal of plaintiffs' claims in the '05 *Bridge* case, plaintiffs originally brought claims against most of the present defendants in state court, but converted the action to this federal RICO case once the Seventh Circuit decided that plaintiffs have standing to bring RICO claims related to the schemes to defraud the Treasurer.

2

The Complaint in this case was filed on March 9, 2007, and, after all defendants had accepted or waived service, on or about May 23, 2007, plaintiffs served subpoenas on five banks. Defendants filed the present motions to quash subpoenas and stay discovery. Upon recognizing their technical error of having served subpoenas before conducting a Rule 26(f) conference, plaintiffs withdrew the subpoenas. On June 20, 2007, the parties held a Rule 26(f) conference. The report of that conference was filed on July 27, 2007, but several defendants refused to sign that report. (Dkt. No. 123) On August 10, 2007, in granting in part and denying in part the defendants' motions to dismiss, the Court ordered the parties to conduct another Rule 26(f) conference and "to file a jointly completed Form 35 signed by counsel for each party…." (Dkt. No. 136)

In the August 10, 2007 dismissal order, the Court identified one issue that required plaintiffs to supplement the allegations in the complaint to complete the pleading phase of the case. (Dkt. No. 136) The Court directed the plaintiffs to resolve the open issue by amending their complaint to "identify the specific properties on which the defendants and the plaintiffs bid and whichever defendant won." (Dkt. No. 137 at 20) On August 31, 2007, plaintiffs satisfied that requirement by filing a First Amended Complaint (Dkt. No. 138)[1] that identified thousands of liens on which a plaintiff and at least two related defendants bid and which defendant won the bid.

On September 27, 2007, the parties held another Rule 26(f) conference and filed a report on October 9, 2007, this time including the signatures of all defendants' counsel. After filing the report of the parties' Rule 26(f) conference, plaintiffs reissued the subpoenas that they had initially served in May, and served subpoenas on five additional banks.

---

[1] On September 4, 2007, plaintiffs filed a Corrected First Amended Complaint (Dkt. No. 139) to correct a technical error in the document filed on August 31, 2007.

3

After plaintiffs notified the defendants of these ten subpoenas, defendants challenged plaintiffs' issuance of the subpoenas, insisting that plaintiffs were not entitled to serve them. The counsel for Sass Muni-IV, LLC and Sass Muni-V, LLC and the Sabre Defendants issued a baseless threat to pursue sanctions if plaintiffs would not agree to withdraw the subpoenas. On October 12, 2007, the parties conducted a Rule 37.1 conference regarding defendants' objections to the subpoenas, but the parties were unable to resolve their disputes.

## III. DISCOVERY SHOULD NOT BE STAYED

Of the various arguments defendants raised in their motions to stay, only one argument effectively remains[2]: that the pending motions to dismiss require discovery to be stayed. But there is no such requirement to stay discovery pending the resolution of motions to dismiss, and, in any case, defendants' argument ignores the history of this case and the Court's clear intent that discovery should proceed in these related cases. The Court has already addressed and twice rejected defendants' argument that discovery should be stayed pending resolution of motions to dismiss plaintiffs' RICO claims, including, most recently, the motions to dismiss that were previously pending in this case. (Case No. 05-C-4095, Dkt. No. 192.)

A court typically should not stay discovery during the pendency of a motion to dismiss because "[m]ost such motions are eventually denied." *United States v. Bd. of Educ.,* 636 F. Supp. 1046, 1047 (N.D. Ill. 1986) (Aspen, J.). *See also Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* No. 88 C 2584, 1988 WL 139346, at *1 (N.D. Ill. Dec. 22, 1988) (Lefkow, M.J.)

---

[2] Defendants' other arguments, that discovery could not proceed before the Rule 26(f) conference and that the Motion for Reassignment precluded discovery, are moot. On June 22, 2007, the Court granted the Motion for Reassignment. (Dkt. No. 103) Although the report on the initial Rule 26(f) conference was filed on July 27, 2007, several defendants refused to sign that report. On August 10, 2007, the court ordered the parties to conduct a second Rule 26(f) conference and to submit a report with all parties' signatures. (Dkt. No. 136) The parties conducted that second conference and filed the report on October 9, 2007. (Dkt. No. 145) Thereafter, plaintiffs reissued subpoenas to the five initial banks, and subsequently issued subpoenas to five additional banks.

(courts usually order discovery to proceed in the face of a dispositive motion to dismiss "in order that the case may be disposed of promptly, should the motion be denied, as most are, at least in part."). "In the rare case where [it is appropriate to stay discovery] pending a ruling on a potentially dispositive legal issue, [granting the stay of discovery is only appropriate when] the moving party is likely to prevail." *Bd. of Educ.,* 636 F. Supp. at 1047.

The history of this case does not support a stay of discovery, and the elements that would justify a stay pending the resolution of defendants' motions to dismiss are simply not present here. The related case has already returned once from the Seventh Circuit. Further, in granting in part and denying in part defendants' motions to dismiss in this case (Dkt. Nos. 32, 44, 57, 85, 88, 93, 96), the Court identified only one remaining defect in plaintiffs' complaint, and provided plaintiffs the opportunity to address that issue by identifying "the specific properties on which the defendants and the plaintiffs bid and whichever defendant won." (Dkt. No. 137 at 20) With the First Amended Complaint, that sole remaining issue has been resolved. (*See* Dkt. No. 139 at ¶¶ 56, 61, 66, 72 (identifying "liens on which at least one of the plaintiffs made a 0% penalty bid, yet lost the lien to [defendants] pursuant to their simultaneously 0% penalty rate bids").) Each of the arguments raised in defendants' pending motions to dismiss conflicts with this Court's or the Seventh Circuit's analysis regarding the prior motions to dismiss filed in these related cases. This case is ready to proceed, and there is no valid reason to delay discovery any longer.

Further, settlement of this case has no realistic chance of success until defendants appreciate that, despite their best efforts, their fraud will be fully exposed. That will happen once discovery begins proceeding unfettered by defendants' procedural roadblocks, and plaintiffs begin obtaining the direct evidence that confirms the circumstantial evidence already

5

supporting their claims. Open discovery will create an environment in which plaintiffs will see offers that exceed nuisance settlement values.

## IV. THE SUBPOENAS SHOULD NOT BE QUASHED OR LIMITED[3]

Effectively, two arguments defendants raised in the Motions to Quash remain[4]: that the documents requested are irrelevant and that the documents requested contain trade secrets or confidential commercial information. Neither argument can withstand even a cursory review.

### A. The subpoenas seek relevant information.

As this court has acknowledged, "[t]he Federal Rules of Civil Procedure contemplate broad discovery." *Sullivan v. Conway*, No. 93 C 4947, 1995 WL 573421, at *1 (N.D. Ill. Sept. 27, 1995). "Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). A plaintiff does not have to prove its case before it is entitled to discovery; nor does the information requested in discovery even have to be admissible at trial. Even information that is not admissible may be sought "as long as [it] 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Sullivan,* 1995 WL 573421, at *1. *See also Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2006 WL 931677, at *3 (N.D. Ill. Apr. 10, 2006).

The subpoenas must be weighed against this broad standard. Defendants argue that the subpoenas seek irrelevant information and are therefore overbroad. They identify the following

---

[3] Defendants and the Sabre Defendants' arguments raised in these motions to quash are consistent with the arguments made in the Sabre Defendants' Motion to Quash Subpoenas in the '05 *Bridge* case. (Case No. 05-C-4095, Dkt. Nos. 81, 84, 102, 174, 211, and 223). That motion is fully briefed, based on the additional record developed in that case, and is currently pending before Magistrate Judge Valdez.

[4] As discussed in footnote 2 above, defendants arguments based on the Motion for Reassignment and the timing of the Rule 26(f) conference are now moot.

categories of documents related to the defendants in either this case or the '05 *Bridge* case as objectionable: "all loans and applications, all letters of credit and applications, account opening documents including signature cards, and all written correspondence between any bank employee" and the defendant.

Plaintiffs allege that defendants defrauded the Treasurer to obtain access to the Cook County annual tax lien sales. Defendants did so by filing fraudulent registration applications that concealed their relationships with each other, as well as with the defendants in the related '05 *Bridge* case, from the Treasurer. Whether the defendants are related parties to each other and/or to defendants in the '05 *Bridge* case will be a central issue in this case, an issue that must be addressed in discovery. (Memorandum Opinion and Order Regarding Defendants' Motions to Dismiss (Dkt. No. 137) at 16-17 (allegations of relatedness in complaint were sufficient as the evidence proving relatedness will be "accessible to the plaintiff only through discovery").) Evidence identifying common funding or common finances among the defendants is one factor showing that the defendants are related parties. *See* Ex. A to First Am. Compl., Registration Application at p. 4 (requiring each applicant to represent and warrant that "[i]t has no capital, purchase money, or other finances in common" with another tax buyer and that "[i]t shares no common ownership interest or common source of funds" with another tax buyer).) The documents to which defendants object, specifically, loan documents, letters of credit documents, bank account documents and correspondence with the bank, are "reasonably calculated to lead to the discovery" of evidence of that central issue.[5]

---

5   While defendants' motions challenged the absence of a defined time period in the subpoenas, the parties failed to address that issue during the October 12, 2007 Rule 37.1 conference. Plaintiffs believe that it is unlikely that the banks will have documents substantially predating the conduct alleged in the First Amended Complaint. *See* 12 U.S.C. 1829B (banks are only required to maintain records related to their customers for five years). To eliminate the dispute, plaintiffs agree to set the time period for requested documents as documents dated on or after January 1, 2000. Documents from that period are

7

Defendants' assertion that production should be limited to business accounts also lacks merit. Plaintiffs allege that defendants, including the individual defendants, orchestrated the schemes to have multiple entities obtain liens for the true principal. A central element of the alleged schemes is that individuals who had a pre-existing relationship with a tax buyer created entities to increase the number of liens the tax buyer could obtain at the annual tax sales. *See* Corrected First Amended Complaint (Dkt. No. 139), ¶¶ 51, 64-65. Plaintiffs expect the evidence to show that one way they attempted to conceal the connection among the tax buying entities was to filter the purchase money through individual's bank accounts. Plaintiffs are entitled to discovery to test that theory. Further, if an individual who funds one tax buyer provides money to another individual who uses that money to fund a different tax buyer's lien purchases, the personal bank records are the only way to obtain evidence that the funding came from a common source.

### B. Bank records are not confidential documents of the bank's customers.

Defendants assert that the subpoenas request documents that include defendants' allegedly confidential banking records. Defendants argue that the subpoenas should be quashed to prevent plaintiffs from using that financial information to obtain a competitive advantage. As a threshold matter, confidential information is not privileged and a party "has no absolute right to refuse to divulge the information sought on those grounds." *National Util. Serv., Inc. v. Northwestern Steel & Wire Co.*, 426 F.2d 222, 227 (7th Cir. 1970). Further, where the producing party seeks to protect its purportedly confidential information, the appropriate response is to move for a protective order. *Id*. at 227 n.1. Defendants have failed to do so, and for that reason alone, their motion should be denied.

---

reasonably calculated to lead to the discovery of evidence showing a financial relationship between defendants related to plaintiffs' claims.

There is an even more fundamental deficiency with defendants' assertion: the requested documents are neither trade secrets nor the defendants' confidential documents. Under Rule 26(c)(7), the party seeking to limit access to information must offer evidence that the information is a trade secret or has been maintained as confidential by the party. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993) ("[T]he party seeking protection bears the burden of establishing: (1) that the information is in fact a trade secret or confidential commercial information and (2) that there is good cause to protect the information."); *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (protection of documents under Rule 26(c)(7) requires that the party seeking to restrict access to the documents took sufficient "measures [] to guard the information's secrecy," such as keeping the documents in locked files, providing the information to employees and consultants only on a need-to-know basis, and requiring those who receive the information to sign confidentiality agreements.).

That burden is imposed to protect the public's interest in access to information in legal proceedings. *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) ("Most cases endorse a presumption of public access to discovery materials….") (citations omitted). Conclusory statements of counsel do not satisfy that burden. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) ("a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" is necessary to support a request for a protective order) (citations omitted); *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007) (court denied motion for protective order where argument underlying motion was unsupported by the facts contained in the affidavit filed by the moving party, stating that "unsupported allegations whether in oral argument, *In re Payne*, 431 F.3d 1055, 1056 (7th Cir. 2005), or in briefs, do not count.").

Defendants' failure to present any evidence that the documents have been maintained as confidential dooms their motion.

Further, defendants cannot show that the requested documents are trade secrets or confidential because, by definition, the requested documents are the bank's records in the bank's possession. Bank records are not confidential documents of the bank's customers. In *United States v. Miller*, 425 U.S. 435, 440 (1976), the Court found that records created or maintained by banks were "the business records of the banks," not the bank's customer. As such, the documents could not be considered as the customer's "private papers." *Id.* Further, the Court found that any of the customer's information contained in such documents was "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id*. at 442. Based on those factual findings, the Court held that a bank's customer has no expectation of privacy in either the bank's records or the information it conveys to the bank. Id. at 442-43. *See also Najjar v. United States Dep't of Treasury*, No. 1:02-cv-1807-JDT-WTL, 2003 WL 21254772, at *2 (S.D. Ind. Apr. 11, 2003) (citing *Miller*, the court found that a lawyer's disclosure of a client's bank records "is not revealing a confidence or secret of her clients" because "in no way could [such documents] be considered to be confidential.")

In the related '05 *Bridge* case, the Sabre Defendants asked the court to disregard *Miller* and *Najjar* solely on the grounds that they construe the Fourth Amendment rather than Federal Rule 26. However, they cited *no case* in which a court, in the context of a Rule 26 dispute, declined to follow either *Miller* or *Najjar* on that issue. In *Rotoworks Int'l Ltd. v. Grassworks USA, LLC*, No. 07-05009, 2007 WL 1219716, at *2 (W.D. Ark. Apr. 25, 2007), on the other hand, the court *expressly relied upon Miller* in denying a motion for a protective order in civil litigation as to bank records. Citing *Miller*, the court held that "[s]uch records are not

confidential communications but are, rather, instruments of commercial transactions and the business records of the bank. . . . Accordingly, the bank records at issue here are subject to discovery and do not warrant protection under Federal Rule of Civil Procedure 26(c)(7)." *Id.*

The *Rotoworks*' analysis is consistent with the Restatement of Torts, Section 757, which other courts have considered when deciding whether business information is entitled to protection pursuant to Rule 26(c)(7). *See Zahran v. Trans Union Corp.*, No. 01 C 1700, 2002 WL 31010822, at *2 (N.D. Ill. Sept. 9, 2002); *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998). As Comment b of Section 757 of the Restatement makes clear, "[t]he subject matter of a trade secret must be secret. . . . Substantially, a trade secret is known only in the particular business in which it is used." Restatement (First) of Torts § 757 cmt. b (1939). Based on that requirement, courts consider "the measures taken to guard the information's secrecy" to determine the applicability of Rule 26(c)(7) to the specific information sought to be concealed. *Andrew*, 180 F.R.D. at 341. Here, defendants have not and cannot show that they maintained the requested bank records as confidential. The records consist of documents created by the bank or provided to the bank for the bank's purposes. The bank records should be produced without limitation.[6] *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858-60 (7th Cir. 1994)

---

[6] In their reply, defendants will likely raise the Sabre Defendants' argument that all financial information should be subject to a protective order to limit a competitor's access to the information. (Case No. 05-C-4095, Dkt. No. 212 at 4-5.) The cases cited in support of that argument are inapposite here, as each case (i) is limited to the analysis of discovery in the context of a punitive damage analysis, (ii) addresses the defendants' financial statements, not a bank's records, and (iii) does not address the appropriateness of a protective order as to information the party seeking protection has taken no steps to maintain as secret. *See Fieldturf Int'l, Inc. v. Triexe Mgmt. Group, Inc.*, No. 03 C 3512, 2004 WL 866494, at *2, *5 (N.D. Ill. Apr. 16, 2004) (court recognized different treatment was appropriate for discovery of financial information related to punitive damages compared to discovery of "the commingling of funds or assets" related to the liability of defendant as an alter ego); *Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *4-5 (N.D. Ill. Nov. 9, 2001); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151-52 (D. Kan. 1990). Further, none of the cases addresses the applicability of the *Miller* analysis to bank records in a civil subpoena context.

(protective order held unnecessary and inappropriate where the information sought to be concealed showed that the party seeking protection did not previously treat the information as confidential).

### C. Plaintiffs would not obtain a competitive advantage from the requested bank records.

Defendants also cannot show that the information contained in the bank records would provide a competitive advantage. As a threshold matter, defendants have offered no evidence supporting their conclusory assertions that access to banking information would convey a competitive advantage at a subsequent tax sale. *Gulf Oil*, 452 U.S. at 102 n.16. As the case law makes clear, bald legal conclusions are not enough. What is required is hard evidence.

Defendants cannot offer such evidence because the annual tax sale is not a typical "bidding situation." The winning bidder is determined not by who bids the most money, but by the Treasurer's rotational allocation of liens among the 0% penalty rate bids. The participants bid a 0% penalty rate and receive their share of the liens. In this setting, information as to the financial capacity of another bidder could not be used by a competitor to fashion a winning bid or otherwise gain an unfair advantage. A bidder will bid 0% regardless of the financial capacity of one of its competitors.

Further, most of the information requested is already several years old, and, thus, provides no possible competitive advantage as to future sales. Even the most current information will be several months old by the time of the next auction. Thus, even if such financial information could provide a competitive advantage, the requested information would be stale and could not provide any advantage regarding defendants' financial capacity at the next sale. *See In re Bank One Secs. Litig.*, 222 F.R.D. 582, 592 (N.D. Ill. 2004) (granting motion to unseal documents identified as confidential where the passage of time made the information "stale").

**V.     THE COURT SHOULD REJECT DEFENDANTS' PROPOSAL THAT THE BANK RECORDS BE FILTERED THROUGH THE DEFENDANTS PRIOR TO THE BANK'S PRODUCTION OF THE DOCUMENTS TO PLAINTIFFS**

During the Local Rule 37.1 conference held on October 12, 2007, defendants proposed a procedure pursuant to which the banks would produce their responsive documents solely to the defendants, who would then decide what documents should be produced as relevant and what documents should be marked as confidential or highly confidential. That procedure is unnecessary and improper. The appropriate question is whether the subpoenas request documents that are relevant or "reasonably calculated to lead to the discovery of admissible evidence." *Sullivan,* 1995 WL 573421, at *1 (citation omitted). As addressed above, the subpoenas meet that requirement, and the responsive documents should be produced. Defendants are not and cannot be permitted to decide which third party documents responsive to a proper subpoena should be produced to the plaintiffs. There is no authority for allowing such a filter, which would effectively require the plaintiffs to rely solely on the defendants' analysis of information. The process would also add an unnecessary delay in the discovery process.

Defendants' proposal that they review the documents produced *by the banks* to identify documents that are confidential and highly confidential is similarly flawed. The proposal also highlights the specious nature of the defendants' analysis of what constitutes a confidential document.

If a bank had information that was subject to a confidentiality agreement with its customer, the bank would be required by such agreement to assert the confidentiality of the information. If no such confidentiality agreement exists, then defendants have not maintained the documents as confidential and cannot now contend that the documents should be withheld. *Andrew Corp.*, 180 F.R.D. at 341. *See also Rotoworks*, 2007 WL 1219716, at *2 (citing *Miller*).

13

Defendants' claimed need to review the banks' documents to be able to identify confidential documents is perhaps the clearest explanation of why the requested bank records should be produced without limitation. If a bank would be unable to identify documents subject to a hypothetical confidentiality provision, then the documents would not have been marked as confidential or segregated by the banks as such. Under these circumstances, the defendants would not have taken appropriate steps to guard the documents' secrecy sufficient to warrant protection pursuant to Rule 26(c)(7).

## CONCLUSION

For the reasons stated above, the defendants' motion for stay or to quash the subpoenas should be denied.

Dated: October 19, 2007

          BCS SERVICES, INC. and PHOENIX BOND & INDEMNITY CO.

          By: ___/s/ John W. Moynihan___
              One of Their Attorneys

          David C. Bohan
          John W. Moynihan
          Andrew L. Mathews
          REED SMITH LLP
          10 South Wacker Drive, Suite 4000
          Chicago, Illinois 60606
          (312) 207-1000

          Jonathan L. Marks
          KATTEN MUCHIN ROSENMAN LLP
          525 West Monroe Street
          Chicago, Illinois 60661
          (312) 902-5200

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2007, a copy of the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND STAY DISCOVERY** was filed electronically. Notice of this filing will be sent by e-mail to the following parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

| | |
|---|---|
| ***Counsel for Defendant Heartwood 88, LLC*** | Christopher K. Meyer<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>(312) 853-7000<br>cmeyer@sidley.com<br><br>Robert A. Holland<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street, Suite 4000<br>Los Angeles, California 90013<br>(213) 896-6000<br>rholland@sidley.com |
| ***Counsel for Defendants Bamp, LLC, Anthony DeLaurentis, Richarony, LLC and Richard Turer*** | Elisha S. Rosenblum<br>O'HALLORAN, KOSOFF, GEITNER & COOK, P.C.<br>650 Dundee Road, Suite 475<br>Northbrook, Illinois 60062<br>(847) 291-0200<br>esrosenblum@okgc.com |
| ***Counsel for Defendants Sass Muni–IV, LLC and Sass Muni–V, LLC***<br><br>***and***<br><br>***Counsel for Defendants John Bridge, Barrett Rochman and Sabre Group, LLC in the Phoenix Bond and Indemnity the John Bridge,*** **No. 05-C-4095** | Theodore M. Becker<br>Brandon L. Spurlock<br>James E. Bayles, Jr.<br>Richard J. Pearl<br>MORGAN LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, 5th Floor<br>Chicago, Illinois 60601<br>(312) 324-1000<br>tbecker@morganlewis.com<br>jbayles@morganlewis.com<br>bspurlock@morganlewis.com<br>rpearl@morganlewis.com |

- 2 -

| | |
|---|---|
| ***Counsel for Defendants Salta Group, Inc. and Marshall Atlas*** | Steven Rappin<br>Elizabeth Monkus<br>HAUSELMAN, RAPPIN & OLSWANG, LTD.<br>39 South LaSalle Street, Suite 1105<br>Chicago, Illinois 60606<br>(312) 372-2020<br>srappin@hrolaw.com<br>emonkus@hrolaw.com |
| ***Counsel for Defendants HBZ, Inc., Lori Levinson and Judith Berger*** | S. Joseph Formusa<br>RABENS, FORMUSA & GLASSMAN, LTD.<br>33 North LaSalle Street, Suite 2800<br>Chicago, Illinois 60602<br>(312) 782-8334<br>formusa12@sbcglobal.net<br><br>Michael D. Sher<br>Maria J. Minor<br>Athanasios Papadopoulos<br>NEAL, GERBER & EISENBERG LLP<br>Two North LaSalle Street, Suite 2200<br>Chicago, Illinois 60602<br>(312) 269-8000<br>msher@ngelaw.com<br>mminor@ngelaw.com<br>tpapadopoulos@ngelaw.com |
| ***Counsel for Defendants B G Investments, Inc. and Bonnie J. Gray*** | Arthur W. Friedman<br>Edward W. Feldman<br>Stuart M. Widman<br>MILLER SHAKMAN & BEEM LLP<br>180 North LaSalle Street, Suite 3600<br>Chicago, Illinois 60601<br>(312) 263-3700<br>afriedman@millershakman.com<br>efeldman@millershakman.com<br>swidman@millershakman.com |

- 3 -

| | |
|---|---|
| ***Counsel for Defendants Wheeler-Dealer, Ltd. and Timothy E. Gray*** | William T. Huyck<br>LAW OFFICE OF WILLIAM THOMAS HUYCK<br>122 South Michigan Avenue, Suite 1850<br>Chicago, Illinois 60603<br>(312) 427-7500<br>tomhuyck@yahoo.com |

By:    */s/ John W. Moynihan*
       One of Plaintiffs' Attorneys

David Bohan (ARDC No. 3122194)
John W. Moynihan (ARDC No. 6212061)
Andrew L. Mathews (ARDC No. 6279672)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000