IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BCS SERVICES, INC., and )
PHOENIX BOND & INDEMNITY CO., )
)
          Plaintiffs, )        No. 07 C 1367
     v. )        Consolidated with No. 05 C 4095
)
HEARTWOOD 88, LLC, BAMP, LLC, )        Chief Judge James Holderman
ANTHONY DELAURENTIS, RICHARD )
TURER, RICHARONY, LLC, )        Magistrate Judge Maria Valdez
SASS MUNI-IV, LLC, )
SASS MUNI-V, LLC, SALTA GROUP, INC., )
MARSHALL ATLAS, HBZ, INC., )
LORI LEVINSON, JUDITH BERGER, )
WHEELER-DEALER, LTD., )
B G INVESTMENTS, INC., )
BONNIE J. GRAY, TIMOTHY E. GRAY, )
BANKATLANTIC, MICHAEL )
DELUCA, GARY BRANSE, SI SECURITIES, )
LLC, SI BOO, LLC, CMS SERVICES, LLC, )
SI SECURITIES MANAGEMENT, INC., )
CCPI, LLC, KENNETH ROCHMAN, )
KEVIN SIERZEGA, VINAYA JESSANI, )
MD SASS INVESTORS SERVICES, INC., )
MD SASS TAX LIEN MANAGEMENT, LLC, )
MD SASS MUNICIPAL FINANCE )
PARTNERS-IV, LLC, MD SASS MUNICIPAL )
FINANCE PARTNERS-V, LLC, )
KIRK ALLISON, G3 HOLDINGS, LLC., )
GREGORY WILSON, GREGORY STEC, )
DONALD WILSON, AZTEK PARTNERS, LLC )
CHONUS, INC., GREGORY BINGHAM, )
TAX PLAY, INC., TAX CAPITAL, LLC, )
PATRICK QUINN, VARAN REALTORS, INC. )
d/b/a GOIN REALTY, JOSHUA ATLAS, )
ARLENE ATLAS, ATLANTIC MUNICIPAL )
CORP., MIDWEST REAL ESTATE )
INVESTMENT CO., MIDWEST REAL )
ESTATE INVESTMENT CO. EMPLOYEE )
PROFIT-SHARING PLAN AND TRUST, )
AND DAVID GRAY, )
)
          Defendants. )

**HEARTWOOD 88, LLC AND BANKATLANTIC'S ANSWER TO
PLAINTIFFS' THIRD AMENDED COMPLAINT**

[FILED COPY HAS BEEN REDACTED PURSUANT TO THE PROTECTIVE
ORDER. THIS ANSWER CONTAINS INFORMATION DESIGNATED AS
CONFIDENTIAL AND/OR HIGHLY CONFIDENTIAL AND MUST BE
MAINTAINED IN ACCORDANCE WITH THE PROTECTIVE ORDER.]

Heartwood 88, LLC ("Heartwood") and BankAtlantic (collectively, the "Heartwood

Defendants"), by their attorneys, hereby answer plaintiffs' Third Amended Complaint

("Complaint"), and state as follows:

1.      Two tax buyers—BCS and Phoenix—bring this action against individuals and
corporate entities that conspired to violate the Cook County Single Bidder Rule (the "Rule"),
which prohibits related entities from bidding at the annual general real estate tax sale, thereby
damaging Plaintiff BCS in tax sale auctions held in 2002 through 2007 and Plaintiff Phoenix
Bond in tax sale auctions held in 2003 through 2007, as well as other tax buyers at those tax
sales. In order to circumvent the Rule, Barrett Rochman and John Bridge orchestrated a scheme
to have nominees purchase tax liens at the Cook County Tax Sale for the benefit ████████
████████████████████████████ Sabre Group, LLC (collectively with Rochman,
Bridge, Kenneth Rochman and Sierzega, the "Sabre Defendants"). BankAtlantic agreed to have
its subsidiary, Heartwood 88, LLC, participate in the Cook County Tax Sale as a buyer for the
Sabre Defendants' benefit. BankAtlantic, also through Heartwood, directed and controlled secret
agreements with Bamp and Richarony, and their respective principals, to do BankAtlantic's
bidding, and obtain additional liens for the benefit of the Sabre Defendants. Sass, through its
subsidiaries Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, and Sass Muni-
V, received approval to bid through the registration process by concealing its agreement to
purchase liens for the Sabre Defendants' benefit. G3 received approval to bid through the
registration process by concealing its agreement to purchase liens for Sabre Defendants' benefit.
Quinn received approval for Tax Play and Tax Capital to bid through the registration process by
concealing their agreement to purchase liens for Sabre Defendants' benefit. Similarly, Bingham
received approval for Aztek and Chonus to bid through the registration process by concealing
their agreement to purchase liens for Sabre Defendants' benefit. Similarly, Atlas, his employee,
daughter, ████████ used HBZ to purchase liens for their benefit, and concealed the
relationship of Salta and HBZ in the registration process. Finally, Gray set his son, wife, and
employees up as principals of Wheeler Dealer, BG, and Atlantic Municipal to purchase liens for
Gray's benefit, and concealed the relationships among ████████████ Wheeler Dealer, BG,
and Atlantic Municipal in the registration process. Through a series of fraudulent schemes and
collusive bidding, the Defendants unlawfully obtained access to the tax sales, thus obtaining a
greater number of the liens available for bid at the auctions through their conspiracies and
reducing the number of liens Plaintiffs were able to obtain. Plaintiffs were injured by the loss of
the financial benefits flowing from the liens the Defendants purchased that Plaintiffs would
otherwise have obtained. BCS and Phoenix seek to recover damages Plaintiffs suffered as a
result of these schemes under sections 1962(c) and 1962(d) of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), and tortious interference with prospective business advantage.

**ANSWER:** The allegations of Paragraph 1 contain legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants admit that BCS Services, Inc. ("BCS") and Phoenix Bond & Indemnity Co. ("Phoenix") seek to recover damages they allegedly suffered under sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a purported cause of action for tortious interference with prospective business advantage, but deny that plaintiffs are entitled to relief from the Heartwood Defendants. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second, fifth, sixth, seventh, eighth, ninth, and tenth sentences of Paragraph 1, and on that basis deny those allegations. The Heartwood Defendants deny the remaining allegations of Paragraph 1.

2.    This Court has jurisdiction over federal law claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1965(a). This Court has pendant jurisdiction over the state law claims of tortious interference with prospective business advantage arising out of these transactions.

**ANSWER:** The allegations of Paragraph 2 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants admit that this Court generally has jurisdiction over federal law claims under 28 U.S.C. § 1331 and that this Court generally has jurisdiction over federal RICO claims under 18 U.S.C. § 1965(a). The Heartwood Defendants deny that plaintiffs have pleaded a RICO claim against the Heartwood Defendants over which the Court has jurisdiction. The Heartwood Defendants admit that this Court has pendent jurisdiction over plaintiffs' state

law claims for tortious interference with prospective advantage arising out of the transactions

alleged in the Complaint to the extent that the Court has original jurisdiction over plaintiffs'

RICO claims. However, because plaintiffs have not stated a valid RICO claim against the

Heartwood Defendants, the Heartwood Defendants deny that the Court should exercise

supplemental jurisdiction over any of plaintiffs' state law claims for tortious interference with

prospective business advantage against the Heartwood Defendants.

      3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because the Defendants reside in, are found in, have an agent in, and/or transact their affairs in, the Northern District of Illinois where a substantial part of the events complained of occurred.

**ANSWER:**  The Heartwood Defendants admit that venue is proper in this Court. The

Heartwood Defendants deny the remaining allegations of Paragraph 3.

      4.      BCS Services, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2007, inclusive, for delinquent taxes for the years 2000 through 2005.

**ANSWER:**  The Heartwood Defendants admit that BCS Services, Inc. participated in the Cook

County tax sales held in 2002 through 2007, inclusive, for delinquent taxes for the years 2002

through 2005. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 4, and on that basis deny those

allegations.

      5.      Phoenix Bond & Indemnity Co. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2003 through 2007, inclusive, for delinquent taxes for the years 2001 through 2005.

**ANSWER:**  The Heartwood Defendants admit the allegations of Paragraph 5.

      6.      Heartwood 88, LLC is a Florida corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2007. It is a wholly-owned subsidiary of defendant BankAtlantic.

**ANSWER:** The Heartwood Defendants deny that Heartwood 88, LLC is a Florida corporation, and state that it is a Florida limited liability company. The Heartwood Defendants admit the remaining allegations of Paragraph 6.

      7.      BankAtlantic is a Florida corporation. Its business includes, among other things, buying tax liens, and it participated, via its subsidiary Heartwood 88, LLC, in the Cook County tax sales held in 2002 through 2007.

**ANSWER:** The Heartwood Defendants deny the allegations of the first sentence of Paragraph

7. The Heartwood Defendants admit that BankAtlantic's business includes, among other things,

buying tax liens, and that its subsidiary Heartwood 88, LLC participated in the Cook County tax

sales held in 2002 through 2007. The Heartwood Defendants deny the remaining allegations of

Paragraph 7.

      8.      Michael DeLuca is a Florida resident. He was a Senior Vice President of BankAtlantic responsible for its Tax Certificate Department during the relevant period until January 14, 2008, when he was terminated for his role in the scheme.

**ANSWER:** The Heartwood Defendants admit the allegations of the first sentence of Paragraph

8. The Heartwood Defendants deny the remaining allegations of Paragraph 8.

      9.      Gary Branse is a Florida resident. He was a Senior Vice President of BankAtlantic responsible for its Tax Certificate Department during the relevant period until January 14, 2008, when he was terminated for his role in the scheme.

**ANSWER:** The Heartwood Defendants admit the allegations of the first sentence of Paragraph

9. The Heartwood Defendants deny the remaining allegations of Paragraph 9.

      10.     Bamp, LLC was an Illinois corporation that voluntarily dissolved on December 21, 2004. Its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal was defendant Anthony DeLaurentis.

**ANSWER:** The Heartwood Defendants deny that Bamp LLC was an Illinois corporation, and

state that it was an Illinois limited liability company. The Heartwood defendants admit the

remaining allegations of Paragraph 10.

11.    Anthony DeLaurentis is a Maryland resident. He was the principal of defendant Bamp, and executed Bamp's registration to participate in the 2004 tax sale as Bamp's authorized agent.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of the first sentence of Paragraph 11. The Heartwood

Defendants admit the remaining allegations of Paragraph 11.

12.    Richarony, LLC was an Illinois corporation that voluntarily dissolved on December 21, 2004. In 2004, its business included buying tax liens, and it participated in the 2004 Cook County tax sale. Its principal was defendant Richard Turer.

**ANSWER:** The Heartwood Defendants deny that Richarony, LLC was an Illinois corporation,

and state that Richarony LLC was an Illinois limited liability company. The Heartwood

Defendants admit the remaining allegations of Paragraph 12.

13.    Richard Turer is a Maryland resident. He was the principal of defendant Richarony, and executed Richarony's registration to participate in the 2004 tax sale as Richarony's authorized agent.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of the first sentence of Paragraph 13. The Heartwood

Defendants admit the remaining allegations of Paragraph 13.

14.    SI Securities is an Illinois LLC. It is owned by Barrett Rochman and Charles Decker. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 14, and on that basis deny those allegations.

15.    SI Management is an Illinois corporation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 15, and on that basis deny those allegations.

16.     SI Boo is an Illinois LLC. ███████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 16, and on that basis deny those allegations.

17.     CCPI is an Illinois LLC. ███████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 17, and on that basis deny those allegations.

18.     Kenneth Rochman is Barrett Rochman's son and a resident of Illinois. ██████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 18, and on that basis deny those allegations.

19.     CMS is an Illinois corporation. ███████████████████

**ANSWER:** The Heartwood Defendants deny that the Heartwood Defendants agreed to purchase liens for the benefit of the Sabre Defendants. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 19, and on that basis deny those allegations.

20.     Kevin Sierzega is a resident of Illinois and is employed by SI Management. ██

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20, and on that basis deny those allegations.

21.     Sass is a Delaware corporation that is responsible for managing the Cook County tax lien portfolios of the other Sass entities.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 21, and on that basis deny those allegations.

22.    Sass Management is a New York LLC and conducts all of Sass's tax lien
operations.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 22, and on that basis deny those allegations.

23.    M.D. Sass Municipal Finance Partners-IV is a Delaware LLC and directed Sass
Muni-IV's participation in the Cook County tax sale.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 23, and on that basis deny those allegations.

24.    M.D. Sass Municipal Finance Partners-V is a Delaware LLC and directed Sass
Muni-V's participation in the Cook County tax sale.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 24, and on that basis deny those allegations.

25.    Sass Muni-IV is a Delaware LLC. Its business includes buying tax liens, and it
participated in the 2002, 2003 and 2004 Cook County tax sales.

**ANSWER:** The Heartwood Defendants admit that Sass Muni-IV participated in the 2002, 2003,

and 2004 Cook County tax sales. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 25, and on

that basis deny those allegations.

26.    Sass Muni-V is a Delaware LLC. Its business includes buying tax liens, and it
participated in the 2005, 2006, and 2007 Cook County tax sales.

**ANSWER:** The Heartwood Defendants admit that Sass Muni-V participated in the 2005, 2006,

and 2007 Cook County tax sales. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 26, and on

that basis deny those allegations.

27.    Vinaya Jessani is a resident of New York, New York.  He is a Senior Vice President of M.D. Sass Investor Services, in which capacity he ████████████████████ ████████████████████

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 27, and on that basis deny those allegations.

28.    Kirk Allison is a resident of Delaware.  He is a Vice President of M.D. Sass Investor Services, in which capacity he ████████████████████ ████████████████████

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 28, and on that basis deny those allegations.

29.    G3 is a Texas LLC.  In 2004, its business included buying tax liens, and it participated in the 2004 Cook County tax sale.

**ANSWER:**  The Heartwood Defendants admit that G3 participated in the 2004 Cook County tax

sale.  The Heartwood Defendants lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of Paragraph 29, and on that basis deny those allegations.

30.    Gregory Wilson is a resident of Texas and is a principal of G3.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 30, and on that basis deny those allegations.

31.    Gregory Stec is a resident of Illinois and is a principal of G3.  He was involved in G3's participation in the 2004 Cook County tax sale.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 31, and on that basis deny those allegations.

32.    Donald Grant Wilson is a resident of Texas and is a principal of G3.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 32, and on that basis deny those allegations.

33.    Tax Play was an Illinois corporation. In 2004, its business included buying tax liens, and it participated in the 2004 Cook County tax sale.

**ANSWER:** The Heartwood Defendants admit that Tax Play participated in the 2004 Cook

County tax sale. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 33, and on that basis deny those

allegations.

34.    Tax Capital is an Illinois LLC. In 2005 through 2007, its business included buying tax liens, and it participated in the Cook County tax sales during those years.

**ANSWER:** The Heartwood Defendants admit that Tax Capital participated in the 2005 through

2007 Cook County tax sales. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 34, and on

that basis deny those allegations.

35.    Patrick Quinn is a resident of Illinois. He is a principal of Tax Play and Tax Capital.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 35, and on that basis deny those allegations.

36.    Aztek was an Illinois LLC. In 2005, its business included buying tax liens, and it participated in the 2005 Cook County tax sale.

**ANSWER:** The Heartwood Defendants admit that Aztek participated in the 2005 Cook County

tax sale. The Heartwood Defendants lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of Paragraph 36, and on that basis deny those

allegations.

37.    Chonus was an Illinois corporation. In 2007, its business included buying tax liens, and it participated in the 2007 Cook County tax sale.

**ANSWER:** The Heartwood Defendants admit that Chonus participated in the 2007 Cook

County tax sale. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 37, and on that basis deny those

allegations.

38.    Gregory Bingham is a resident of Illinois. He is a principal of Aztek and Chonus. He had a business relationship with the Sabre Defendants prior to participating in the 2005 Cook County tax sale through Aztek.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 38, and on that basis deny those allegations.

39.    Varan Realtors, Inc. dba Goin Realty is an Illinois corporation. In 2007, its business included buying tax liens, and it participated in the 2007 Cook County tax sale. Its principal is Joseph Varan.

**ANSWER:** The Heartwood Defendants admit that Goin Realty participated in the 2007 Cook

County tax sale. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 39, and on that basis deny those

allegations.

40.    Salta Group, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the Cook County tax sales held in 2002 through 2007. Its principal is defendant Marshall Atlas.

**ANSWER:** The Heartwood Defendants admit that Salta Group, Inc. participated in the Cook

County tax sales held in 2002 through 2007. The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

40, and on that basis deny those allegations.

41.    Marshall Atlas is a Glencoe, Illinois resident. He is the principal of defendant Salta, executed Salta's registration to participate in the 2003, 2004, 2005, 2006, and 2007 tax sales as Salta's authorized agent, and was registered to bid at the 2003, 2004, 2005, 2006 and 2007 tax sales on behalf of Salta.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 41, and on that basis deny those allegations.

42.    HBZ, Inc. is an Illinois corporation. Its business includes buying tax liens, and it participated in the 2003 through 2007 Cook County tax sales. Its principals are defendants Lori Levinson and Judith Berger.

**ANSWER:** The Heartwood Defendants admit that HBZ, Inc. participated in the 2003 through

2007 Cook County tax sales. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 42, and on

that basis deny those allegations.

43.    Lori Levinson is a Glencoe, Illinois resident. She is a principal of defendant HBZ, and executed HBZ's registration to participate in the 2005, 2006, and 2007 tax sales as HBZ's authorized agent.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 43, and on that basis deny those allegations.

44.    Judith Berger is a Northbrook, Illinois resident. She is a principal of defendant HBZ and also works for and receives compensation from Salta.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 44, and on that basis deny those allegations.

45.    Joshua Atlas is a Chicago, Illinois resident. ███████████████████ ███████████████████████ and was registered to bid at the 2003, 2004, 2005, 2006, and 2007 tax sales on behalf of Salta.

**ANSWER:** The Heartwood Defendants admit that Joshua Atlas bid at the 2007 Cook County

tax sale on behalf of Salta. The Heartwood Defendants lack knowledge or information sufficient

to form a belief about the truth of the remaining allegations of Paragraph 45, and on that basis

deny those allegations.

46.    Arlene Atlas is a Glencoe, Illinois resident. She is a principal of defendant HBZ and the wife of Marshall Atlas.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 46, and on that basis deny those allegations.

47.     David Gray is a Chicago, Illinois resident.  He is a principal of defendant MREI

██████████████████████████                                        ████

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 47, and on that basis deny those allegations.

48.     Midwest Real Estate Investment Co. is an Illinois corporation.  ███████

██████████████████████████████████████████████

**ANSWER:**  The Heartwood Defendants deny that there was any fraud in which the Heartwood

Defendants participated.  The Heartwood Defendants lack knowledge or information sufficient to

form a belief about the truth of the remaining allegations of Paragraph 48, and on that basis deny

those allegations.

49.     Midwest Real Estate Investment Company Employee Profit-Sharing Plan and
Trust is a retirement plan maintained by defendant MREI.  Wheeler-Dealer purchased liens for
the benefit of MREI PSP at the 2003 Cook County tax sale.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 49, and on that basis deny those allegations.

50.     Wheeler-Dealer, Ltd. is an Illinois corporation.  Its business includes buying tax
liens, and it participated in the 2002 through 2007 Cook County tax sales.  Its principals include
defendant Timothy E. Gray.

**ANSWER:**  The Heartwood Defendants admit that Wheeler-Dealer Ltd. participated in the 2002

through 2007 Cook County tax sales.  The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

50, and on that basis deny those allegations.

51.     Timothy E. Gray is a Chicago, Illinois resident.  He is a principal of defendant
Wheeler-Dealer, executed Wheeler-Dealer's registration to participate in the 2003, 2004, 2005,
2006, and 2007 tax sales as Wheeler-Dealer's authorized agent, and was registered to bid at the
2003, 2004, 2005, 2006, and 2007 tax sales on behalf of Wheeler-Dealer.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 51, and on that basis deny those allegations.

52.     B G Investments, Inc. is an Illinois corporation.  Its business includes buying tax
liens, and it participated in the 2003, 2004 and 2005 Cook County tax sales.  Its principals
include defendant Bonnie J. Gray.

**ANSWER:** The Heartwood Defendants admit that B G Investments, Inc. participated in the

2003, 2004 and 2005 Cook County tax sales.  The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

52, and on that basis deny those allegations.

53.     Bonnie J. Gray is a Chicago, Illinois resident.  She is a principal of defendant BG,
and executed BG's registration to participate in the 2003, 2004, and 2005 tax sales as BG's
authorized agent.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 53, and on that basis deny those allegations.

54.     Atlantic Municipal Co. is an Illinois company.  Its business includes buying tax
liens, and it participated in the 2006, 2007, and 2008 Cook County tax sales.

**ANSWER:** The Heartwood Defendants admit that Atlantic Municipal Co. participated in the

2006, 2007, and 2008 Cook County tax sales.  The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

54, and on that basis deny those allegations.

55.     The duly elected Treasurer and Ex-Officio Collector of Cook County, Illinois
("the Collector") is charged under the Property Tax Code (35 ILCS 200/22-70 et seq.) with the
collection of delinquent real estate taxes through judicial sale of judgments obtained against
delinquent property.

**ANSWER:** The allegations of Paragraph 55 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants answer as

follows:

- 14 -

The Heartwood Defendants admit that the Collector is charged under the Property Tax

Code, including but not limited to 35 ILCS 200/22-70 et seq., with, among other things, the

collection of delinquent real estate taxes through judicial sale of judgments obtained against

delinquent property. The Heartwood Defendants deny the remaining allegations of Paragraph

55.

56.    The duly elected Clerk of Cook County, Illinois ("the Clerk") is charged under the
Property Tax Code with assisting the Collector in the conduct of the tax sale and keeping related
records thereafter. The Collector and the Clerk are referred to hereafter jointly as "the County."

**ANSWER:** The allegations of Paragraph 56 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants admit that the

Clerk is charged under the Property Tax Code with, among other things, assisting the Collector

in the conduct of the tax sale and keeping related records thereafter.

57.    The annual Cook County tax sale is part of the Illinois property tax system. If a
property owner fails to pay his property taxes in a given year, the County offers for sale to the
public a tax lien on that property. The purchaser of the tax lien, the "tax buyer," pays the
delinquent tax. The property owner may redeem that lien by paying the delinquent tax plus the
accrued penalty. Upon redemption, the tax buyer surrenders the lien and receives the tax amount
paid on its purchase plus the accrued penalty.

**ANSWER:** The allegations of Paragraph 57 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants admit the allegations of the first sentence of Paragraph 57.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 57, and on that basis deny those allegations.

58.    The annual tax sale process begins when the Collector publishes a list of
delinquent real estate parcels in area newspapers. The publication gives notice that the Collector
will apply to the Circuit Court for judgments against delinquent real estate and orders to sell
those judgments at public auction. Thereafter, the Circuit Court issues the requested judgments
and orders. At the sale, the County auctions the tax liens on the delinquent properties in

exchange for the County's receipt of the delinquent taxes. Each judgment lien affects a different parcel of real estate for which taxes are delinquent.

**ANSWER:** The Heartwood Defendants admit that the County auctions tax liens on delinquent

properties in exchange for the County's receipt of delinquent taxes at the annual Cook County

tax sales. The Heartwood Defendants lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of Paragraph 58, and on that basis deny those

allegations.

59.     The terms, manner and method by which the judicial sale is conducted are prescribed by the Collector. Among other things, the Collector provides a registration package to each prospective tax buyer. The package sets forth the rules by which the sale is to be conducted, including the terms and conditions with which all participants must comply. An example of the registration package is attached hereto as Exhibit A.

**ANSWER:** The Heartwood Defendants admit that the terms, manner and method by which the

judicial sale is conducted are prescribed in part by the Collector, subject to the Illinois Property

Tax Code. The Heartwood Defendants deny the allegations of the fourth sentence of Paragraph

59. The Heartwood Defendants lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of Paragraph 59, and on that basis deny those allegations.

60.     Tax buyers must be registered and qualified to bid at the tax sale. Registration requires the submission of an application and sworn affidavit of compliance with rules established by the Collector, together with a letter of credit or bond from each bidding entity (35 ILCS 200/21-220) to guaranty payment for purchases. A prospective tax buyer who fails to satisfy any of these requirements, i.e. the application, the affidavit of compliance, or the bond, would not be permitted to bid at the annual tax sale.

**ANSWER:** The allegations of Paragraph 60 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants admit the allegations of the second sentence of Paragraph 60.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 60, and on that basis deny those allegations.

- 16 -

61.     Bids are not made in cash amounts and taxes are not sold to the highest bidder. When a taxpayer redeems his taxes, he pays the amount of taxes paid by the tax buyer at the sale, plus penalty. At the annual tax sale, the tax buyers bid on the rate of penalty. The tax buyer who bids the lowest rate of penalty will win the bid. If more than one tax buyer bids at the same lowest rate, the auctioneer will allocate the liens in a fair manner to ensure that there is an equal apportionment of liens among the lowest bidding tax buyers. The highest permissible penalty rate is 18% of the delinquent tax per penalty period. Since approximately 2000, the typical penalty rate has been 0%.

**ANSWER:**  The Heartwood Defendants admit the third and sixth sentences of Paragraph 61.

The Heartwood Defendants deny the first, fourth, fifth and seventh sentences of Paragraph 61.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 61, and on that basis deny those allegations.

62.     After each annual tax sale, the County issues a Certificate of Purchase evidencing the tax lien sold on each parcel of real estate to and in the name of the tax buyer who made the successful bid.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 62, and on that basis deny those allegations.

63.     As a matter of law, no more than four months and fifteen days after purchase of a lien, the tax buyer who owns the certificate of purchase must draft a notice pursuant to 35 ILCS 200/22-5 (the "22-5 notice"), alerting the last assessee that the lien has been sold for delinquent taxes. The tax buyer provides the 22-5 notice to the County for the County to mail to the last assessee. The County sends the notice by U.S. mail to the last assessee, including last assessees residing outside the state of Illinois. The tax buyer retains a file-stamped copy of the same. The certificate holder pays the County for the mailing.

**ANSWER:**  The allegations of Paragraph 63 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the first sentence of Paragraph 63. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 63, and on that basis deny those allegations.

64.     In addition, if the property remains unredeemed after two to three years from the date of purchase, a lien holder may file a petition for deed. These petitions must be filed five

- 17 -

months before the end of the period of redemption. Pursuant to 35 ILCS 200/22-10, in the first sixty days of the five-month period, the lien holder is required to provide notice to property owners, occupants and other interested parties (the "22-10 notice"). Pursuant to 35 ILCS 200/22-15, the Cook County Sheriff serves the lien holders' 22-10 notice of the deed petition and the impending expiration of the period of redemption on property owners, occupants and other interested parties in person. If any owners or interested parties cannot be served in person within Cook County, Illinois, the sheriff will serve them by certified mail. Certified mail will be used to send the 22-10 notices to all parties outside of Illinois.

**ANSWER:** The allegations of Paragraph 64 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants admit the allegations of the first sentence of Paragraph 64.

The Heartwood Defendants deny the allegations of the second and third sentences of Paragraph

64. The Heartwood Defendants lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of Paragraph 64, and on that basis deny those allegations.

65.    Further, during the first sixty days of that five-month period before the period of redemption expires, the tax buyer prepares a notice pursuant to 35 ILCS 200/22-25 (the "22-25 notice") and delivers that notice with the requisite fee for mailing to the Circuit Court of Cook County with direction to mail it to the relevant property owners and occupants alerting them that the lien holder has filed a petition for tax deed and the date upon which the period of redemption will expire. The County sends the notice by U.S. mail to the relevant property owners and occupants, including property owners residing outside the state of Illinois.

**ANSWER:** The allegations of Paragraph 65 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants admit that the County sends certain notices by U.S. Mail.

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 65. The

Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth

of the remaining allegations of Paragraph 65, and on that basis deny those allegations.

66.    Tax buyers' potential sources of profit include the penalty accrued on the tax lien judgment purchased, a 12% penalty accrued on any subsequent real estate taxes the tax buyer pays on the property, and enforcement of the lien.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 66.

67.    The notices described above are mandatory to obtain a tax deed. Any defect in the creation or service of the notices will render the tax certificate incapable of foreclosure through a petition for tax deed and will also prevent the lien holder from obtaining the 12% penalty accrued on payment of subsequent real estate taxes.

**ANSWER:** The allegations of Paragraph 67 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 67.

68.    The 2002 annual tax sale was held from April 1, 2002 to April 26, 2002. At the 2002 annual tax sale, liens were sold based on property owners' failure to pay 2000 annual real estate taxes.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 68.

69.    The 2003 annual tax sale was held from March 10, 2003 to April 4, 2003. At the 2003 annual tax sale, liens were sold based on property owners' failure to pay 2001 annual real estate taxes.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 69.

70.    The 2004 annual tax sale was held from May 10, 2004 to June 7, 2004. At the 2004 annual tax sale, liens were sold based on property owners' failure to pay 2002 annual real estate taxes.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 70.

71.    The 2005 annual tax sale was held from July 6, 2005 to July 27, 2005. At the 2005 annual tax sale, liens were sold based on property owners' failure to pay 2003 annual real estate taxes.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 71.

72.    The 2006 annual tax sale was held from June 6, 2006 to June 30, 2006. At the 2006 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2004.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 72.

73.    The 2007 annual tax sale was held from June 5, 2007 to June 26, 2007.  At the 2007 annual tax sale liens were sold based on property owners' failure to pay real estate taxes in 2005.

**ANSWER:**  The Heartwood Defendants admit the allegations of Paragraph 73.

74.    In order to participate in the auction, tax buyers must register with the Collector.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 74, and on that basis deny those allegations.

75.    At the time of registration, the tax buyer, or its authorized agent, must affirm under penalty of perjury its adherence to the Rule.  Specifically, every tax buyer permitted to participate in the tax sale certifies affirms [sic] that it (or its registered agent) "understand[s The Rule]; that at no time during the ... Tax Sale shall I, or the entity that I represent, or an entity directly or indirectly related to the above tax buyer, have multiple bidders registered as separate bidding entities, simultaneously bidding at the ... Sale." The Rule — established before the 2001 tax sale and applicable to every tax sale held since that time — prohibits related bidding entities from simultaneously participating in the sale.

**ANSWER:**  The allegations of Paragraph 75 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the third sentence of Paragraph 75.  The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 75, and on that basis deny those allegations.

76.    The Rule defines "related bidding entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant" in the annual tax sale.

**ANSWER:**  The Heartwood Defendants admit that the Rule in effect from 2004 through 2007

contains the language quoted in Paragraph 76, among other language.  The Heartwood

Defendants deny the remaining allegations of Paragraph 76.

77.    The Rule ensures that no one can increase the number of liens they obtain to the detriment of other tax buyers by having two or more bidders, or tax buyers, purchasing liens for

- 20 -

their benefit. The Rule protects the auctioneer's fair allocation of bids to guarantee an equal apportionment of liens among all tax buyers who bid the lowest 0% penalty rate.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 77.

78.    Beginning with applications to participate in the auction of 2002 taxes in 2004, the Registration required a prospective tax buyer to represent and warrant that it is not affiliated with any other entity registering to bid in that: (A) It has no capital, purchase money, or other finances in common with any other bidding entity or person registering to bid at the annual auction; (B) It shares no common ownership interest or common source of funds with any other bidding entity or person registering to bid; (C) It has no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity or person at the same sale; (D) It has no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale; (E) It does not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 78.

79.    Determined to obtain an unfair advantage, Barrett Rochman and John Bridge devised a scheme to enable the Sabre Defendants to obtain more liens than they would have been able to obtain using one bidder, as required by the Rule, under the Treasurer's method of allocating liens that attracted multiple 0% penalty rate bids to ensure that such liens are distributed equally and fairly among the 0% penalty rate bidders based on such bids.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 79.

80.    Pursuant to that scheme, the Sabre Defendants organized an enterprise by having numerous entities created and coordinated these entities', and others, activities to acquire liens in the tax sales for the Sabre Defendants' benefit. The entities that acted as the Sabre Defendants' nominees and purchased liens for Sabre's benefit included defendants Heartwood, Bamp, Richarony, Sass IV and Sass V, G3, Tax Play, Tax Capital, Aztek, Chonus, and Goin Realty, as well as third parties Regal One, LLC ("Regal"), DRN II, Inc., DRN 2, Cronus Projects, LLC ("Cronus"), CCJ Investments, LLC ("CCJ"), Georgetown Investors, LLC ("Georgetown"), Optimum Financial, Inc. ("Optimum"), L.C.C. Venture, LLC ("L.C.C."), Jeshay LLC ("Jeshay"), BRB Investments, LLC ("BRB"), Mud Cats Real Estate LLC ("Mud Cats"), Carpus Investments, LLC ("Carpus"), and GJ Venture LLC ("GJ") (collectively, the "Sabre Nominees").

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 80.

81.    John Bridge, B. Rochman, K. Rochman, Sierzega and Sabre accomplished their objective of obtaining more liens than Sabre could obtain by itself through the following means: they directed the principals of the respective Sabre Nominees to create entities and/or to register for the tax sales; directed all of the Sabre Nominees to register to participate in the tax sales by filing registrations that concealed that they were bidding for Sabre; provided the list of liens to purchase at the tax sale to the Sabre Nominees; agreed that each of the Sabre Nominees would transfer certificates of purchase they obtained at the tax sales to Sabre, directly or indirectly,

following the respective tax sales in which each participated; and upon receipt of the liens had  perform all the steps necessary for the scheme to realize the value of the liens, including causing necessary notices to be created and served, paying subsequent taxes on liens acquired by Sabre and the Sabre Nominees and taking steps to secure deeds to property where the property owner failed to redeem the liens,

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 81.

82.    Sabre had no employees, and it was created in 2001 to act as the tax lien buying entity for the Sabre Defendants after the enactment of the Single Bidder Rule. SI Securities, which had previously been the tax buying entity for the Sabre Defendants in Cook County prior to Sabre,

**ANSWER:** The Heartwood Defendants deny that they were Sabre nominees. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 82, and on that basis deny those allegations.

83.    In the years 2002, 2003 and 2004, B. Rochman and John Bridge submitted registrations and sworn affidavits to the Collector to enable Sabre to participate in the tax sales held during those years. In Sabre's registrations, the affidavits acknowledging the Rule were false because Sabre had multiple bidders registering to participate on its behalf. Additionally, in the registration for the sale held in 2004, B. Rochman and Bridge falsely attested that Sabre (A) had no capital, purchase money, or other finances in common with another tax buyer, (B) shared no common ownership interest or common source of funds with another tax buyer, (C) had no agreements to purchase or sell any parcels successfully bid on by any other tax buyer, (D) had no agreements to purchase or sell any parcels at the annual sale by any entity or person known to be ineligible to bid at the annual sale, and (E) did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity. To complete the registrations, Sabre falsely represented that it would adhere to the Single Bidder Rule and that neither it, nor any entity directly or indirectly related to it, would have multiple bidders registered as separate bidding entities bid on the same certificates.

**ANSWER:** The Heartwood Defendants deny any allegations of Paragraph 83 that (a) the Heartwood Defendants registered, participated, and/or bid on behalf of Sabre, (b) Sabre identified liens on which the Heartwood Defendants were to bid on and purchase for Sabre's

- 22 -

benefit, (c) the Heartwood Defendants were "Sabre nominees," and/or (d) the Heartwood

Defendants violated the Rule. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 83, and on

that basis deny those allegations.

84.    Beginning in 2002, and continuing through the present, the Sabre Defendants
executed their scheme to defraud the County and the other tax buyers through violation of the
Single Bidder Rule by having the Sabre Nominees file false registrations and affidavits to obtain
access to each of the tax sales from 2002 through 2007 to enable them to bid on and purchase
liens for the Sabre Defendants' benefit.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 84.

85.    Through the course of the scheme, the Sabre Defendants' and Sabre Nominees'
improper participation in the tax sales, and their resulting acquisition of liens, deprived the other
tax buyers, including Plaintiffs, of the opportunity to acquire tax liens and obtain deeds on the
distinct parcels of real estate, thus depriving them of the opportunity to profit from the payment
of penalties on subsequent taxes and the sale of parcels for which a deed was acquired.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 85.

86.    Heartwood, Bamp and Richarony are bidding entities related to each other, as
well as to the Sabre Defendants, as they agreed to participate in the annual tax sales and obtain
liens for the Sabre Defendants' benefit.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 86.

87.    Heartwood has no separate existence from BankAtlantic. Indeed, BankAtlantic
and its employees, such as DeLuca and Branse, direct, control, and perform all of Heartwood's
activity (in the tax sales and generally).

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 87.

88.    BankAtlantic submitted registrations and sworn affidavits for Heartwood to the
Collector for participation in the 2003 through 2007 annual tax sale stating that it adhered to the
Rule. Specifically, it affirmed under penalty of perjury that it understood the Rule and that
neither it nor any entity directly or indirectly related to it would have multiple bidders registered
as separate bidding entities simultaneously bidding at the tax sale. At no time did it state that it
believed the Rule to be vague or overbroad, nor did it inform the Treasurer that it would comply
only with certain parts of the Rule. BankAtlantic's representation that it would comply with the
County's Rule was unequivocal and unconditional.

**ANSWER:** The Heartwood Defendants admit that certain individuals submitted registrations and sworn affidavits to the Collector for participation in the 2003, 2004, 2005, 2006, and 2007 annual Cook County tax sales, and that included in those materials was a sworn statement that, among other things: "I certify under penalty of perjury pursuant to § 1-109 of the Illinois Code of Civil Procedure, that I am a duly authorized agent, officer, or representative for Heartwood 88 LLC; that I have received and understand the above-stated rules; that at no time during the ... Annual Tax Sale shall I, or the entity that I represent, or an entity directly or indirectly related to the above tax buyer, have multiple bidders registered as separate bidding entities simultaneously bidding at the ... Annual Tax Sale." The Heartwood Defendants deny the remaining allegations of Paragraph 88.

89.    Those affirmations were false because BankAtlantic violated the Rule by bidding at the tax sales for the Sabre Defendants' benefit and by using Bamp and Richarony to obtain more than its fair allocation of liens.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 89.

90.    Additionally, BankAtlantic represented in Heartwood's registrations, among other things, that it had no agreements to purchase or sell any parcels successfully bid on by any other registering bidding entity and that it did not stand to benefit financially under an agreement with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 90.

91.    BankAtlantic's representations were false because it agreed prior to the Cook County auctions that it would sell liens that it, via Heartwood, obtained at the auction to the Sabre Defendants. BankAtlantic's representations were also false because it created Bamp and Richarony to purchase liens during the 2004 sale pursuant to their pre-auction agreement that Bamp and Richarony would sell liens they obtained to BankAtlantic or Heartwood.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 91.

92.    Each of Heartwood's registrations for the 2003 through 2007 tax sales were fraudulent because BankAtlantic concealed the relationship with Sabre, with the 2004 registration also concealing the relationship with Bamp and Richarony.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 92.

93. 

BankAtlantic knew Sabre to be a bidder in the Cook County Tax Sales in prior years.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations in the seventh sentence of Paragraph 93, and on that basis

deny those allegations. The Heartwood Defendants deny the remaining allegations of Paragraph

93.

94.    Through Heartwood, BankAtlantic participated in the 2003 tax sale using a bid book provided by the Sabre Defendants that identified the liens Heartwood was not to bid on. The Sabre Defendants designated those liens as "N/A." BankAtlantic purchased liens approved in the bid book ██████████████████████████████ the unredeemed certificates were transferred to one of the Sabre Defendants on April 1, 2005, for the full redemptive value. Heartwood and the Sabre Defendants repeated this process for the certificates obtained in each of the subsequent tax sales, except that the transfers of unredeemed certificates from the 2007 annual tax sale have not yet occurred.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 94.

95. ████████████████████████████████████████ ████████████ Prior to the tax sale, BankAtlantic prepared bid lists for the other Sabre Nominees based on the information provided to it by the Sabre Defendants. BankAtlantic then helped prepare and format the bid sheets that would be used by various members of the conspiracy at the tax sale.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 95.

96.    Thanks in part to BankAtlantic's participation in the Sabre Enterprise, the 2003 tax sale of 2001 tax liens was an enormous success for the Sabre Rigged Bidding Enterprise. On

March 5, 2004, Bridge emailed Michael DeLuca a spreadsheet illustrating the results of the of the [sic] 2003 tax sale. Bridge identified that the Sabre Rigged Bidding Enterprise successfully obtained over 30% of the liens offered at the tax sale, and 59% of the liens the Sabre Defendants rated as 1, 2 or 3 that "we wanted," whereas the most the Sabre Defendants would have obtained with only one bidder would have been less than 5% of the liens offered. DeLuca congratulated Bridge on the results of their scheme, responding "Amazing. Thank you." (Attached as Exhibit D are copies of John Bridge's email to DeLuca transmitting the spreadsheet and DeLuca's email in response.)

**ANSWER:** The Heartwood Defendants admit that the document attached as Exhibit D to

Plaintiffs' Third Amended Complaint consists of copies of an e-mail from John Bridge to

Michael DeLuca transmitting a spreadsheet and an e-mail from Michael DeLuca to John Bridge

that states, among other things, "Amazing. Thank you." The Heartwood Defendants deny the

allegations of the first, third, and fourth sentences of Paragraph 96. The Heartwood Defendants

lack knowledge or information sufficient to form a belief about the truth of the remaining

allegations of Paragraph 96, and on that basis deny those allegations.

97.     At this same time, DeLuca and Branse were under intense pressure from their superiors at BankAtlantic to increase the bank's profits. Specifically, they were regularly chastised by Alan Levan, BankAtlantic's Chief Executive Officer, and Lewis Sarrica, BankAtlantic's Executive Vice President and Chief Investment Officer, for failing to satisfy their 15% annual earnings targets and they would do anything in order to satisfy BankAtlantic's financial objectives.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 97.

98.     Therefore, after the Sabre Rigged Bidding Enterprise's success in the 2003 tax sale, BankAtlantic accelerated and expanded its involvement by drafting its own multiple bidders to participate in the tax sale and obtain tax certificates for the Sabre Enterprise. Specifically, BankAtlantic determined to invite its partners from its Maryland tax lien operations, DeLaurentis and Turer, to participate in the Cook County sale as nominees. In a memo to the Investment Committee, Branse predicted that this arrangement would double the bank's investment in Cook County. (Attached as Exhibit E is the Investment Committee memo). In the same memo, Branse indicated that if sending DeLaurentis and Turer to bid as the bank's nominees, with a specific agreement that they would transfer the liens they obtained to BankAtlantic, violated the Rule, the only ramification would be to bar them from the tax sale.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 98.

99.     ████████████████████████, and prior to the 2004 tax sale, Branse and DeLuca secured agreements with Turer and DeLaurentis to bid on BankAtlantic's, and thus the

Sabre Defendants [sic], behalf at the tax sale. The agreements included that Turer and DeLaurentis would transfer liens they obtained at the sale to BankAtlantic or Heartwood.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 99.

100.   On April 19, 2004, in furtherance of those agreements, BankAtlantic incorporated Bamp and Richarony, the entities that DeLaurentis and Turer, respectively, would use to bid at the tax sale for BankAtlantic. Both were incorporated less than two months before the 2004 auction for the sole purpose of bidding in that auction. About one week after their incorporations, on April 29 and 30, 2004, respectively, Bamp and Richarony filed registrations with sworn affidavits with the Collector, each stating that it adhered to the Rule. Bamp and Richarony's representations in the registrations were false as Bamp and Richarony were controlled by BankAtlantic and/or had agreed to purchase liens identified by BankAtlantic for BankAtlantic's, and ultimately the Sabre Defendants', benefit, and to transfer such liens to BankAtlantic after the auction was complete.

**ANSWER:** The Heartwood Defendants admit the allegations of the third sentence of Paragraph

100. The Heartwood Defendants deny the remaining allegations of Paragraph 100.

101.   Pursuant to its agreement with DeLaurentis and Turer, BankAtlantic and the Sabre Defendants performed all pre-sale due diligence, prepared bid lists, and provided and supervised bidders at the sale for Bamp and Richarony. In DeLaurentis and Turer's own words, it was a "turnkey" agreement in which all they had to do was provide the funds to purchase liens at the tax sale. They had no contact with the bidders for Bamp and Richarony, and no involvement in identifying which liens to bid on. This was all done by BankAtlantic and the Sabre Defendants using the Sabre Nominee bid books.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 101.

102.   On or between May 10, 2004 and June 7, 2004, Bamp purchased 257 liens at the 2004 annual tax sale and Richarony purchased 210 liens. Heartwood purchased 323 liens at the 2004 annual tax sale as well.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 102.

103.   In July of 2004, DeLaurentis and Turer fulfilled the pre-auction agreement and transferred all the certificates that Bamp and Richarony obtained at the 2004 tax sale to Heartwood for full redemptive value, plus reimbursement for all expenses (including payments to incorporate and for bidders), plus a $20,000 bidding fee.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 103.

104.   After taking the interest profit, BankAtlantic assigned liens that Heartwood, Bamp, and Richarony purchased to Sabre prior to the deed process.

**ANSWER:** The Heartwood Defendants admit that in 2006, Heartwood sold and assigned

certain of the liens that it purchased at the 2004 Cook County tax sale, including liens that had

been originally purchased by Bamp and/or Richarony at the 2004 Cook County tax sale, to

Sabre. The Heartwood Defendants deny the remaining allegations of Paragraph 104.

     105.    Having completed the transfer of liens to Sabre through Heartwood, BankAtlantic
quickly dissolved Bamp and Richarony on the same day—December 21, 2004.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 105.

     106.    On at least one occasion, Sabre represented in public filings that it and Heartwood
were one and the same. In particular, Sabre petitioned for a tax deed on Certificate of Purchase
No. 02-0006303, representing it was the owner of the Certificate. In fact, that lien had been
purchased by Bamp and assigned to Heartwood, not Sabre. Sabre's Petition did not include an
assignment of the Certificate to Sabre, and, thus, the Petition was predicated on Sabre's
representation that it was the legal equivalent of Heartwood.

**ANSWER:** The Heartwood Defendants admit the allegations of Paragraph 106 that (a) Sabre

petitioned for a tax deed on Certificate of Purchase No. 02-0006303, representing that it was the

owner of that Certificate and not attaching any documentation showing an assignment of that

Certificate from Heartwood to Sabre, (b) that Certificate previously had been purchased by

Bamp and assigned to Heartwood, and (c) Heartwood later assigned that Certificate to Sabre.

The Heartwood Defendants deny the allegation of Paragraph 106 that Sabre's petition

represented that it and Heartwood were one and the same, and/or that Sabre's petition was

predicated on Sabre's representation that it was the legal equivalent of Heartwood. The

Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth

of the remaining allegations of Paragraph 106, and on that basis deny those allegations.

     107.    Sabre, Heartwood, Bamp and Richarony and the other Sabre Nominees primarily
bid on the same liens during the 2004 tax sale, and Heartwood, Sabre and the other Sabre
Nominees bid on the same liens during the 2003 tax sale. During the 2005 through 2007 annual
tax sales, while Sabre did not directly participate, it had several Sabre Nominees, including Sass,
Tax Capital, Aztek, Chonus, Goin Realty, G3, BRB, Mud Cats, Carpus, Georgetown, Regal,
Cronus, and GJ, register and bid in the annual tax sale and purchase liens on behalf of the Sabre
Defendants. Heartwood and those other Sabre Nominees bid on the same liens during the 2005

through 2007 tax sales. Each year, the Sabre Defendants provided the Sabre Nominees with bid book identifying the liens they were to bid on and purchase for the Sabre Defendants' benefit. Sabre, Heartwood, Bamp and Richarony, and the other Sabre Nominees obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Additionally, for the 2005 tax sale, BankAtlantic acted as a full-blown manager of the Sabre Enterprise, providing use of its resources to conduct the conspiracy. Specifically, on the morning of July 6, 2005 (the first day of the sale), DeLuca emailed Kevin Sierzega and Kelly Penman, working as CMS, directions on how to create bid books for all of Sabre's nominees and how to access BankAtlantic's computer system in order to input information regarding the nominees' purchases at the tax sale. (Attached as Exhibit F are DeLuca's emails to Sierzega and Penman.)

**ANSWER:** The Heartwood Defendants admit that Exhibit F consists of a July 6, 2005 e-mail from Michael DeLuca to Kevin Sierzega and/or Kelly Penman and deny the remaining allegations of the eighth sentence of Paragraph 107. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of Paragraph 107, and on that basis deny those allegations. The Heartwood Defendants deny the remaining allegations of Paragraph 107.

108.    Had Sabre's Nominees not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Heartwood, Bamp and Richarony, as well as by Sabre and its other Nominees. Attached as Exhibits G1, G2, G3, G4, G5 and G6 are lists of liens, related to the 2002-2007 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 108.

109.    Sass, through its subsidiary Sass Management, Sass Partners-IV, Sass Partners-V, Sass Muni-IV, and Sass Muni-V (collectively, the "M.D. Sass Entities") are related entities to each other, as well as to Sabre, and they agreed to participate in the annual tax sales and obtain liens for the Sabre Defendants' benefit. Sass Muni-IV and Sass Muni-V have no employees and, like BankAtlantic operating through Heartwood, Sass and Sass Management's employees operated Sass Partners-IV, Sass Partners-V, Sass Muni-IV, and Sass Muni-V, which had no real independent capacity. Jessani and Allison were responsible for operating Sass Management, Sass Partners-IV, Sass Partners-V, Sass Muni-IV and Sass Muni-V.

**ANSWER:** The Heartwood Defendants deny the allegations of the second sentence of Paragraph 109. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 109, and on that basis deny those

allegations.

110.   ███████████████████████████████████████████████████████

███████████████████████████████████████████████████  Sass Muni-IV

participated in the 2002 through 2004 tax sales.  Sass Muni-V participated in the 2005 through
2007 tax sales.

**ANSWER:**  The Heartwood Defendants admit the allegations of the second and third sentences

of Paragraph 110.  The Heartwood Defendants lack knowledge or information sufficient to form

a belief about the truth of the remaining allegations of Paragraph 110, and on that basis deny

those allegations.

111.    The M.D. Sass Entities, Jessani and Allison submitted registrations to the
Collector for the 2002 through 2007 tax sales, respectively, stating that they adhered to
the Rule.  In those registrations, the M.D. Sass Entities also represented, among other things, that
each had no agreements to purchase or sell any parcels successfully bid on by any other
registering bidding entity and that each did not stand to benefit financially under an agreement
with any other bidder at the sale concerning parcels to be bid on or purchased by another entity.
Those representations were false as the M.D. Sass Entities had agreed to purchase liens for the
Sabre Defendants' benefit.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 111, and on that basis deny those

allegations.

112.    The M.D. Sass Entities's registrations for the 2002 through 2007 tax sales were
fraudulent because the M.D. Sass Entities, Jessani and Allison concealed their relationship with
Sabre and that they were obtaining liens for the Sabre Defendants' benefit.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 112, and on that basis deny those

allegations.

113.    Sass Muni-IV, Sabre and other Sabre Nominees bid on the same liens during the
2002 through 2004 tax sales, and Sass Muni-V and other Sabre Nominees bid on the same liens
during the 2005 through 2007 tax sales.  The M.D. Sass Entities obtained liens bid on by at least
one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby
obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation

- 30 -

methodology. Had those defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Sass Muni-IV and Sass Muni-V, as well as by Sabre and its other Nominees. Attached as Exhibits G1, G2, G3, G4, G5 and G6 are lists of liens, related to the 2002-2007 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously [sic] 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants admit that Heartwood bid on certain liens during the 2007 Cook County tax sale on which certain of the other entities referred to in Paragraph 113 bid during that sale. The Heartwood Defendants deny the remaining allegations of Paragraph 113.

114.    The Sabre Defendants also enlisted G3 to join the enterprise and obtain liens for the Sabre Defendants' benefit. To fulfill that function, the Sabre Defendants, Wilson, Stec and Grant had G3 submit a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale of 2002 tax liens. ████████████████████████████████████████

**ANSWER:** The Heartwood Defendants deny that there is or was an enterprise in which any of the Heartwood Defendants ever has participated. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 114, and on that basis deny those allegations.

115.    ████████████████████████████████████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 115, and on that basis deny those allegations.

116.    G3, Sabre, and Sabre's nominees bid on the same liens during the 2004 tax sale of 2002 tax liens based on the bid book provided by the Sabre Defendants. G3 obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's

allocation methodology. Had Sabre and its Nominees not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by G3, as well as by Sabre and its other Nominees. Attached as Exhibit G3 is the list of liens, related to the 2004 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants deny the allegations of the first, third and fourth

sentences of Paragraph 116. The Heartwood Defendants deny any allegations of Paragraph 116

that the County employs an allocation methodology that guarantees a fair or equal apportionment

of liens. The Heartwood Defendants lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of Paragraph 116, and on that basis deny those

allegations.

117.    The Sabre Defendants also enlisted Quinn to join the enterprise and obtain liens for their benefit. To fulfill that function, Quinn created two entities to bid at the Cook County Tax Sales, Tax Play and Tax Capital. The Sabre Defendants and Quinn had Tax Play submit a registration to the Cook County Treasurer's Office to participate in the 2004 tax sale of 2002 tax liens, and had Tax Capital submit registrations to the Cook County Treasurer's Office to participate in the tax sale held each of the next three years, calendar years 2005, 2006 and 2007.

**ANSWER:** The Heartwood Defendants deny that there is or was an enterprise in which any of

the Heartwood Defendants ever has participated. The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

117, and on that basis deny those allegations.

118.    Tax Play, Tax Capital, Sabre and other Sabre Nominees bid on the same liens during the 2004, 2005 and 2006 tax sales of 2002, 2003 and 2004 tax liens based on the bid books provided by the Sabre Defendants. Tax Play, during the 2004 tax sale, and Tax Capital, during the 2003 and 2004 tax sale, obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Had Sabre and its Nominees not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Tax Play and Tax Capital, as well as by Sabre and its other Nominees. Attached as Exhibits G3, G4, and G5 are lists of liens, related to the 2004, 2005 and 2006 tax

sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:**  The Heartwood Defendants deny the allegations of the first, third and fourth sentences of Paragraph 118.  The Heartwood Defendants deny any allegations of Paragraph 118 that the County employs an allocation methodology that guarantees a fair or equal apportionment of liens.  The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 118, and on that basis deny those allegations.

119.



**ANSWER:**  The Heartwood Defendants deny the allegations of Paragraph 119.

120.    The Sabre Defendants also enlisted Bingham to join the enterprise and obtain liens for their benefit.  To fulfill that function, Bingham created two entities to bid at the Cook County Tax Sales, Aztek and Chonus.  The Sabre Defendants and Bingham had Aztek submit a registration to the Cook County Treasurer's Office to participate in the 2005 tax sale of 2003 tax liens, and had Chonus submit a registration to the Cook County Treasurer's Office to participate in the 2007 tax sale of 2005 tax liens.

**ANSWER:**  The Heartwood Defendants deny that there is or was an enterprise in which any of the Heartwood Defendants ever has participated.  The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 120, and on that basis deny those allegations.

121.    Aztek, Chonus and other Sabre Nominees bid on the same liens during the 2005 and 2007 tax sales of 2003 and 2005 tax liens based on the bid book provided by the Sabre Defendants. Aztek, during the 2005 tax sale, and Chonus, during the 2007 tax sale, obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Had Sabre and its Nominees not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Aztek and Chonus, as well as by Sabre and its other Nominees. Attached as Exhibits G4 and G6 are lists of liens, related to the 2005, and 2007 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:**  The Heartwood Defendants deny the allegations of the first, third and fourth

sentences of Paragraph 121.  The Heartwood Defendants deny any allegations of Paragraph 121

that the County employs an allocation methodology that guarantees a fair or equal apportionment

of liens.  The Heartwood Defendants lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations of Paragraph 121, and on that basis deny those

allegations.

122.    In 2007, the Sabre Defendants and Joseph Varan, who had been participating as a Sabre Nominee through Cronus, a defendant in the consolidated case, since the 2003 tax sale of 2001 tax liens, agreed that Varan would provide another nominee for the 2007 tax sale.  Varan had Goin Realty join the enterprise and obtain liens for the Sabre Defendants' benefit.  The Sabre Defendants and Varan had Goin Realty submit a registration to the Cook County Treasurer's Office to participate in the 2007 tax sale of 2005 tax liens.  Varan also had Cronus submit a registration to the Cook County Treasurer's Office to participate in that same tax sale.

**ANSWER:**  The Heartwood Defendants deny that there is or was an enterprise in which any of

the Heartwood Defendants ever has participated.  The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

122, and on that basis deny those allegations.

123.    Goin Realty, Cronus and other Sabre Nominees bid on the same liens during the 2007 tax sales of 2005 tax liens based on the bid book provided by the Sabre Defendants. During the 2007 tax sale, Goin Realty obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the

Plaintiffs otherwise would have obtained under the County's allocation methodology. Had Sabre and its Nominees not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Goin Realty and Cronus, as well as by Sabre and its other Nominees. Attached as Exhibit G6 is a list of liens, related to the 2007 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Sabre or its nominees pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants admit that Heartwood bid on certain liens during the

2007 Cook County tax sale on which certain of the other entities referred to in Paragraph 123 bid

on during that sale, and deny the remaining allegations in the first sentence of Paragraph 123.

The Heartwood Defendants deny the allegations of the third and fourth sentences of Paragraph

123. The Heartwood Defendants deny any allegation of Paragraph 123 that the County employs

an allocation methodology that guarantees a fair or equal apportionment of liens. The

Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth

of the remaining allegations of Paragraph 123, and on that basis deny those allegations.

124.   Salta and HBZ are related bidders under the Rule who obtained access to Cook County tax sales by making false representations in the registration process, specifically representing that each adhered to the Rule.

**ANSWER:** The allegations of Paragraph 124 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 124, and

on that basis deny those allegations.

125.   Salta registered with Cook County and was a bidder at the 2002-2007 annual tax sales. Defendants Atlas, Berger, Atlas' daughter Levinson, ███████████████████████████ ███ each had a financial interest in or benefited from Salta. Salta identified Marshall Atlas as its principal. Berger has worked for Atlas and Salta for decades, including conducting Salta's affairs and signing checks on its behalf. Joshua worked for Salta and was registered to bid on Salta's behalf at Cook County annual tax sales held in 2003, 2004, 2005, 2006, and 2007. Levinson ███████████ each have worked for Salta.

**ANSWER:** The Heartwood Defendants admit the allegations of the first sentence of Paragraph

125. The Heartwood Defendants admit that Joshua Atlas bid on Salta's behalf at the Cook

County annual tax sale held in 2007.  The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 125, and on

that basis deny those allegations.

126.    On or about January 27, 2003, HBZ was incorporated so that Atlas, Berger, Levinson, ███████████ could improperly increase the number of liens that they could obtain or benefit from at Cook County annual tax sales.  HBZ's principals are Levinson, Berger, ███████. During its first year of operation, Salta and Atlas provided the financing for HBZ to bid.  ███████ On at least one occasion, Salta paid the subsequent taxes on the liens acquired by HBZ during the 2005 annual tax sales.

**ANSWER:**  The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 126, and on that basis deny those

allegations.

127.    Atlas, Levinson, Berger, ██████████ created HBZ to purchase liens during tax sales in an attempt to circumvent the Rule, enacted in 2001, prohibiting multiple bidders from participating in tax sales contemporaneously for the same registrant.  Atlas, Levinson, Berger, ██████████ filed false statements in the registration process for Salta and HBZ to conceal their relationships and these violations of the Rule.  Among other things, despite the fact that Levinson, Berger, ██████████ were the principals of HBZ, and they disclosed such ownership to banks with which they dealt, registration statements submitted to Cook County in order to participate in the 2004, 2005, 2006, and 2007 annual tax sales deliberately omitted ██████████ as owners.  This was purposefully done to hide the relationship between HBZ and Salta and ████████████████████████████████████████ Additionally, the scheme necessitated that ██████████ be left off the registration statements for HBZ so that the County would not know of the relationship between HBZ and Salta ████████████████

**ANSWER:**  The allegations of Paragraph 127 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 127.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 127, and on that basis deny those allegations.

128.    Atlas, Levinson, Berger, █████████████ continued to have both Salta and HBZ purchase liens at subsequent sales, including through the 2007 annual tax sale, to obtain more liens than they would have been able to obtain using just Salta. Atlas, Levinson, Berger, █████████████ had Salta and HBZ file false statements in the registration process for each sale to conceal their violations of the Rule. During the 2003 tax sale, HBZ purchased 518 liens for $657,824.66, and Salta purchased 1,233 liens for $4,745,039.98. During the 2004 tax sale, HBZ purchased 336 liens for $699,836.57, and Salta purchased 994 liens for $3,410,944.21. During the 2005 tax sale, HBZ purchased 476 liens for $762,493.17, and Salta purchased 822 liens for $2,183,375.62. During the 2006 tax sale, HBZ purchased 679 liens for $1,069,425.91, and Salta purchased 1437 liens for $4,261,425.41. During the 2007 tax sale, HBZ purchased 553 liens for $1,146126.10 and Salta purchased 980 liens for $3,167,408.86.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 128, and on that basis deny those

allegations.

129.    Salta and HBZ bid on the same liens during the 2003 through 2007 tax sales. Salta and HBZ obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding entities. Had those defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Salta and HBZ. Attached as Exhibits J1, J2, J3, J4, and J5 are lists of liens, related to the 2003-2007 tax sales, on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Salta or HBZ pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants admit that Salta bid on certain liens on which HBZ bid

at the 2007 Cook County tax sale, and lack knowledge or information sufficient to form a belief

about the truth of the remaining allegations in the first sentence of Paragraph 129. The

Heartwood Defendants deny that the County employs an allocation methodology that guarantees

a fair or equal apportionment of liens. The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

129, and on that basis deny those allegations.

130.    Defendants Wheeler-Dealer, BG, and Atlantic Municipal are related bidders under the Rule, who obtained access to Cook County tax sales by making false representations in the registration process, specifically representing that each would adhere to the Rule.

**ANSWER:** The allegations of Paragraph 130 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 130, and on that basis deny those allegations.

131. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ For the past approximately 5 years, MREI has operated out of offices located at 120 North LaSalle Street, Suite 1350, Chicago, Illinois. ███████████████████████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 131, and on that basis deny those allegations.

132. Beginning in approximately 1990, Gray stopped using MREI to purchase tax liens directly and began to use other entities. One of these entities was defendant BG, which participated in the Cook County annual tax sales in at least 2003 through 2005. BG was owned on paper by Gray's wife, defendant Bonnie Gray. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████ BG was operated out of the 120 North LaSalle Street offices. BG obtained funds through loans from financial institutions ████████████████████████████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 132, and on that basis deny those allegations.

133. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 133, and on that basis deny those allegations.

134.   In order to increase unfairly the number of tax liens they could obtain, defendants set up another entity to participate in the Cook County annual tax sales, defendant Wheeler-Dealer.  Wheeler Dealer participated in the Cook County Treasurer's office tax sales for at least the years 2003 through 2007.  Wheeler Dealer purported to be owned on paper by Gray's son, Timothy.  Like BG, Wheeler Dealer operated out of the office at 120 North LaSalle Street, ███

████████████████████████████████████   Indeed, Wheeler-Dealer and BG each sought and received letters of credit in preparation for the 2004 tax sale from the LaSalle Bank in Chicago.  The letters of credit were obtained immediately after each other: Wheeler-Dealer's letter of credit number was S568351 and BG's letter of credit number was S568352.

**ANSWER:** The Heartwood Defendants admit the allegations of the second sentence of Paragraph 134.  The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 134, and on that basis deny those allegations.

135.   During the annual tax sale in 2003, defendants also used Wheeler-Dealer to purchase tax liens for defendant MREI PSP.  Wheeler Dealer purchased liens at the tax sale and assigned some of those liens to MREI PSP.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 135, and on that basis deny those allegations.

136.   BG did not participate in the 2006 and 2007 annual tax sales, but was replaced in the scheme by another entity, defendant Atlantic Municipal.  On information and belief, Atlantic

Municipal purported to be owned by Gray's children, including David Gray Jr. and, at least at some point, Timothy. Like the other entities, Atlantic Municipal operated out of the office at 120 North LaSalle Street, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

**ANSWER:** The Heartwood Defendants deny that there is or was a scheme in which any of the

Heartwood Defendants ever has participated. The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

136, and on that basis deny those allegations.

137.    Based on the facts stated above, ████ Bonnie and Timothy started using
Wheeler-Dealer and BG in 2003 in an attempt to circumvent the Rule, enacted in 2001,
prohibiting multiple bidders from participating in tax sales contemporaneously for the same
registrant. ████ Bonnie and Timothy filed false statements in the registration process for
Wheeler-Dealer and BG to conceal these violations of the Rule. During the 2003 tax sale,
Wheeler-Dealer purchased 1,558 liens for $2,700,411.41, and BG purchased 1,463 liens for
$4,187,561.40. During the 2004 tax sale, Wheeler-Dealer purchased 842 liens for
$2,271,202.77, and BG purchased 532 liens for $1,187,690.57. During the 2005 tax sale,
Wheeler-Dealer purchased 765 liens for $2,376,407.37, and BG purchased 667 liens for
$1,709,678.62.

**ANSWER:** The allegations of Paragraph 137 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 137.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 137, and on that basis deny those allegations.

138.    Based on the facts stated above, ████ Bonnie and Timothy started using
Wheeler-Dealer and Atlantic Municipal in 2006 in an attempt to circumvent the Rule, enacted in
2001, prohibiting multiple bidders from participating in tax sales contemporaneously for the
same registrant. ████ Bonnie and Timothy filed false statements in the registration process for
Wheeler-Dealer and Atlantic Municipal to conceal these violations of the Rule. During the 2006
tax sale, Wheeler-Dealer purchased 1412 liens for $3,970203.29, and Atlantic Municipal

- 40 -

purchased 1166 liens for $2,803,555.85. During the 2007 tax sale, Wheeler-Dealer purchased 1189 liens for $3,744,736.93, and Atlantic Municipal purchased 921 liens for $2,498,233.16.

**ANSWER:** The allegations of Paragraph 138 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 138.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 138, and on that basis deny those allegations.

139.    Wheeler-Dealer and BG bid on the same liens during the 2003, 2004 and 2005 tax sales. Wheeler-Dealer and BG obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding entities. Had these defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Wheeler-Dealer and BG. Attached as Exhibits K1, K2, and K3 are lists of liens on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Wheeler-Dealer or BG pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants deny that the County employs an allocation

methodology that guarantees a fair or equal apportionment of liens. The Heartwood Defendants

lack knowledge or information sufficient to form a belief about the truth of the remaining

allegations of Paragraph 139, and on that basis deny those allegations.

140.    Wheeler-Dealer and Atlantic Municipal bid on the same liens during the 2006 and 2007 tax sales. Wheeler-Dealer and Atlantic Municipal obtained liens bid on by at least one of the Plaintiffs, with identical 0% penalty bids, during the annual tax sales, thereby obtaining liens one of the Plaintiffs otherwise would have obtained under the County's allocation methodology. Their conduct was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were related bidding entities. Had these defendants not violated the Rule, Plaintiffs would have obtained more liens, including liens obtained by Wheeler-Dealer and Atlantic Municipal. Attached as Exhibits K4 and K5 are lists of liens on which at least one of the Plaintiffs made a 0% penalty bid, yet lost the lien to Wheeler-Dealer or Atlantic Municipal pursuant to their simultaneously 0% penalty rate bids.

**ANSWER:** The Heartwood Defendants admit that Wheeler-Dealer bid on certain liens on

which Atlantic Municipal bid at the 2007 Cook County tax sale, and lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations in the first

sentence of Paragraph 140. The Heartwood Defendants deny that the County employs an

allocation methodology that guarantees a fair or equal apportionment of liens. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 140, and on that basis deny those allegations.

141.    Upon becoming concerned that the Cook County tax sale included multiple
bidders who were concealing their relationships, Plaintiffs conducted an investigation concerning
potential multiple bidding in violation of the Rule. The investigation included the review of tax
certificate records maintained by Cook County, the submission of requests under the Freedom of
Information Act, and the review of court documents from tax deed proceedings. The
investigation also included the review of other publicly available information related to
addresses, telephone numbers and corporate filings. Despite Plaintiffs' diligent investigation
using the resources available to them at the time, the availability of information was extremely
limited.

**ANSWER:** The Heartwood Defendants admit that plaintiffs submitted requests under the

Freedom of Information Act. The Heartwood Defendants lack knowledge or information

sufficient to form a belief about the truth of the remaining allegations of Paragraph 141, and on

that basis deny those allegations.

142.    Nonetheless, the investigation enabled Plaintiffs to identify facts supporting a
conclusion that several participants in the Cook County Tax Sale held in 2004 were actually
multiple bidders acting in violation of the Rule. The investigation revealed facts implicating
Sabre, CCJ, Cronus, Georgetown, Jeshay, and Regal One. Based on those findings, the
investigation was extended to prior sales, it revealed facts implicating Sabre, CCJ, Cronus, DRN
II, DRN 2, and Regal One related to prior sales. The investigation and findings formed the basis
of the original complaint filed on July 15, 2005 in the consolidated case, *Phoenix Bond &
Indemnity Co., et al. v. John Bridge, et al.* (Case No. 05-C-4095) (the "'05 Case"). Of course,
this information was merely the tip of the iceberg.

**ANSWER:** The Heartwood Defendants deny any allegations of Paragraph 142 that (a) the

Heartwood Defendants bid on behalf of Sabre, (b) Sabre identified liens on which the Heartwood

Defendants were to bid on and purchase for Sabre's benefit, (c) the Heartwood Defendants were

- 42 -

"Sabre nominees," and/or (d) the Heartwood Defendants violated the Rule. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 142, and on that basis deny those allegations.

143.    Plaintiffs' investigation continued after the filing of the lawsuit in 2005, both
within and outside the context of the litigation. Through continued review of publicly available
information and discovery that they were able to obtain from the defendants in the '05 Case,
Plaintiffs identified Heartwood, Bamp, Richarony, Sass Muni-IV, and Sass Muni-V as additional
multiple bidders for Sabre. The investigation also identified two additional multiple bidders
groups, one of which was Salta and HBZ. Those findings provided the basis for a new action
filed in 2006, which was brought in Cook County Circuit Court (Case No. 06-L-5751) ("the
State Court Action").

**ANSWER:** The Heartwood Defendants admit that plaintiffs' investigation continued after the

filing of the lawsuit in 2005, and that plaintiffs filed an action in 2006 in Cook County Circuit

Court, Case No. 06-L-5751. The Heartwood Defendants deny the allegations of Paragraph 143

that (a) the Heartwood Defendants bid on behalf of Sabre, (b) Sabre identified liens on which the

Heartwood Defendants were to bid on and purchase for Sabre's benefit, (c) the Heartwood

Defendants were "Sabre nominees," and/or (d) the Heartwood Defendants violated the Rule.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 143, and on that basis deny those allegations.

144.    Plaintiffs continued their investigation and identified another pair of multiple
bidders, BG and Wheeler-Dealer. Those findings provided the basis for the present action
against BG and Wheeler-Dealer, as well as multiple bidders already identified in the State Court
Action.

**ANSWER:** The Heartwood Defendants deny any allegations of Paragraph 144 that (a) the

Heartwood Defendants bid on behalf of Sabre, (b) Sabre identified liens on which the Heartwood

Defendants were to bid on and purchase for Sabre's benefit, (c) the Heartwood Defendants were

"Sabre nominees," and/or (d) the Heartwood Defendants violated the Rule. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 144, and on that basis deny those allegations.

145.   Plaintiffs continued their investigation, which was aided significantly last fall when Plaintiffs finally started receiving substantial amounts of discovery related to this case and the '05 case. Documents produced by defendants and third parties, as well as depositions that have been taken, have identified numerous other participants in each of the three RICO enterprises Plaintiffs previously alleged, parties that are being added pursuant to this most recent amendment to the complaint.

**ANSWER:** The Heartwood Defendants deny the allegations of the second sentence of

Paragraph 145. The Heartwood Defendants deny any allegations of Paragraph 145 that (a) the

Heartwood Defendants bid on behalf of Sabre, (b) Sabre identified liens on which the Heartwood

Defendants were to bid on and purchase for Sabre's benefit, (c) the Heartwood Defendants were

"Sabre nominees," and/or (d) the Heartwood Defendants violated the Rule. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 145, and on that basis deny those allegations.

146.   Plaintiffs' investigation was complicated by the very essence of the defendants' RICO enterprises, which is the concealment of relationships that exist between them. The defendants took steps to conceal that information from Cook County in ways beyond the misrepresentations in their acknowledgements of the Rule. For example, in its registration application, HBZ repeatedly concealed that two of its owners were Joshua and Arlene.

**ANSWER:** The Heartwood Defendants deny the allegations of the first and second sentences of

Paragraph 146. The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations of Paragraph 146, and on that basis deny those

allegations.

147.   That concealment continued in the context of the litigation. Despite their relationships to the defendants already named in the '05 Case or in this case, and their involvement in those defendants tax lien business at issue in the case, Defendants failed to identify the vast majority of the new defendants in discovery prior to Fall 2008. For example:

(a)   In their original Fed R. Civ. P. 26(a)(1) disclosures in 2005, neither Sabre nor the two decision-makers (Barrett Rochman and John Bridge) that Plaintiffs sued in the '05 Case identified Kenneth Rochman. Kenneth Rochman, who Sabre recently designated as its corporate representative under Rule 30(b)(6), testified at length at Sabre's deposition concerning Sabre's operations and participation at the Cook County tax sale, including his role in decision making for Sabre. Although Sabre did identify

Sierzega in its initial disclosures, it successfully thwarted Plaintiffs' ability to engage in follow-up discovery by not producing a single document until September of 2008.

  (b) On December 14, 2007, Sabre answered interrogatories served in 2005 that requested identification of agreements regarding, among other things, transfers, purchases, services relating to, or management of certificates of purchase, liens, 

  (c) Sabre never identified Bingham, Quinn, or any of the principals of G3 in its Rule 26(a)(1) disclosures. Nor did it identify Aztek, Chonus, Tax Play, Tax Capital, or G3 when it answered interrogatories ███████████████████ In fact, Plaintiffs did not learn that these entities were participants in Sabre's conspiracy until they were identified in documents produced by Heartwood in September of 2008.

  (d) In HBZ's Rule 26(a)(1) disclosures that it made on November 16, 2007, ████████████████████████████████████████ in interrogatory responses that it served on December 12, 2007, identifying its employees.

  (e) In Wheeler-Dealer's Rule 26(a)(1) disclosures that it made on December 6, 2007, ██████████████████ even though it relied upon his company's, MREI, computer program to obtain lists of properties to bid on at the tax sale.

**ANSWER:** The Heartwood Defendants deny the allegations of the first and second sentences of Paragraph 147. The Heartwood Defendants deny any allegations of Paragraph 147 that the Heartwood Defendants engaged in any "concealment" or failure to comply with any discovery obligations. The Heartwood Defendants deny the allegations in subparagraph (b) and the third sentence of subparagraph (c) of Paragraph 147. The Heartwood Defendants deny any allegations of Paragraph 147 that (a) the Heartwood Defendants bid on behalf of Sabre, (b) Sabre identified liens on which the Heartwood Defendants were to bid on and purchase for Sabre's benefit, (c) the Heartwood Defendants were "Sabre nominees," and/or (d) the Heartwood Defendants violated the Rule. The Heartwood Defendants admit that Kenneth Rochman, who Sabre designated as its corporate representative under Rule 30(b)(6), testified at Sabre's deposition

regarding Sabre's operations and participation at Cook County tax sales. The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 147, and on that basis deny those allegations.

148.    During the auctions held in 2003 through 2007, BankAtlantic had Heartwood purchase hundreds of liens for Sabre's benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. BankAtlantic, Heartwood, Branse, DeLuca and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. BankAtlantic, Heartwood, Branse, DeLuca and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. BankAtlantic, Heartwood, Branse, DeLuca and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit L identifies a small sample of these mailings related to the liens that Heartwood purchased.

**ANSWER:**  The allegations of Paragraph 148 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 148.

149.    Sabre and its other nominees purchased thousands of liens during the auctions held during 2002 through 2007. The Sabre Defendants and the other nominees prepared and caused to be prepared 22-5, 22-10, 22-25 notices that where [sic] integral to the scheme to profit by obtaining additional liens in violation of the Rule. Exhibit M identifies a small sample of the mailings related to the liens that Sabre and the other Sabre Nominees purchased.

**ANSWER:**  The allegations of Paragraph 149 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of Paragraph 149 that the Heartwood

Defendants (a) purchased any liens during any auctions held during 2002 through 2007 as a

"nominee" of Sabre, or (b) participated in any alleged scheme to profit by obtaining any liens in

violation of the Rule. To the extent that Exhibit M is alleged to identify mailings related to liens

purchased by the Heartwood Defendants as alleged Sabre nominees, the Heartwood Defendants

- 46 -

deny the allegations of Paragraph 149. The Heartwood Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

149, and on that basis deny those allegations.

150.    During the auction held in 2004, Bamp purchased hundreds of liens for
Heartwood, BankAtlantic, and the Sabre Defendants' benefit in violation of the Rule. On
information and belief, these included liens on properties in which interested parties are located
out of state. Bamp, DeLaurentis, Heartwood, BankAtlantic, Branse, DeLuca and the Sabre
Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook
County to mail those notices to the last tax assessees in order to ensure that the liens could be
enforced. Bamp, DeLaurentis, Heartwood, BankAtlantic, Branse, DeLuca and the Sabre
Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that
were available to convert into deeds. Bamp, DeLaurentis, Heartwood, BankAtlantic, Branse,
DeLuca and the Sabre Defendants caused Cook County to mail these notices to enable them to
convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-
25 notices were integral to the scheme to profit by obtaining additional liens in violation of the
Rule. This conduct violated 18 U.S.C. § 1341. Exhibit N identifies a small sample of these
mailings related to the liens that Bamp purchased.

**ANSWER:** The allegations of Paragraph 150 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 150.

151.    During the auction held in 2004, Richarony purchased hundreds of liens for
Heartwood, BankAtlantic, and the Sabre Defendants' benefit in violation of the Rule. On
information and belief, these included liens on properties in which interested parties are located
out of state. Richarony, Turer, Heartwood, BankAtlantic, Branse, DeLuca and the Sabre
Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook
County to mail those notices to the last tax assessees in order to ensure that the liens could be
enforced. Richarony, Turer, Heartwood, BankAtlantic, Branse, DeLuca and the Sabre
Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that
were available to convert into deeds. Richarony, Turer, Heartwood, BankAtlantic, Branse,
DeLuca and the Sabre Defendants caused Cook County to mail these notices to enable them to
convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-
25 notices were integral to the scheme to profit by obtaining additional liens in violation of the
Rule. This conduct violated 18 U.S.C. § 1341. Exhibit O identifies a small sample of these
mailings related to the liens that Richarony purchased.

**ANSWER:** The allegations of Paragraph 151 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 151.

152.    During the auctions held in 2002 through 2007, the M.D. Sass Entities purchased hundreds of liens for the Sabre Defendants' benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. The M.D. Sass Entities, Jessani, Allison, and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. The M.D. Sass Entities, Jessani, Allison, and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. The M.D. Sass Entities, Jessani, Allison, and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit P identifies a small sample of these mailings related to the liens that the M.D. Sass Entities purchased.

**ANSWER:** The allegations of Paragraph 152 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants deny any allegations of Paragraph 152 that there is or was an improper "scheme to profit" in which any of the Heartwood Defendants ever has participated. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 152, and on that basis deny those allegations.

153.    During the auction held in 2004, G3 purchased dozens of liens for the Sabre Defendants' benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. G3, Wilson, Stec, Grant, and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that the liens could be enforced. G3, Wilson, Stec, Grant, and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. G3, Wilson, Stec, Grant, and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit Q identifies a small sample of these mailings related to the liens that G3 purchased.

**ANSWER:** The allegations of Paragraph 153 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants deny any allegations of Paragraph 153 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 153, and on that basis deny those allegations.

154.    During the auctions held in 2004 through 2007, Tax Play and Tax Capital purchased hundreds of liens for the Sabre Defendants' benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Tax Play, Tax Capital, Quinn and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that the liens could be enforced. Tax Play, Tax Capital, Quinn and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Tax Play, Tax Capital, Quinn and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit R identifies a small sample of these mailings related to the liens that Tax Play and Tax Capital purchased.

**ANSWER:** The allegations of Paragraph 154 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny any allegations of Paragraph 154 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 154, and on that basis deny those allegations.

155.    During the auctions held in 2005 and 2007, Aztek and Chonus purchased hundreds of liens for the Sabre Defendants' benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Aztek, Chonus, Bingham and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that the liens could be enforced. Aztek, Chonus, Bingham and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Aztek, Chonus, Bingham and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. §

1341. Exhibit S identifies a small sample of these mailings related to the liens that Aztek and Chonus purchased.

**ANSWER:** The allegations of Paragraph 155 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny any allegations of Paragraph 155 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 155, and on that basis deny those allegations.

156.　　During the auction held in 2007, Goin Realty purchased dozens of liens for the Sabre Defendants' benefit in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Goin Realty, Varan and the Sabre Defendants prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assessees in order to ensure that the liens could be enforced. Goin Realty, Varan and the Sabre Defendants also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Goin Realty, Varan and the Sabre Defendants caused Cook County to mail these notices to enable them to convert the liens into deeds for the Sabre Defendants. These mailings of the 22-5, 22-10 and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit T identifies a small sample of these mailings related to the liens that Goin Realty purchased.

**ANSWER:** The allegations of Paragraph 156 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny any allegations of Paragraph 156 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 156, and on that basis deny those allegations.

157.　　During the auctions held in 2003 through 2007, Salta purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. Salta, Atlas, Berger and ▮▮▮▮ prepared and caused to

be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. Salta, Atlas, Berger and ▮▮▮ also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. Salta, Atlas, Berger and ▮▮▮ caused Cook County to mail these notices to enable them to convert the liens into deeds for Salta. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit U identifies a small sample of these mailings related to the liens that Salta purchased.

**ANSWER:** The allegations of Paragraph 157 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny any allegations of Paragraph 157 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 157, and on that basis deny those allegations.

158.   During the auctions held in 2003 through 2007, HBZ purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. HBZ, Salta, Berger, Levinson, Atlas, ▮▮▮ ▮▮▮ prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. HBZ, Salta, Berger, Levinson, Atlas, ▮▮▮ also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. HBZ, Salta, Berger, Levinson, Atlas, ▮▮▮ caused Cook County to mail these notices to enable them to convert the liens into deeds for Salta's benefit. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibit V identifies a small sample of these mailings related to the liens that HBZ purchased.

**ANSWER:** The allegations of Paragraph 158 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny any allegations of Paragraph 158 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 158, and on that basis deny those allegations.

      159.    During the auctions held in 2003 through 2005, Wheeler-Dealer and BG purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. ███, Bonnie, Timothy, Wheeler-Dealer and BG prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. ███, Bonnie, Timothy, Wheeler-Dealer and BG also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. ███, Bonnie, Timothy, Wheeler-Dealer and BG caused Cook County to mail these notices to enable them to convert the liens into deeds. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibits W and X identifies a small sample of these mailings related to the liens that Wheeler-Dealer and BG purchased.

**ANSWER:** The allegations of Paragraph 159 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

      The Heartwood Defendants deny any allegations of Paragraph 159 that there is or was an

improper "scheme to profit" in which any of the Heartwood Defendants ever has participated.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 159, and on that basis deny those allegations.

      160.    During the auctions held in 2006 through 2007, Wheeler-Dealer and Atlantic Municipal purchased hundreds of liens in violation of the Rule. On information and belief, these included liens on properties in which interested parties are located out of state. ███, Bonnie, Timothy, Wheeler-Dealer and Atlantic Municipal prepared and caused to be prepared 22-5 notices of the lien sale and caused Cook County to mail those notices to the last tax assesses in order to ensure that the liens could be enforced. ███, Bonnie, Timothy, Wheeler-Dealer and BG also prepared and caused to be prepared 22-10 and 22-25 notices for the liens that were available to convert into deeds. ███, Bonnie, Timothy, Wheeler-Dealer and Atlantic Municipal caused Cook County to mail these notices to enable them to convert the liens into deeds. These mailings of the 22-5, 22-10, and 22-25 notices were integral to the scheme to profit by obtaining additional liens in violation of the Rule. This conduct violated 18 U.S.C. § 1341. Exhibits W and X identifies a small sample of these mailings related to the liens that Wheeler-Dealer and Atlantic Municipal purchased.

**ANSWER:**  The allegations of Paragraph 160 state legal conclusions that do not require a response.  To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants deny any allegations of Paragraph 160 that there is or was an improper "scheme to profit" in which any of the Heartwood Defendants ever has participated. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 160, and on that basis deny those allegations.

**COUNT I**
**(Against SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, Bamp, DeLaurentis, Richarony, Turer, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty)**

161.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 of the Complaint as though fully set forth herein.

**ANSWER:**  The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if fully set forth herein.

162.    At all relevant times, SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, DeLaurentis, Bamp, Turer, Richarony, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).  This Count is brought against each of the defendants identified in this paragraph.

**ANSWER:**  The allegations of Paragraph 162 state legal conclusions that do not require a response.  To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants admit that at all relevant times that they were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).  The Heartwood Defendants admit that Count I is brought against each of the defendants identified in Paragraph 162.  The Heartwood

Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of Paragraph 162, and on that basis deny those allegations.

163.     The Sabre Defendants, the Sabre Nominees, and the persons running the Sabre
Nominees, including BankAtlantic, DeLuca, Branse, Turer, DeLaurentis, Sass, Sass
Management, Sass Finance-IV, Sass Finance-V, Jessani, Allison, Wilson, Stec, Grant, Quinn,
Bingham, Jeffrey Bridge, Robert Jensen, Joseph Varan, Jesse Rochman, Christopher Rochman,
Corinne Rochman, Douglas Nash, Frances Alexander, Jason Baumbach, and Gregory Ellis
constitute an association-in-fact "enterprise" (the "Sabre Rigged Bidding Enterprise") as that
term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect,
interstate commerce.  The members of the Sabre Rigged Bidding Enterprise are and have been
associated through time, joined in purpose and organized in a manner amenable to hierarchal and
consensual decision-making, with each member fulfilling a specific and necessary role to carry
out and facilitate its purpose.  BankAtlantic, Branse, DeLuca, DeLaurentis, Turer, Sass, Sass
Management, Sass Finance-IV, Sass Finance-V, Jessani, Allison, Wilson, Stec, Grant, Quinn,
Bingham, Varan, and the other non-defendants identified above, incorporated and/or became the
principals of the Sabre Nominees, including Heartwood, Bamp, Richarony, Sass Muni-IV, Sass
Muni-V, G3, Aztek, Chonus, Tax Play, Tax Capital, and Goin Realty, and pretended to act as
legitimate, unrelated bidders at annual tax sales on behalf of those entities.  The Sabre Nominees
registered to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's
Office stating that they would adhere to the Single, Simultaneous Bidder Rule, and purchased
liens at the annual tax sales for the Sabre Defendants' benefit.  Sabre registered to bid at the
2002, 2003, and 2004 sales, submitted false registrations to the Cook County Treasurer's Office
in connection with those sales stating that it had adhered to the Single, Simultaneous Bidder
Rule, purchased liens at those tax sales in its own name, acquired liens by transfer from the
Sabre Nominees from the 2002 through 2007 tax sales.  John Bridge, Barrett Rochman, Kenneth
Rochman, ████████████ directed the affairs of Sabre, SI Securities, ████████████
████████ and of others [sic] nominees which included forming entities to bid at the annual
tax sale, registering those entities to bid, submitting false registrations to the Cook County
Treasurer's Office falsely stating adherence to the Single, Simultaneous Bidder Rule, purchasing
liens at auction, having liens or profits transferred to Sabre, and insuring that participants were
compensated for their participation.  ████████████████████████████████████████
████████████

████████     Throughout the period beginning in 2002 through the present, each defendant named in
this count, together with Sabre and the other Sabre Nominees, took affirmative steps to hide their
fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including
Plaintiffs, property owners, lenders and financial institutions and others.  The planning and
carrying out of the scheme would have been beyond the capacity of each member of the Sabre
Rigged Bidding Enterprise acting singly and without the aid of each other.

**ANSWER:**  The allegations of Paragraph 163 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first, second, third, fourth, fifth, seventh, eighth, and ninth sentences of Paragraph 163. The Heartwood Defendants deny that the Sabre Defendants directed the affairs of the Heartwood Defendants, DeLuca, and/or Branse, or that the Heartwood Defendants participated in the alleged "Sabre Rigged Bidding Enterprise" or engaged in any unlawful conduct with respect to the Cook County tax sales. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 163, and on that basis deny those allegations.

164.    Each defendant named in this Count is or has been employed by and/or associated with the Sabre Rigged Bidding Enterprise. Each defendant named in this count, together with the Sabre Defendants and the other Sabre Nominees, implemented the fraud and scheme, and they have continued to execute the fraud and scheme through the present.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 164.

165.    The defendants named in this Count received a financial benefit for their participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had the defendants named in this count not joined the Sabre Rigged Bidding Entity enabling them to secure more liens than possible had the County been provided accurate registration information.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 165.

166.    Each of the defendants named in this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of the Sabre Defendants greatly in excess of the number of liens Sabre would have been allowed under the Rule. Further, each of the defendants named in this Count has conducted and/or participated in the conduct of the Sabre Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

**ANSWER:** The allegations of Paragraph 166 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 166.

167.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the Sabre Rigged Bidding Enterprise not implemented its scheme and improperly acquired additional liens through violations of the Rule. If the Sabre Rigged Bidding Enterprise had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Sabre and the Sabre Nominees, deeds to property

related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Sabre Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the defendants, Sabre, and the other Sabre Nominees.

**ANSWER:** The allegations of Paragraph 167 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 167.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, DeLaurentis, Bamp, Turer, Richarony, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty, and for relief as follows:

> (a)  Treble damages;
>
> (b)  Injunctive relief;
>
> (c)  Reasonable attorneys' fees and costs; and
>
> (d)  Such other relief as the Court deems just and proper.

**ANSWER:** The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or relief sought in the prayer for relief immediately following Paragraph 167.

**COUNT II**
**(Against SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, Bamp, DeLaurentis, Richarony, Turer, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty)**

168.  Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 and 162 through 166 of the Complaint as though fully set forth herein.

**ANSWER:** The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if fully set forth herein.

169.    Defendants SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, DeLaurentis, Bamp, Turer, Richarony, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty, have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c) with the Sabre Defendants, the Sabre Nominees and their officers and principals, to conduct and/or participate, directly or indirectly, in the conduct of the Sabre Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

**ANSWER:** The allegations of Paragraph 169 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 169.

170.    An object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. A further object of the conspiracy was to hide the fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including Plaintiffs, property owners, lenders and financial institutions and others. Each defendant named in this count embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals. The conspiracy and fraudulent scheme began at least in 2002 and continues to the present.

**ANSWER:** The allegations of Paragraph 170 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 170.

171.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the Sabre Rigged Bidding Enterprise not implemented its scheme and improperly acquired additional liens through violations of the Rule. If the Sabre Rigged Bidding Enterprise had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Sabre and the Sabre Nominees, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Sabre Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of the defendants, Sabre, and the other Sabre Nominees.

**ANSWER:** The allegations of Paragraph 171 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 171.

WHEREFORE, Plaintiffs respectfully pray for judgment against defendants SI Securities, SI Management, CMS, SI Boo, CCPI, Kenneth Rochman, Sierzega, Heartwood, BankAtlantic, DeLuca, Branse, DeLaurentis, Bamp, Turer, Richarony, Sass, Sass Management, Sass Finance-IV, Sass Finance-V, Sass Muni-IV, Sass Muni-V, Jessani, Allison, G3, Wilson, Stec, Grant, Tax Play, Tax Capital, Quinn, Aztek, Chonus, Bingham, and Goin Realty, and for relief as follows:

    (a)    Treble damages;

    (b)    Injunctive relief;

    (c)    Reasonable attorneys' fees and costs; and

    (d)    Such other relief as the Court deems just and proper.

**ANSWER:** The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or relief sought in the prayer for relief immediately following Paragraph 171.

### COUNT III
### (Salta, Atlas, HBZ, Levinson, Berger, Arlene and Joshua)

172.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 of the Complaint as though fully set forth herein.

**ANSWER:** The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if fully set forth herein.

173.    At all relevant times, Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger, were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

**ANSWER:** The allegations of Paragraph 173 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 173, and on that basis deny those allegations.

174.    Salta, Atlas, HBZ, Levinson, Berger, Arlene and Joshua constitute an association-in-fact "enterprise" (the "Salta Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Salta Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Levinson, Berger,            incorporated and became the principals of HBZ, and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those entities.

HBZ registered to bid at annual tax sales, submitted false registrations to the Cook County Treasurer's Office stating that it would adhere to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales for Salta's benefit. Salta registered to bid at the 2003, 2004, 2005, 2006 and 2007 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it would adhere to the Single, Simultaneous Bidder Rule, purchased liens at those tax sales in its own name, and arranged for HBZ to acquire liens for Salta's benefit. Atlas ███████ directed the affairs of Salta and HBZ which included registering those entities to bid, submitting false registrations to the Cook County Treasurer's Office falsely stating adherence to the Single, Simultaneous Bidder Rule, purchasing liens at auction, having liens or profits transferred to Salta, and insuring that participants were compensated for their participation. Throughout the period beginning in 2003 through the present, each defendant named in this count took affirmative steps to hide their fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including Plaintiffs, property owners, lenders and financial institutions and others. The planning and carrying out of the scheme would have been beyond the capacity of each member of the Salta Rigged Bidding Enterprise acting singly and without the aid of each other.

**ANSWER:** The allegations of Paragraph 174 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 174.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 174, and on that basis deny those allegations.

175.     Each defendant named in this Count is or has been employed by and/or associated with the Salta Rigged Bidding Enterprise. Each defendant named in this count began implementing the fraud and scheme in or before 2003, and they have continued to execute the fraud and scheme through the present.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 175, and on that basis deny those

allegations.

176.     The defendants named in this Count received a financial benefit for their participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had the defendants named in this Count not joined the Salta Rigged Bidding Entity enabling them to secure more liens than possible had the County been provided accurate registration information.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 176, and on that basis deny those

allegations.

177.    Each of the defendants named in this Count have mailed or caused to be mailed hundreds of mailings in furtherance of the scheme to obtain liens for the benefit of Salta greatly in excess of the number of liens Salta would have been allowed under the Rule. Further, each of the defendants named in this Count has conducted and/or participated in the conduct of the Salta Rigged Bidding Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud.

**ANSWER:** The allegations of Paragraph 177 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 177, and

on that basis deny those allegations.

178.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Salta and HBZ, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Salta Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger.

**ANSWER:** The allegations of Paragraph 178 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 178.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 178, and on that basis deny those allegations.

WHEREFORE, Plaintiffs respectfully prays for judgment against Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger, and for relief as follows:

(a)    Treble damages;

- 60 -

    (b)     Injunctive relief;

    (c)     Reasonable attorneys' fees and costs; and

    (d)     Such other relief as the Court deems just and proper.

**ANSWER:**  The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or

relief sought in the prayer for relief immediately following Paragraph 178.

### COUNT IV
### (Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger)

    179.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 and 173 through 177 of the Complaint as though fully set forth herein.

**ANSWER:**  The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if

fully set forth herein.

    180.    At all relevant times, Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger were each a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

**ANSWER:**  The allegations of Paragraph 180 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 180, and

on that basis deny those allegations.

    181.    The Salta Rigged Bidding Enterprise is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

**ANSWER:**  The allegations of Paragraph 181 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 181, and

on that basis deny those allegations.

    182.    Defendants Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Salta Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

- 61 -

**ANSWER:** The allegations of Paragraph 182 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 182, and on that basis deny those allegations.

183.    An object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. A further object of the conspiracy was to hide the fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including Plaintiffs, property owners, lenders and financial institutions and others. Each defendant named in this count embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals. The conspiracy and fraudulent scheme began at least in 2003 and continues to the present.

**ANSWER:** The allegations of Paragraph 183 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 183, and on that basis deny those allegations.

184.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Salta and HBZ, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Salta Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger.

**ANSWER:** The allegations of Paragraph 184 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants answer as follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 184. The Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 184, and on that basis deny those allegations.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Salta, Atlas, HBZ, Arlene, Joshua, Levinson, and Berger, and for relief as follows:

(a)    Treble damages;

(b)    Injunctive relief;

(c)    Reasonable attorneys' fees and costs; and

(d)    Such other relief as the Court deems just and proper.

**ANSWER:** The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or relief sought in the prayer for relief immediately following Paragraph 184.

### COUNT V
### (Against Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray)

185.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 of the Complaint as though fully set forth herein.

**ANSWER:** The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if fully set forth herein.

186.    At all relevant times, Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

**ANSWER:** The allegations of Paragraph 186 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 186, and on that basis deny those allegations.

187.    Wheeler-Dealer, BG, MREI, MREI PSP, Gray, Bonnie, and Timothy constitute an association-in-fact "enterprise" (the "Grays Rigged Bidding Enterprise") as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Grays Rigged Bidding Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Bonnie and Timothy incorporated and became the principals of BG and Wheeler-Dealer, respectively, and pretended to act as legitimate, unrelated bidders at annual tax sales on behalf of those entities. Wheeler-Dealer registered to bid at annual tax sales,

submitted false registrations to the Cook County Treasurer's Office stating that it would adhere to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales in violation of the Rule. BG registered to bid at the 2003, 2004 and 2005 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it would adhere to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales in violation of the Rule. Atlantic Municipal registered to bid at the 2006 and 2007 sales, submitted false registrations to the Cook County Treasurer's Office in connection with those sales stating that it would adhere to the Single, Simultaneous Bidder Rule, and purchased liens at the annual tax sales in violation of the Rule. ▆▆, Bonnie, and Timothy, directed the affairs of Wheeler-Dealer, BG, ▆▆▆▆▆▆▆▆ and Atlantic Municipal, which included registering those entities to bid, submitting false registrations to the Cook County Treasurer's Office falsely stating adherence to the Single, Simultaneous Bidder Rule, purchasing liens at auction, and insuring that participants were compensated for their participation. Throughout the period beginning in 2003 through the present, each defendant named in this count took affirmative steps to hide their fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including Plaintiffs, property owners, lenders and financial institutions and others. The planning and carrying out of the scheme would have been beyond the capacity of each member of the Grays Rigged Bidding Enterprise acting singly and without the aid of each other.

**ANSWER:** The allegations of Paragraph 187 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 187.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 187, and on that basis deny those allegations.

188.    Each defendant named in this Count is or has been employed by and/or associated with the Grays Rigged Bidding Enterprise. Each defendant named in this count began implementing the fraud and scheme in or before 2003, and they have continued to execute the fraud and scheme through the present.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 188, and on that basis deny those

allegations.

189.    On information and belief, the defendants named in this Count received a financial benefit for their participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had the defendants named in this Count not joined the Grays Rigged Bidding Entity enabling them to secure more liens than possible had the County been provided accurate registration information.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 189, and on that basis deny those

allegations.

190.    Each of the defendants named in this Count have mailed or caused to be mailed
hundreds of mailings in furtherance of the scheme to obtain liens greatly in excess of the number
of liens they would have been allowed under the Rule. Further, each of the defendants named in
this Count has conducted and/or participated in the conduct of the Grays Rigged Bidding
Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. §
1962(c), by engaging in numerous acts of mail fraud.

**ANSWER:** The allegations of Paragraph 190 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 190, and

on that basis deny those allegations.

191.    Plaintiffs have suffered the loss of property related to the liens they would have
acquired, and the profits flowing therefrom, had the defendants named in this Count not
implemented their scheme and improperly acquired liens through their violation of the Rule. If
these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were
instead acquired by Wheeler-Dealer, BG, and Atlantic Municipal, deeds to property related to
those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that
could have been paid. Plaintiffs do not have access to sufficient information to identify the
amount of damages they have incurred because that information, the Grays Rigged Bidding
Enterprise's profits from penalties and deeds, is in the sole possession of the Gray, Bonnie, and
Timothy, Wheeler-Dealer, BG, MREI, MREI PSP, and Atlantic Municipal.

**ANSWER:** The allegations of Paragraph 191 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 191.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 191, and on that basis deny those allegations.

WHEREFORE, Plaintiffs respectfully prays for judgment against Gray, Bonnie,
Timothy, MREI, MREI PSP, Atlantic Municipal, Wheeler-Dealer and BG, and for relief as
follows:

    (a)     Treble damages;

    (b)     Injunctive relief;

    (c)     Reasonable attorneys' fees and costs; and

    (d)     Such other relief as the Court deems just and proper.

**ANSWER:**  The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or

relief sought in the prayer for relief immediately following Paragraph 191.

**COUNT VI**
**(Against Wheeler-Dealer, BG, MREI, MREI PSP,**
**Atlantic Municipal, Bonnie, Timothy, and Gray)**

    192.    Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 and 186 through 190 of the Complaint as though fully set forth herein.

**ANSWER:**  The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if

fully set forth herein.

    193.    At all relevant times, Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray were each a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

**ANSWER:**  The allegations of Paragraph 193 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 193, and

on that basis deny those allegations.

    194.    The Grays Rigged Bidding Enterprise is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

**ANSWER:**  The allegations of Paragraph 194 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 194, and

on that basis deny those allegations.

195.    Defendants Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Grays Rigged Bidding Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

**ANSWER:** The allegations of Paragraph 195 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 195, and

on that basis deny those allegations.

196.    An object of the conspiracy was to defraud the County and other tax buyers and improperly acquire liens through violation of the Rule. A further object of the conspiracy was to hide the fraud and scheme from discovery by the Collector, the Clerk, other tax buyers including Plaintiffs, property owners, lenders and financial institutions and others. Each defendant named in this count embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals. The conspiracy and fraudulent scheme began at least in 2003 and continues to the present.

**ANSWER:** The Heartwood Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 196, and on that basis deny those

allegations.

197.    Plaintiffs have suffered the loss of property related to the liens they would have acquired, and the profits flowing therefrom, had the defendants named in this Count not implemented their scheme and improperly acquired liens through their violation of the Rule. If these defendants had not engaged in such conduct, Plaintiffs would have obtained liens that were instead acquired by Wheeler-Dealer, BG and Atlantic Municipal, deeds to property related to those liens, and additional sums based on the statutory penalty of 12% on subsequent taxes that could have been paid. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Grays Rigged Bidding Enterprise's profits from penalties and deeds, is in the sole possession of Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray .

**ANSWER:** The allegations of Paragraph 197 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants answer as

follows:

The Heartwood Defendants deny the allegations of the first sentence of Paragraph 197.

The Heartwood Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 197, and on that basis deny those allegations.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Wheeler-Dealer, BG, MREI, MREI PSP, Atlantic Municipal, Bonnie, Timothy, and Gray and for relief as follows:

(a)   Treble damages;

(b)   Injunctive relief;

(c)   Reasonable attorneys' fees and costs; and

(d)   Such other relief as the Court deems just and proper.

**ANSWER:** The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or

relief sought in the prayer for relief immediately following Paragraph 197.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**
**(Against All Defendants)**

198.   Plaintiffs incorporate by reference the allegations of paragraph 1 through 160 of the Complaint as though fully set forth herein.

**ANSWER:** The Heartwood Defendants incorporate their Answers to all prior Paragraphs as if

fully set forth herein.

199.   Heartwood, BankAtlantic, Bamp, and Richarony were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 199 state legal conclusions that do not require a

response.  To the extent that a response is required, the Heartwood Defendants deny the

allegations of Paragraph 199.

200.   The M.D. Sass Entities were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 200 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 200.

201.   Tax Play and Tax Capital were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 201 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 201.

202.   G3 was related to Sabre and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 202 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 202.

203.   Aztek and Chonus were related to each other, Sabre, and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 203 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 203.

204.   Goin Realty was related to Cronus, Sabre and the other Sabre Nominees, all of whom were bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 204 state legal conclusions that do not require a response. To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 204.

205.   Salta and HBZ were related, bidding on and purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 205 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 205, and

on that basis deny those allegations.

206.    Wheeler-Dealer, BG, and Atlantic Municipal were related, bidding on and
purchasing liens in violation of the Rule.

**ANSWER:** The allegations of Paragraph 206 state legal conclusions that do not require a

response. To the extent that a response is required, the Heartwood Defendants lack knowledge

or information sufficient to form a belief about the truth of the allegations of Paragraph 206, and

on that basis deny those allegations.

207.    BCS and Phoenix were registered tax buyers at the 2003, 2004, 2005, 200 [sic]
and 2007 annual tax sale auctions, and BCS was a registered tax buyer at the 2002 annual tax
sale auction.

**ANSWER:** The Heartwood Defendants lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 207, and on that basis deny those

allegations.

208.    Under the County's method of allocating liens among the lowest bidders during
the annual tax auctions, each bidder has an expectation of obtaining a certain portion of the
liens for which they are among the lowest bidders. Defendants obtained liens bid on by
Plaintiffs, with identical 0% penalty bids as Defendants successful bids, during the annual tax
sales, thereby tortiously interfering with Plaintiffs' rights to obtain those liens. Their conduct
was intended to hide from the Collector and other tax buyers, including Plaintiffs, that they were
related bidding entities. Plaintiffs would have obtained a greater number of tax liens absent
defendants conduct. BCS and Phoenix had a reasonable expectation of entering into valid
business relationships with the County at the 2003, 2004, 2005, 2006, and 2007 annual tax sale
auctions, and BCS had a reasonable expectation of entering into valid business relationships with
the County at the 2002 annual tax sale auction.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 208.

209.    Defendants knew of the Plaintiffs' expectancies for the tax sales in which each of
the respective defendants participated.

**ANSWER:** The Heartwood Defendants deny the allegations of Paragraph 209.

210.   Nevertheless, Defendants purposefully interfered in the respective tax sales in which each participated by filing false registrations and conspiring to violate the Rule.  Where related bidders are participating in the process in violation of the Rule, they obtain liens that would have otherwise been obtained by the eligible bidders.  By obtaining access to participate in the tax sales through their misrepresentations in their registrations, Defendants were able to participate in the tax sales by bidding on and obtaining tax liens, thereby usurping liens from Plaintiffs through the County's fair allocation method and preventing the Plaintiffs' legitimate expectancies from ripening into valid business relationships with the County.

**ANSWER:**  The Heartwood Defendants deny the allegations of Paragraph 210.

211.   Absent the respective frauds and collusive bidding schemes of the Defendants, BCS and Phoenix would have obtained a much larger number of liens and would have enjoyed the financial benefits flowing from those purchases, and, accordingly, have been damaged by the loss of those benefits.

**ANSWER:**  The allegations of Paragraph 211 state legal conclusions that do not require a response.  To the extent that a response is required, the Heartwood Defendants deny the allegations of Paragraph 211.

WHEREFORE, Plaintiffs BCS and Phoenix respectfully request that this Court grant judgment in its favor and against all defendants:

     (a)     Award of damages to compensate the Plaintiffs for their loss of profits from the Defendants improper purchase of liens and other incidental and consequential damages including, but not limited to, the financial benefits flowing from successful bids; and

     (b)     Granting such other relief as the Court deems fair and just.

**ANSWER:**  The Heartwood Defendants deny that plaintiffs are entitled to the judgment and/or relief sought in the prayer for relief immediately following Paragraph 211.

## THE HEARTWOOD DEFENDANTS' SEPARATE AND/OR AFFIRMATIVE DEFENSES

The Heartwood Defendants assert the following separate and/or affirmative defenses to the Complaint.  The Heartwood Defendants' assertion of these defenses is not to be construed as an assumption or admission of any burden of proof with respect to any such defenses.

### First Defense

1.     The purported claims for relief asserted in the Complaint against the Heartwood Defendants fail to state a claim upon which relief can be granted.  The Complaint fails to allege that the Heartwood Defendants violated RICO, that the Heartwood Defendants committed tortious interference with prospective business advantage, or that any purported violations could possibly have caused harm to plaintiffs.

### Second Defense

2.     The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred in whole or in part by the applicable statute of limitations, including but not limited to 15 U.S.C. § 15b and 735 ILCS 5/13-205.

### Third Defense

3.     The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred in whole or in part because the Single Simultaneous Bidder Rule is unconstitutionally vague and ambiguous.

### Fourth Defense

4.     Plaintiffs believed as of December 2005, at the latest, that Heartwood had engaged in the activities which form the basis of their claims against the Heartwood Defendants. Despite this knowledge, plaintiffs did not assert any RICO claim against Heartwood until 2007. Heartwood was prejudiced in this unreasonable delay in plaintiffs' filing suit.  Had plaintiffs filed their RICO claims against Heartwood earlier, Heartwood would have been in a position to take action to avoid the possibility of incurring any potential damages relating to plaintiffs' claims stemming from the Cook County tax sales which occurred in 2006 and 2007.

5.    The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred in whole or in part on the ground that, by reason of acts and omissions by or chargeable to plaintiffs, plaintiffs are guilty of laches and engaged in speculative delay.

### Fifth Defense

6.    The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred in whole or in part by the competitor's privilege.

### Sixth Defense

7.    The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred in whole or in part on the ground that to the extent that any individual purporting to act on behalf of the Heartwood Defendants engaged in any fraudulent or tortious conduct as alleged in the Complaint, such conduct would be in violation of company policy and outside of the scope of his/her employment, and the Heartwood Defendants are therefore not liable for such alleged conduct.

### Seventh Defense

8.    BankAtlantic is not liable for the actions of Heartwood 88, LLC.

### Eighth Defense

9.    The purported claims for relief asserted in the Complaint against the Heartwood Defendants are barred on the ground that plaintiffs cannot show the nature, extent, or amount of any purported loss or damages to any reasonable degree of certainty.

### Reservation of Rights

10.    The Heartwood Defendants reserve the right to raise such additional defenses as may be established during discovery and by the evidence in this case.

WHEREFORE, the Heartwood Defendants pray that this Court dismiss all counts against

Heartwood and BankAtlantic and for such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated:  August 14, 2009

Respectfully submitted,

**HEARTWOOD 88, LLC**
**BANKATLANTIC**

By    /s/ Christopher K. Meyer
          One of their Attorneys

Christopher K. Meyer
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000 (telephone)
(312) 853-7036 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to all parties of record by operation of the Court's electronic filing system.


/s/ Christopher K. Meyer