IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCS SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 07 C 1367 |
| | ) | |
| v. | ) | |
| | ) | |
| HEARTWOOD 88, LLC, *et al.*, | ) | Chief Judge James Holderman |
| | ) | |
| Defendants. | ) | |

### SASS DEFENDANTS' MOTION TO JOIN CERTAIN DEFENDANTS' MOTION TO RECONSIDER DENIAL OF OBJECTION PURSUANT TO FED. R. CIV. PRO. 72(a) TO MAGISTRATE'S ORDER QUASHING CERTAIN SUBPOENAS

Defendants MD Sass Investors Services, Inc., MD Sass Tax Lien Management, LLC, MD Sass Municipal Finance Partners-IV, LLC, MD Sass Municipal Finance Partners-V, LLC, Sass Muni-IV, LLC, Sass Muni-V, LLC, Vinaya Jessani, and Kirk Allison (the "Sass Defendants"), by and through their undersigned counsel, Morgan, Lewis & Bockius LLP, hereby move to join certain defendants' (the "Moving Defendants") Motion to Reconsider Denial of Objection Pursuant to Fed. R. Civ. Pro. 72(a) To Magistrate's Order Quashing Certain Subpoenas. (Dkt. No. 573 in *Phoenix Bond v. Bridge*, No. 05cv4095 (the "2005 Case").)

On June 30, 2009, Magistrate Judge Valdez quashed certain subpoenas that the Moving Defendants served upon Plaintiffs' banks. (Dkt. Nos. 451, 533 in the 2005 Case) The Moving Defendants filed an Objection with this Court (Dkt. No. 526 in the 2005 Case), which this Court overruled on August 28, 2009. (Dkt. No. 567 in the 2005 Case.)

This Court may recall that in their various Complaints filed in the consolidated cases, Plaintiffs allege they would have obtained more liens if the defendants had not purportedly defrauded the Treasurer. (*See, e.g.,* Dkt No. 525, ¶¶ 108, 113.) In order for Plaintiffs to meet

their burden of proving this allegation, Plaintiffs would have to prove that they actually *could* have purchased more liens at each Cook County tax auction. As the Moving Defendants correctly note in their Motion to Reconsider filed on September 8, 2009 (Dkt. No 573), the subpoenas the Moving Defendants previously served on Plaintiffs' banks requested information about the funding available to Plaintiffs to participate in Cook County tax auctions. The amount of funding available to Plaintiffs is vital to evaluating and defending against Plaintiffs' claims of damages in this case, because all bidders at Cook County tax auctions can purchase only those liens for which they have sufficient funding.

For example, if a Plaintiff had total funding of a $1MM letter of credit to participate in a Cook County tax auction, that Plaintiff could not purchase a single lien over $1MM, and that total includes not only the face value of the lien, but also any subsequent taxes that the purchasing Plaintiff must post. If that Plaintiff spent $900,000 of its $1MM limit at that Cook County tax auction, then the *most* that Plaintiff could have spent was an additional $100,000 (which could be as few as only *one* additional lien), regardless of any purported fraud by any defendant. Plaintiffs' own allegation in their Third Amended Complaint admits the important of the information about a bidder's funding:

> 60. Tax buyers must be registered and qualified to bid at the tax sale. Registration requires the submission of an application and sworn affidavit of compliance with rules established by the Collector, together with a **letter of credit or bond** from each bidding entity (35 ILCS 200/21-220) **to guaranty payment for purchases**. A prospective tax buyer who fails to satisfy any of these requirements, i.e. the application, the affidavit of compliance, or the bond, **would not be permitted to bid** at the annual tax sale.

(Dkt. No. 525, ¶ 60.)

To date, Plaintiffs have provided woefully insufficient information about the total funding available to them for each Cook County tax auction to purchase the liens they allege they "would" have obtained absent the defendants' purported fraud – indeed, Plaintiffs have

2

fought strenuously to conceal this information.  And as the Moving Defendants correctly note, since the date of this Court's Order overruling the Moving Defendants' Objection, there has been additional ample evidence that Plaintiffs shared their lines of credit with their own related entities.  It appears, for example, that Phoenix Bond's related entity named Bromark drew upon lines of credit extended to Phoenix Bond.  (*See* Dkt. No. 573, pp. 4-5.)  If true, then Phoenix Bond's purchasing power at a Cook County tax auction would have been reduced and/or limited by the amount of the line of credit that Bromark used, and as a corollary, Phoenix Bond's alleged damages in this case also would be limited.

Plaintiffs have placed their purchasing power at issue by alleging they would have purchased liens that the defendants purchased at Cook County tax auctions.  In order to evaluate and defend against Plaintiffs' claims, Plaintiffs must be required to fully disclose to defendants their sources of funding and total funding available to participate in Cook County tax auctions.

The Sass Defendants respectfully request that this Court grant the Moving Defendants' Motion to Reconsider and overrule Magistrate Judge Valdez' prior Order quashing certain bank subpoenas.

Dated: September 9, 2009

*Respectfully Submitted*,

Defendants MD Sass Investors Services, Inc., MD Sass Tax Lien Management, LLC, MD Sass Municipal Finance Partners-IV, LLC, MD Sass Municipal Finance Partners-V, LLC, Sass Muni-IV, LLC, Sass Muni-V, LLC, Vinaya Jessani, and Kirk Allison.

By:         /s/     Richard J. Pearl

3

Theodore M. Becker
Richard J. Pearl
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, Illinois 60601
(312) 324-1000 phone
(312) 324-1001 fax