IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCS SERVICES, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 07 C 1367 |
| ) | Consolidated with No. 05 C 4095 |
| ) | |
| v. ) | Chief Judge James F. Holderman |
| ) | |
| HEARTWOOD 88, LLC, *et al.*, ) | Magistrate Judge Maria Valdez |
| ) | |
| Defendants. ) | |

**HEARTWOOD 88, LLC AND BANKATLANTIC'S MEMORANDUM OF LAW IN OPPOSITION TO PHOENIX'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE HEARTWOOD DEFENDANTS' NINTH, TENTH, & ELEVENTH AFFIRMATIVE DEFENSES**

**INTRODUCTION**

Defendants Heartwood 88, LLC and BankAtlantic (for purposes of this memorandum, "Heartwood") respectfully submit this Opposition to the Motion of Phoenix Bond & Indemnity Co. ("Phoenix") for Judgment on the Pleadings as to Heartwood's Ninth, Tenth & Eleventh Affirmative Defenses. Phoenix is not entitled to the relief sought in its Motion for three reasons.

First, Heartwood has pleaded a valid unclean hands defense because: (a) Phoenix's misrepresentations to the Treasurer are a legally sufficient basis for that defense; and (b) the defense applies to both of Phoenix's claims against Heartwood.

Second, Heartwood has pleaded a valid *in pari delicto* defense because Phoenix's misrepresentations to the Treasurer are materially identical to the misconduct of which it accuses Heartwood and the other Defendants. Moreover, this is true regardless of whether Phoenix is an alleged co-conspirator with any Defendant.

Finally, regardless of how the Court rules on the validity of the unclean hands or *in pari delicto* defense, Heartwood has properly pleaded, as a separate defense, a reservation of rights to use evidence of Phoenix's misrepresentations to the Treasurer to show, among other things, that Phoenix suffered no injury as a result of any conduct that it alleges.

## **ARGUMENT**

I.   **Heartwood Has Properly Pleaded An Unclean Hands Defense.**

The unclean hands defense "gives wide range to the court's use of discretion in refusing to aid the unclean litigant." *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 148-49 (7th Cir. 1992). Intentional misrepresentations are a sufficient basis to apply the defense. *See, e.g., id.* at 147, 149. Phoenix has admitted that it (a) intentionally provided the Treasurer false social security numbers of its owners and registered bidders in its registrations submitted to gain entry to the tax sales in 2003, 2005, 2006, and 2007, and (b) falsely stated under oath or affirmation that its registrations were true and correct when it knew those representations were false. (Dkt. 589 at 74, ¶¶ 11-13; Dkt. 599 at 3 n.1). Heartwood has properly pleaded an unclean hands based on these misrepresentations.

Phoenix argues that its misrepresentations are not a valid basis for an unclean hands defense because: (a) the misrepresentations were made to the Treasurer rather than directly to Heartwood; (b) the subject matter of the misrepresentations is not sufficiently related to the subject matter of its claims against Heartwood; and (c) the defense does not apply to Phoenix's RICO claim. All three arguments are wrong.

    A.   **Phoenix's Misrepresentations To The Treasurer Are A Valid Basis For The Unclean Hands Defense.**

Both the Supreme Court and the Seventh Circuit have applied the unclean hands doctrine to plaintiffs' misrepresentations to third parties. For example, in *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*, 324 U.S. 806 (1945), the Supreme Court held that the unclean hands defense barred a claim for infringement of a patent that the plaintiff had obtained through an application that contained known false information. *Id.* at 814-16. Similarly, in *BeerMart v. Stroh Brewery Co.*, 804 F.2d 409 (7th Cir. 1986), the Seventh Circuit held that the unclean hands doctrine barred the plaintiff's claim for wrongful termination of a wholesale beer distribution contract because (a) the termination was based on the plaintiff's misrepresentations to third-party consumers regarding the beer's freshness and (b) during the litigation, the plaintiff's employee

2

submitted a false affidavit to the court. *Id.* at 410-13. And, in *Mantek Div. of NCH Corp. v. Share Corp.*, 780 F.2d 702 (7th Cir. 1986), the Seventh Circuit held that the doctrine of unclean hands applied to the plaintiff's claim for breach of a covenant not to compete because the plaintiff had engaged in a scheme of bribing third-party customers' purchasing agents. *Id.* at 704, 706.

The cases cited by Phoenix do not justify a different result. In *Int'l Union, Allied Indus. Workers of Am., AFL-CIO v. Local Union No. 589, Allied Indus. Workers of Am., AFL-CIO*, 693 F.2d 666, 672 (7th Cir. 1982), the Seventh Circuit suggested that a plaintiff's bad faith supporting an unclean hands defense should be "toward the party proceeded against." *Id.* at 672. But, as explained above, it is well established that a plaintiff's misrepresentations need not be made directly to the defendant in order to constitute bad faith "toward" the defendant. Indeed, in denying Defendants' motions to dismiss, this Court agreed with Plaintiffs' position that misrepresentations in tax sale registration materials need not be made directly to other participants in order to "target[]" those participants. (Dkt. 137 at 21) ("[F]rom the allegations, an individual can infer that the defendants specifically targeted the plaintiffs as part of a group of other minimum bidders competing for an allocation of the tax liens.")[1]

### B. The Subject Matter Of Phoenix's Misrepresentations Is Sufficiently Related To The Subject Matter Of Its Claims Against Heartwood.

Where a plaintiff asserts a property interest or expectation that it has obtained through misconduct, there is a sufficient nexus between the plaintiff's misconduct and its claim to support an unclean hands defense. *See, e.g., Precision Instrument*, 324 U.S. at 816 (unclean hands barred plaintiff's "attempt to assert and enforce ... perjury-tainted patents and contracts");

---

[1] The district court cases Phoenix cites are inapposite. In *Safe Bed Techns. Co. v. KCI USA, Inc.*, No. 02 C 97, 2003 U.S. Dist. LEXIS 8514 (N.D. Ill. May 16, 2003), the plaintiff's misconduct was deemed to be not "directed against" the defendant because plaintiff's misconduct involved stealing confidential information from a third party regarding a different patent than the one at issue in the lawsuit. *Id.* at *13-14 (distinguishing *Precision Instrument* on the ground that *Precision Instrument* involved misconduct regarding the patents "in issue."). The brief opinion in *Hansen v. Harding*, 1989 U.S. Dist. LEXIS 13256 (N.D. Ill. Nov. 6, 1989), provides no indication that the plaintiff's misconduct had any impact on the defendant. *Id.* at *2.

3

*Packers Trading*, 972 F.2d at 148-49 (plaintiff that attempted to engage in commodities trades in violation of a previous ban could not sue broker for violation of Commodities Exchange Act); *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ("If for example a plaintiff who had acquired a patent in violation of antitrust limitations on patent pooling brought a suit to enjoin another from using the patent, the injunction would be refused on the ground that awarding it would assist in a violation of the antitrust laws.").

Here, Phoenix is attempting to enforce a claimed property interest or expectation in liens on which it obtained permission to bid by making false statements under oath to the Treasurer's Office. Its false statements thus are directly related to, among other things, whether (a) Phoenix's alleged expectations of entering into business relationships with the County were "valid" or "legitimate" (Third Am. Complaint ("TAC") ¶¶ 208, 210), and (b) Phoenix can prove causation.

Phoenix attempts to avoid this conclusion by taking the position for the first time that its claims rest on alleged violations of the Single Bidder Rule (Dkt. 599 at 4). But this is directly at odds with the position that Phoenix took in successfully opposing Defendants' motions to dismiss. *See, e.g.*, Dkt. 109 at 4-5. ("While the false statements at issue involve … the … defendants' claimed compliance with the Single Bidder Rule, *it is the false statements, not the violation of the Rule, that form the basis of plaintiffs' claims.*") (emphasis added). This Court agreed that the subject matter of the litigation is not the Single Bidder Rule, but the allegedly false registration statements. (Dkt. 137 at 15) ("the plaintiffs are alleging a claim of RICO with the predicate act of mail fraud, not a violation of the [Single Bidder] Rule."). Having defeated the motions to dismiss based on the position that its claims do *not* rest on alleged violations of the Single Bidder Rule, Phoenix is not entitled now to dismissal of the unclean hands defense based on the opposite position that its claims *do* rest on alleged violations of that Rule.[2]

---

[2] Phoenix's additional assertion that its misrepresentations "did not affect the equities between the parties in any way" is untenable. (Dkt. 599 at 4) Given Phoenix's allegation that additional tax buyers results in a decreased number of liens due to the purported "guarantee[d] … equal apportionment" system (TAC ¶

4

### C. Unclean Hands Applies To Both Of Phoenix's Claims.

The Seventh Circuit has made clear that unclean hands applies to a federal statutory claim if its application achieves rather than defeats the federal statute's objective. *Shondel*, 775 F.2d at 869-70 ("Last year this court refused to apply the doctrine of unclean hands in an antitrust case where the application of the doctrine would have defeated the objectives of antitrust law ... though earlier in this opinion we gave an example where the doctrine would be applied in an antitrust case in order to *achieve* those objectives.") (emphasis added) (internal citations omitted). And, in *Packers Trading*, the Seventh Circuit applied the unclean hands defense because allowing the plaintiff to recover under the Commodity Exchange Act in the face of clear misconduct "could not help but harm the market and undermine confidence in the [Commodity Futures Trading] Commission." 972 F.2d at 150.[3]

Here, Phoenix engaged in the very activity that it asserts RICO is intended to prevent. Phoenix states that the "overriding public policy" animating the RICO statute is "deterring racketeering activity." (Dkt. 599 at 11) "Racketeering activity" includes mail fraud, 18 U.S.C. § 1961(1)(B), and this Court has previously held that knowing misrepresentations in the registration materials submitted to the Treasurer, coupled with the post-sale mailings for which Phoenix (like all tax buyers) was responsible, constitutes mail fraud. (Dkt. 556 at 2-3) Given Phoenix's admission that it lied under oath to the Treasurer in its registration materials, Phoenix

---

77), Phoenix's fraudulent registration and presence at the tax sales necessarily affected other tax buyers, including both the Defendants and the other named Plaintiff, BCS.

[3] Consistent with this approach, courts outside the Seventh Circuit also have applied the doctrine to RICO claims. *See, e.g., Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 693-94 & n.19 (S.D. Fla. 2006) (permitting defense of unclean hands in civil RICO action even though similar defenses are unavailable in antitrust actions). *See also Sikes v. Teleline, Inc., USA Networks*, 281 F.3d 1350, 1366 n.41 (11th Cir. 2002) ("[I]t would be quite curious for a plaintiff to institute a RICO claim predicated on illegal gambling against a defendant, for the plaintiff would have to therein admit that he violated the gambling laws of a state.... We do not pass on the issue, but we posit the possibility that the plaintiffs may be barred from bringing such a claim by the 'unclean hands' doctrine.").

committed numerous acts of mail fraud, which is precisely the type of conduct that it says RICO is designed to eradicate.

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968), is not to the contrary. The Supreme Court there held that the doctrine of *in pari delicto* does not apply to antitrust actions. It does not stand for the broader proposition for which Phoenix tries to cite it – that no common law equitable doctrines or remedies apply to claims based on federal law.[4]

## II. Heartwood Has Pleaded A Valid *In Pari Delicto* Defense.

### A. The *In Pari Delicto* Doctrine Applies To Phoenix's Intentional Interference Claim.

The *in pari delicto* doctrine "is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards Inc. v. Berner*, 472 U.S. 299, 306 (1985). Cooperation between the plaintiff and defendant is not a requirement for application of the doctrine. Indeed, Illinois courts have long applied the defense even where the plaintiff's misconduct was not in cooperation with the defendant. *See, e.g., Ohio & Miss. Ry. Co. v. Eaves*, 42 Ill. 288, 290-91 (Ill. 1866) (*in pari delicto* barred plaintiff's claim that railroad negligently failed to sound whistle at railway crossing; plaintiff committed misconduct by recklessly rushing his cattle across railway crossing without looking to see if train was approaching); *Devor v. Knauer*, 84 Ill. App. 184, 187-89 (4th Dist. 1899) (*in pari delicto* defense applied against plaintiff who was injured while attempting to burglarize defendant).

---

[4] The remaining district court cases cited by Phoenix (Dkt. 599 at 5-6) likewise do not support its position. None of those cases acknowledged or applied the Seventh Circuit's approach of applying the defense where the plaintiff engaged in the activity that the federal statute at issue is intended to prevent, *Shondel*, 775 F.2d at 869-70; *Packers Trading*, 972 F.2d at 150. And most of them did not involve racketeering activity by the plaintiff. Indeed, in *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.* 636 F. Supp. 1138, 1156 (C.D. Cal. 1986), the court emphasized that, unlike here, allowing the RICO claims would "*not* necessarily … amount to permitting 'one racketeer to sue another.'" (emphasis added).

6

*Devor* is particularly instructive. There, the defendant stabbed the plaintiff's hand as the plaintiff reached through a window in order to steal from the defendant. The plaintiff and defendant were not conspirators; rather, the plaintiff was stealing from the defendant. Nonetheless, the court held that plaintiff's claim was barred under *in pari delicto*. As the court explained, under the doctrine of *in pari delicto*, "courts of justice will not assist a person who has participated in a transaction forbidden by statute to assert rights growing out of it.... 'A person can not make his own illegal act the foundation of a legal right.'" *Id.* at 189 (internal citations omitted). The court noted that "the injury received was inseparably connected with the felony that plaintiff in error was committing," *id.* at 187, and was therefore barred. Like the thief in *Devor*, Phoenix's illegal acts (lying to the Treasurer in registering for the sale and subsequently participating in those sales) are the foundation for the rights it seeks to enforce. Phoenix's asserted injury is "inseparably connected with" Phoenix's lies under oath.

Phoenix suggests that the *in pari delicto* doctrine is "intended" to apply only where "the victim is a participant in the misconduct giving rise to the claim." (Dkt. 599 at 7). But courts have recognized that this is not the only scenario in which the defense is applied. *Pinter v. Dahl*, 486 U.S. 622, 632 (1988) ("courts have expanded the defense's application to situations more closely analogous to those encompassed by the 'unclean hands' doctrine, where the plaintiff has participated 'in some of the same sort of wrongdoing' as the defendant.") (quoting *Perma Life*, 392 U.S. at 138); *Bateman Eichler*, 472 U.S. at 307 ("many courts have given the *in pari delicto* defense a broad application to bar actions where plaintiffs simply have been involved generally in 'the same sort of wrongdoing' as defendants.") (quoting *Perma Life*, 392 U.S. at 138); *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004) ("The defense of *in pari delicto* ... has been extended to the case ... in which each party is accused of having wronged the other").

7

### B. The *In Pari Delicto* Doctrine Applies To Phoenix's RICO Claim.

The *in pari delicto* doctrine likewise applies to Phoenix's RICO claim regardless of whether Phoenix "played [a] role in the [alleged] RICO conspiracy." (Dkt. 559 at 10). *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997). In *Peltz*, the plaintiff conspired with a third party to sell futures contracts against plaintiff's account with the defendant in order to manipulate the marked in violation of the Commodities Exchange Act. *Id.* at 1084-85. When the defendant charged plaintiff's account to make up for the contracts that it was forced to purchase, the plaintiff sued the defendant for violating the Act by allowing the third party to trade on the account without the plaintiff's written authorization. *Id.* at 1085-86. Plaintiff argued that *in pari delicto* did not apply because his misconduct was of a different character than the defendant's misconduct, and there was no "mutuality of fault." *Id.* at 1090. The Second Circuit rejected plaintiff's "hyptertechnical interpretation" of the *in pari delicto* doctrine, and held that in light of *Bateman Eichler*, "mutuality of fault" does not mean that the plaintiff and defendant must have a "related purpose, or act as confederates." *Id.*

Here, Phoenix has engaged in the same misconduct of which it accuses Defendants – lying in registration materials submitted to the Treasurer. That makes Phoenix at least equally culpable and warrants application of the *in pari delicto* doctrine.

The Supreme Court's decision in *Bateman Eichler* is not to the contrary. The Court there held that a federal securities law claim may be barred where, "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress[.]" 472 U.S. at 310-11. But the Court was clear that, by "substantially equal responsibility," the Court was referring to the relative culpability of the plaintiff and defendant. *Id.* at 307, 314 (noting that parties might not bear "substantially equal responsibility" where there were "very different degrees in their guilt," and holding that the doctrine did not apply where the plaintiff could not be characterized as being of "equal culpability" as the defendant). Nowhere does *Bateman Eichler* suggest that the plaintiff and defendant must be co-conspirators for the doctrine to apply.

8

Nor will application of the *in pari delicto* undermine RICO's goal of deterring racketeering activity. (Dkt. 599 at 11) To the contrary, applying the doctrine against Phoenix will further those goals, because Phoenix has itself engaged in racketeering activity, the same racketeering activity of which it accuses Defendants. As the Supreme Court has observed, "there may be circumstances in which the statutory goal of deterring illegal conduct is served more effectively by preclusion of suit than by recovery. In those circumstances, the *in pari delicto* defense should be afforded." *Pinter*, 486 U.S. at 634. This is one of those circumstances, as the Seventh Circuit has noted in the context of the unclean hands defense. *See supra* at 5-6; *Shondel*, 775 F.2d at 869-70; *Packers Trading*, 972 F.2d at 150.

### III. Heartwood Has Properly Pleaded A Reservation Of Rights To Use Evidence Of Phoenix's Misrepresentations To Show Lack Of Resulting Injury.

Regardless of whether Phoenix's repeated misrepresentations to the Treasurer support an unclean hands or *in pari delicto* defense, Heartwood is entitled to use the evidence of Phoenix's misrepresentations for other purposes, including to establish that Phoenix suffered no injury resulting from the conduct it alleges. Specifically, if the Treasurer would have barred Phoenix from participating at the sale as a result of Phoenix's misrepresentations, Phoenix would not have been able to bid on any liens at issue and, and therefore cannot have suffered any injury as a result of any alleged misrepresentations by any Defendants. Heartwood also was entitled to explicitly reserve its right to use such evidence to establish that Phoenix cannot show resulting injury even though Phoenix has the ultimate burden of proof on that issue. *See, e.g.,* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1271 at 591 (3d ed. 2009) ("[A] pleader ... often will decide to set up affirmatively matter that technically may not be an affirmative defense but nonetheless might fall within the residuary clause of Rule 8(c). Normally, that pleader will not be penalized for exercising discretion in this fashion even when affirmative pleading proves to be unnecessary.").

In all events, regardless of how the Court rules on the propriety of Heartwood's Tenth Defense, the evidence of Phoenix's misrepresentations will remain relevant to the elements of

9

causation and injury. Heartwood therefore requests that, if the Court rules that the defense is not properly pleaded, it make clear that the ruling does not preclude use of the evidence for these other purposes.

## CONCLUSION

For the reasons explained above, Phoenix's Motion should be denied.

Respectfully submitted,

**HEARTWOOD 88, LLC**
**BANKATLANTIC**

By: /s/Christopher K. Meyer
    One of Their Attorneys

| | |
|---|---|
| Robert A. Holland (admitted *pro hac vice*) | Christopher K. Meyer |
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
| 555 West Fifth Street | One South Dearborn Street |
| Los Angeles, CA 90013 | Chicago, IL 60603 |
| (213) 896-6000 | (312) 853-7000 |
| *Counsel for Heartwood 88, LLC* | *Counsel for Heartwood 88, LLC & BankAtlantic* |

Dated: November 5, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to all parties of record by operation of the Court's electronic filing system, and sent a copy of the foregoing via U.S. Mail to:

Joseph Varan
306 East First Street
Hinsdale, IL 60521

Greg Stec
5630 N. Kensington
LaGrange, IL 60525

/s/ Christopher K. Meyer